**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREW J. OKULSKI, | : | |
| Plaintiff, | : | Civil Action No.: 20-CV-01328-WB |
| | : | |
| v. | : | |
| | : | |
| CARVANA, LLC | : | |
| CARVANA, LLC (CARVANA GA); | : | |
| PAUL BREAUX; | : | |
| KATELYN GREGORY | : | |
| Defendants. | : | |

**SECOND AMENDED COMPLAINT**

A.   **Jurisdiction and Venue**

1.      Plaintiff commenced this civil action in the Court of Common Pleas of Philadelphia County, Pennsylvania by filing a Complaint on or about February 13, 2020.

2.      On or about March 6, 2020, Defendants filed a Notice of Removal, removing this action to United States District Court based on alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332.

3.      On or about April 7, 2020, Plaintiff filed a Motion to Remand disputing diversity and/or that there is an adequate record of diversity.  Said motion remains pending.

4.      If there is jurisdiction, then venue lies in this judicial district in that the events that gave rise to these claims occurred, at least in part, including the sales transaction at the center of the case, occurred within this district.  CARVANA has a Pennsylvania licensed dealer with a dealer licensed established place of business located within this district.  Plaintiff resides within this district, and the property which is the subject of the action is situated within this district.

**B.**  **Parties**

5.      Plaintiff Mr. Andrew J. Okulski is a natural person who resides at 8630 Midland Avenue, Philadelphia, PA 19136.

6.      Defendant CARVANA, LLC (CARVANA), with an established place of business and corporate headquarters located at 1930 W. Rio Salado Pkwy, Tempe, AZ 85281, and a Pennsylvania dealer licensed and required established place of business located at 1043 N. Front Street, Philadelphia, PA 19123 (CARVANA PHILA) and a separate and distinct Georgia dealer licensed and required established place of business located at 63 Pierce Road, Winder, GA 30680-7280 (CARVANA GA); at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

7.      Defendant, PAUL BREAUX, is a supervising agent, Vice-President, Secretary, and/or employee of CARVANA, CARVANA PHILA and/or CARVANA GA, and holds a management position at and/or with said Defendant, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

8.      Defendant, KATELYN GREGORY, is a supervising agent and/or employee of CARVANA PHILA, and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

9.      At all times relevant hereto, Defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

**C.      Factual Allegations**

10.     Defendant CARVANA describes itself as a leading e-commerce platform for buying and selling used cars.

11.     Defendant CARVANA operates or partners with used car dealerships located in numerous states, including CARVANA GA and CARVANA PHILA.

12.     The various dealerships advertise collectively and advertise their inventory collectively on a single Website.

13.     In or about July 16, 2019, Plaintiff saw the subject 2017 Nissan Versa (VIN: 3N1CN7AP6HL849750) advertised on Defendant CARVANA's Website.

14.     Defendant CARVANA advertised that all of its vehicles are CARVANA CERTIFIED, including the subject vehicle and that all vehicles are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in each vehicle's quality and safety (Exhibit 1).

15.     Defendants represented that the subject vehicle had been carefully inspected, CARVANA CERTIFIED and had never been in any accidents or damaged.

16.     All of the defendants made these same misrepresentations – as set forth in paragraphs 12 and 13 – at times and in the manner described more fully below.

17.     Defendant BREAUX signed the subject Buyers Order (BO) and financed purchase agreement – Retail Installment Sales Contract (RISC) (Exhibits 2 and 3).[1]

18.     Defendant BREAUX is the Vice-President and Secretary of Defendant CARVANA, LLC (CARVANA PHILA and CARVANA GA).

19.     Defendant BREAUX has been the General Counsel of Carvana Co. since August 2015, and is also the Secretary.

20.     Defendant BREAUX is the Vice-President of Carvana Auto Receivables 2016-1, LLC.

21.     Defendant BREAUX is the General Counsel, Vice-President and Secretary of Carvana Co., Sub, LLC.

22.     Defendant BREAUX is the General Counsel, Vice-President and Secretary of Carvana Group, LLC.

23.     Defendant BREAUX is the Vice-President and Secretary of Carvana Shipping & Delivery, LLC.

24.     In signing the RISC, Defendant BREAUX was fully aware of Defendant CARVANA's advertisements, including that all CARVANA vehicles are CARVANA CERTIFIED and are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

25.     The CARVANA CERTIFIED inspection and marketing were and remain a centerpiece of Defendant CARVANA's advertising and promotion.

---

[1] Under Pennsylvania Law, the RISC governs a financed motor vehicle purchase.

4

26.     Upon information and belief, Defendant CARVANA has market research indicating that auto consumers want to have comfort that the vehicle they purchase is mechanically sound and will not require costly repairs or replacement in the near term.

27.     Upon information and belief, Defendant CARVANA has market research indicating that an online seller such as Defendant CARVANA needs to reassure auto consumers regarding the quality of their used vehicles to attract customers and persuade them to make such a significant purchase and investment sight unseen.

28.     In signing the RISC, Defendant BREAUX was representing that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that it was CARVANA CERTIFIED and subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

29.     Defendants have developed a scheme or scam to heavily advertise the careful inspection, certification and high-quality of its vehicles, and then intentionally to leave out any such term from the contract, and to bury within the fine-print terms and clauses that they can use to later argue that the careful inspection, certification, high-quality, and Carfax report representations are not part of the contract (as they do in this case).

30.     Plaintiff purchased the subject vehicle for personal, family or household purposes.

31.     Plaintiff purchased the subject vehicle to transport he and his family on the private and public roadways to perform his normal activities of daily living and to do so safely,

enjoyable, and reliably and without any concern or anxiety regarding the vehicle's history, condition, fitness, reliability or safety.

32.    Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants, including CARVANA, CARVANA PHILA, CARVANA GA, BREAUX and GREGORY, made the following representations expressly and/or impliedly, as more fully described above and below, about the subject vehicle:

a)    the odometer reading and disclosure statement reflected the actual mileage;

b)    the odometer reading and disclosure statement was reliable and accurate;

c)    the subject vehicle was in good, safe and operable condition;

d)    the subject vehicle was free of defects;

e)    Plaintiff was being charged lawfully amounts paid to public officials;

f)    Defendants were charging a lawful documentary fee;

g)    Defendants would transfer lawfully Title and registration and record the lien;

h)    the sale was conducted and the paperwork was completed lawfully;

i)    Defendants were charging lawfully for all taxes, charges and fees;

j)    that the vehicle was NOT in an accident or damaged;

k)    the vehicle was in perfect condition;

l)    the vehicle had been subjected to a careful 150-point inspection by inspection specialists all of whom are ASE Certified;

m)    the vehicle was CARVANA CERTIFIED;

n)    Plaintiff could and should be 100% confident in the subject vehicle's quality and safety;

o)    the vehicle was still under factory warranty and Plaintiff would benefit by the factory warranty.

33.    Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants concealed the following:

    a)     the subject vehicle was not in good, safe and operable condition;

    b)     the subject vehicle was not free of defects;

    c)     Plaintiff was being charged unlawful taxes, charges and fees;

    d)     the sale was not conducted and the paperwork was completed accurately or lawfully;

    e)     that the vehicle was in an accident or damaged;

    f)     the vehicle was not in perfect condition;

    g)     the vehicle was not CARVANA CERTIFIED or properly CARVANA CERTIFIED or CARVANA CERTIFIED does not mean what it is advertised to mean;

    h)     Defendants were overcharging for sales taxes;

    i)     Defendants were packing an extra $199 of unearned profits into the deal.

34.     Defendants have taken the position on the record that Defendant CARVANA GA is distinct from CARVANA PHILA, and that CARVANA GA, unlike CARVANA PHILA, is not subject to Pennsylvania licensing statutes, and that CARVANA GA sold the subject vehicle to Plaintiff online (Motion To Dismiss [MTD], p. 1, 2, 3).

35.     Any reference to CARVANA PHILA and/or CARVANA GA is also a reference to CARVANA.

36.     Plaintiff purchased the subject vehicle in-person from and at CARVANA PHILA.

37.     All of the documents that Plaintiff signed in connection with the subject transaction, including the Buyers Order (BO), Retail Installment Sales Contract (RISC) and Odometer Disclosure Statement (ODS) were prepared by CARVANA PHILA and/or CARVANA GA.

38.     All of the documents that Plaintiff signed in connection with the subject transaction, including the BO, RISC and ODS, were presented to Plaintiff for his signature at Defendant CARVANA PHILA.

39.     The subject RISC is a standardized form contract purchased or licensed by defendants from Bankers System TM VMP® Wolters Kluwer Financial Services © 2015.

40.     The subject RISC was created for use in Pennsylvania by Pennsylvania licensed dealers for the retail installment sale of motor vehicles by Pennsylvania dealers in Pennsylvania.

41.     Any reference within the RISC to a selling or licensed dealer elsewhere identified in the RISC was presumed and intended to identify a dealer that was a Pennsylvania licensed dealer.

42.     The subject RISC identifies that it is governed by Pennsylvania law.

43.     Plaintiff signed all of the documents that he signed in connection with the subject transaction, including the BO, RISC and ODS at Defendant CARVANA PHILA.

44.     Defendants CARVANA PHILA and/or CARVANA GA falsely advertised and falsely prepared the documents, including the BO, RISC and ODS falsely to identify CARVANA GA as the seller.

45.     Defendants CARVANA PHILA and/or CARVANA GA falsely advertised and falsely prepared the documents, including the BO, RISC and ODS falsely to identify CARVANA GA as the seller in violation of the Pennsylvania Automotive Industry Trade Practices (AITP), which require that all advertisements and contracts correctly identify the dealer name and address.  37 Pa.C. §§ 301.2(1)&(2), 301.4(a)(2)(i).

8

46.     Defendant CARVANA PHILA did not own the subject vehicle at the time that it sold the vehicle to Plaintiff.

47.     The RISC identifies the cash price of the vehicle as $12,900, and the government taxes charged as $1,123.92 (Exhibit 3) (Itemization lines 1a and 1b).  This reflects an 8.7% tax rate.

48.     The RISC also says that the Total Cash price is $14,222.92, which it states is the sum of the figures $12,900.00 plus $1,123.92 (Exhibit 3) (Itemization lines 1a-1).  However, $12,900 plus $1,123.92 equals $14,023.92.  Therefore, defendants "packed" (longtime industry term for packing things illicitly into contracts) $199.00 in unearned profits into the deal.

49.     The lawful sales tax rate for the sale of a motor vehicle in Philadelphia, PA is 8%.

50.     The lawful sales tax or Title Ad Valorem Tax (TAVT) in George is 6%.

51.     Defendants marked up, charged and collected excess sales taxes.

52.     The subject vehicle was delivered by Defendant CARVANA PHILA at Defendant CARVANA PHILA's licensed established place of business in Philadelphia, PA.

53.     Defendant GREGORY gave Plaintiff a Carfax report indicating falsely that the vehicle had not been in any accidents or damaged (Exhibit 4).

54.     The Carfax report and the CARVANA CERTIFIED representations are part of the bargain, part of the meeting of the minds, and are either considered part of the RISC or were omitted fraudulently and/or due to a scrivener's error.

55.     Defendants deny that the Carfax and CARVANA CERTIFIED representations are part of the bargain, party of the meeting of the minds, and/or should be or are considered a part of the RISC, and deny that they were omitted fraudulently and/or due to scrivener's error.

56.     It has been well-known in the industry for more than a decade that Carfax reports cannot be relied upon to exclude any pre-sale accidents or damage.[2]

57.     It is well-known in the industry that Carfax reports only catch a small percentage of accidents and damage events, and even when they are caught, there is more often than not a long delay.

58.     Defendant GREGORY represented to Plaintiff that the only thing wrong with the vehicle was a small scratch under the right-side headlight.

59.     In presenting, representing and delivering the vehicle, Defendant GREGORY was fully aware of Defendant CARVANA's advertisements, including that all CARVANA vehicles are CARVANA CERTIFIED and are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

60.     In presenting, representing and delivering the vehicle, Defendant GREGORY was representing that the vehicle was sold in accordance with Defendant CARVANA's

---

[2]  It has been well-known in the industry for decades that Carfax reports are notoriously incomplete and cannot be reasonably relied upon to exclude accidents, damage, damage events and/or other negative information or events.  Carfax limitations have been well-reported in the popular and industry media:
   1)  http://abcnews.go.com/Business/trust-car-fox-hidden-camera-shows-clean-carfax/story?id=18731208;
   2)  http://www.nbc12.com/story/15998881/how-reliable-is-carfax;
   3)  http://www.consumerreports.org/cro/2012/12/don-t-rely-on-used-car-history-reports/index.htm;
   4)  Carfax was studied by the National Highway Traffic and Safety Administration (NHTSA) and it was famously found that Carfax misses upwards of 80% of the odometer roll-backs;
   5)  http://www.moneytalksnews.com/can-you-trust-carfax-plus-4-ways-avoid-buying-dud/;
   6)  http://askbobrankin.com/how_reliable_is_carfax.html;

advertisements, including that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that it was CARVANA CERTIFIED and subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

61.     The subject RISC is a four-page document, which incorporates, as it must under the law, the Buyers Guide, which was never adhered or posted to the vehicle and therefore is missing and/or non-existent as a matter of law (Exhibits 3).

62.     The vehicle has malfunctioned repeatedly, including engine misfires, shorted engine coil, shuttering on acceleration, and shaking at 40+ MPH (Exhibit 5).

63.     During servicing for the aforementioned issues undisclosed pre-sale front-end damage was discovered, misaligned panels, damaged wiring, loose and replaced parts, and missing bolts and fasteners.

64.     On or about October 18, 2019, Plaintiff received a voicemail from Jack DePre, Service Manager, Conicelli Nissan:

> *Hi Mr. Okulski, this Jack over from Conicelli Nissan. I'm just returning your phone call. I know we're playing a bit of phone tag. I know Mark actually spoke to you on the phone and gave you some information, but I'm going to give you some more information. I've been out driving your car. I did get it to buck for me, so it was bucking and the check engine light came back on. It came back on for a multiple cylinder misfire... I know you said this car is new. You just bought it, but I believe, from what the guys are telling me, you bought the car from Carvana, and I've been looking at the car with the tech and the whole front end of this car has been repaired. The fenders have been off. The headlights of been out. The bumpers been off. The radiator supports been out. And some other things have been off of the car. So, I don't know if this was a relation to the past accident and it's something wiring related, maybe pinched wire somewhere, but I am we have to get to the root cause of it. I mean if it's something that is covered under warranty, it be warranty. If it looks after we do some more investigation, and it looks like it's related to*

---

7)  http://www.dealershipforum.com/forums/showthread.php?t=3142.

*the accident -- I know you weren't in the accident with the car -- you're up going to have to take the car back to Carvana and arbitrate it with them, because if it's not warranty. It's basically their problem… thank you.*

65.     Conicelli Nissan repeated these observations and conclusions to the Pennsylvania Attorney General (Exhibit 6).

66.     Defendants CARVANA PHILA and CARVANA GA continued to deny post-sale that that the vehicle was involved in any pre-sale accidents or damaged pre-sale, that there existed any physical indications that the vehicle had been in any pre-sale accidents or damaged, and denied that Conicelli Nissan found any such indications or reached any such conclusions.

67.     Soon after Conicelli Nissan Service Manager, Jack DePre, left the aforementioned voicemail, Defendant CARVANA PHILA's and/or CARVANA GA's agent and/or employee Ryan represented to Plaintiff that he had spoken to Conicelli Nissan and that there were no indications of accidents or damage, and refused Plaintiff's demand to return the vehicle and cancel the deal.

68.     Defendant CARVANA PHILA's and/or CARVANA GA's agent and/or employee Dylan stated that "Carvana does not sell vehicle's that have been in reported accidents, or have apparent fire, flood or frame damage." (Exhibit 7).

69.     Despite indications that the front-end had been disassembled and parts replaced, Defendant CARVANA PHILA and CARVANA GA misrepresented pre-sale and continued to misrepresent post-sale that there were no indications that the vehicle had been in a pre-sale accident or damaged." (Exhibit 7)

70.     Defendant CARVANA PHILA and/or CARVANA GA did admit that "At this time, we do have indication that this vehicle was reconditioned at some point prior to [Plaintiff] receiving it…." (Exhibit 7).

71.     Subsequent to Defendant CARVANA PHILA's and/or CARVANA GA's agents, Dylan's and Ryan's, denials of any indications of accidents or damage, Conicelli Service Manager, Jack DePre, confirmed to Plaintiff that the vehicle was "absolutely" damaged in an accident and "100% damaged in an accident" and told Plaintiff that he needed to take it back to CARVANA.

72.     Conicelli Nissan Service Manager, Jack DePre, indicated that the manufacturer warranty would not cover the remaining issues with the vehicle.

73.     The vehicle continues to shudder and vibrate, and the hood and bumper continue to be misaligned and loose.

74.     There have been no post-sale accidents or damage.

75.     The subject vehicle was sold in a defective and damaged condition, including but not limited to frame and structurally damaged condition.

76.     The front bumper, hood and fender panels are misaligned (Exhibit 12).

77.     Panel gaps are supposed to be parallel, equal side-to-side and flush.

78.     The misaligned panels and bolt halos are classic, tell-tale signs of parts repositioning and underlying frame/structural damage and distortion.

79.     It is generally accepted in the industry that visible panel or panel gap misalignment is presumptively significantly outside factory specifications.

13

80.     For at least the past few decades, almost all non-truck and non-SUV passenger vehicles, like the subject vehicle, have had unitized (unibody) frames.

81.     The term unibody or unit body is short for unitized body, or alternatively unitary construction design in which the body of the vehicle, its floor plan and chassis form a single structure.

82.     Unibody frames/structures are designed and manufactured to distort in a collision.

83.     Unibody construction has what are called crush or crumple zones. These are areas primarily in the front and rear built into the unibody that are made to be more pliable to absorb the energy of a collision, and then there are parts that are made to be more rigid to deflect the energy from the occupancy area.

84.     The accepted standard tolerance in the industry for frame/structural distortion is just 3 mm – less than the thickness of three dimes or two pennies.

85.     Further documentation of the pre-sale damage event(s) and inspection, including possible destructive inspection, and measurement, will likely confirm conclusively the expected frame/structural damage and distortion and preclude any dispute.

86.     The subject vehicle was involved in one or more pre-sale accidents and sustained damage to the front-end.

87.     The subject vehicle appears to have sustained a right offset impact, meaning the energy of the collision was concentrated.  In this instance, concentrated on the right front.

88.     The vehicle exhibits numerous classic, tell-tale signs of damage, improper and incomplete repairs, and still existing damage, including but not limited to paint defects, tape lines, panel gap misalignment, tool marks, bolt halos, missing bolts and fasteners, missing parts,

14

color mismatch, bent parts, and replacement part labels, which would have been evident to anyone with experience in the automotive industry.

89.     The front bumper, hood, fenders and headlamps were removed pre-sale.

90.     The hood and left front fender and front bumper cover were refinished pre-sale.

91.     The right front fender was replaced pre-sale.

92.     The front headlamps were replaced pre-sale.

93.     Anyone experienced in the industry performing an industry standard walk-around appraisal, much less an industry standard full pre-sale inspection, even much less the advertised CARVANA CERTIFIED inspection, could not have missed the tell-tale signs that the subject vehicle was in an accident, was severely damaged and improperly and/or incompletely repaired, and was sold in a damaged, defective, unfit and unmerchantable condition.

94.     As a licensed, trained and experienced motor vehicle salesperson, it is not possible that Defendant GREGORY could have noticed or been aware of the aforementioned scratch, but unaware of all of the other tell-tale signs.

95.     As a result of the misrepresented history and condition of the vehicle and the documented and ongoing problems, the vehicle has been unavailable to plaintiff for 10-15 days.

96.     If the vehicle had, and if Plaintiff had known that Defendants were not licensed or were violating the licensing statutes and regulations, or that the vehicle had been in an accident or had been damaged, had frame or structural damaged, or that any charges or fees were unlawful, false or inaccurate, or that any paperwork was completed unlawfully, or that the Defendants had misrepresented anything, or the true total cost of the purchase, or that the

15

Defendants would not honor their agreements, then Plaintiff would have not purchased the vehicle.

97.     Defendants represented that they were signing the Title Certificate of the car over to Plaintiff by representing that it would process the Title with the Department of Motor Vehicles, by acting as an agent of the Department of Motor Vehicles to provide him with a temporary tag and a temporary registration, and by using various contract documents that asserted that he was the owner of the car and was giving up a security interest in the car.

98.     Motor vehicle dealers in Pennsylvania are required to transfer Title ownership to customers simultaneously with the sale.

99.     All of the finance terms in a financed sale are keyed to the date of sale and are dependent upon the transfer of the full bundle of rights and interests, including Title ownership, on the date of sale.

100.     Defendants did not transfer Title ownership of the subject vehicle to Plaintiff until at least August 12, 2019.

101.     The physical Title Certificate and Title ownership for the vehicle were in Defendant CARVANA's possession as of April 10, 2019.

102.     Upon information and belief, Defendants did not let Plaintiff see the Title Certificate and did not obtain his signature on the Title Certificate.

103.     Upon information and belief, Defendants signed improperly Plaintiff's name on the Title Certificate.

104.     The standardized BO contains a standardized and invalid and unlawful AS IS provision, which was used to misrepresent the terms and conditions of the transaction.

105.    The standardized BO contains standardized and invalid and unlawful language ostensibly excluding any implied warranties (Exhibit 2).

106.    In accordance with the FTC Used Car Rule and the Pennsylvania Automotive Industry Trade Practices (AITP), a vehicle may only be sold AS IS and/or the implied warranties be excluded under very strict circumstances and in accordance with very strict procedures, including: (1) no express warranties have been provided; (2) the exclusion is not inconsistent with any oral or written representations about the vehicle; (3) the Buyers Guide has the AS IS box checked; (4) the face of the contract contains a very specific, word-for-word disclaimer.  16 CFR § 455.1(a)(2)-(3); 16 CFR § 455.1(b)(1); 16 CFR § 455.1(c); 16 CFR § 455.2(a)(1); 16 CFR § 455.2(b); 37 Pa.C. § 301.4(a)(9).

107.    Defendants provided express warranties, including that the vehicle was carefully inspected, CARVANA CERTIFIED, never in any accidents or damaged, and in perfect condition.

108.    The subject RISC does not contain any AS IS disclaimer (Exhibit 3).

109.    The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

110.    As a result of the Defendants' unlawful actions, the Plaintiff has received property (the vehicle) of much less value, has incurred an inflated debt, has been overcharged for the vehicle, has been overcharged for taxes, has been deprived of the use and/or enjoyment of the vehicle, has incurred and/or will incur expenses for replacement transportation, has suffered damage to and/or excessive consumption of his credit, credit rating and/or credit reputation, and has suffered frustration and inconvenience.

111.    Plaintiff has been and will continue to be financially and otherwise damaged as outlined above and below due to Defendants' intentional, reckless, wanton, and/or negligent failure to honor their contractual obligations.

112.    As a result of the Defendants' dishonesty, and as a result of the vehicle's true history of accident(s) and damage, and as a result of the vehicle's true condition, and as a result of the vehicle's continued malfunctioning, including excessive vibration and rattling in the front-end, Plaintiff has lost faith in the vehicle and experienced fear and anxiety with its operation.

113.    Defendant CARVANA PHILA is a licensed dealer under the PAOA/BOVA.

114.    Defendant CARVANA GA has never been a licensed dealer under the PAOA/BOVA.

115.    Defendant CARVANA GA has never had a licensed established place of business in Pennsylvania.

116.    Defendant CARVANA PHILA is not a licensed branch of any other licensed dealer under the PAOA/BOVA.

117.    The subject transaction was not a consignment sale.

118.    Defendant GREGORY was a licensed motor vehicle salesperson under the PAOA/BOVA.

119.    Defendant BREAUX was not a licensed motor vehicle salesperson under the PAOA/BOVA.

120.    Upon information and belief, Defendant BREAUX was never a licensed motor vehicle salesperson under the PAOA/BOVA.

121.    Upon information and belief, Defendant BREAUX signed RISCs regularly on

behalf of CARVANA related to the financed retail sale of motor vehicles in Pennsylvania as part of his and Defendant CARVANA's standard operating procedures.

122.     Defendants never provided and Plaintiff never received any refund or reimbursement of any funds.

**D.     Causes of Action**

**COUNT I**
**Fraud**
**(Plaintiff v. All Defendants)**

123.     Plaintiff incorporates all facts and allegations set forth in this Complaint.

124.     Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants, including CARVANA PHILA, CARVANA GA, BREAUX and GREGORY, made the following representations expressly and/or impliedly about the subject vehicle:

    a.   the subject vehicle was in good, safe and operable condition;

    b.   the subject vehicle was free of defects;

    c.   Plaintiff was being charged lawfully amounts paid to public officials;

    d.   Defendants were charging a lawful documentary fee;

    e.   Defendants would transfer lawfully Title and registration and record the lien;

    f.   the sale was conducted and the paperwork was completed lawfully;

    g.   Defendants were charging lawfully for all taxes, charges and fees;

    h.   that the vehicle was NOT in an accident or damaged;

    i.   the vehicle was in perfect condition;

    j.   the vehicle had been subjected to a careful 150-point inspection by inspection specialists all of whom are ASE Certified;

    k.   the vehicle was CARVANA CERTIFIED;

    l.   Plaintiff could and should be 100% confident in the subject vehicle's quality and safety;

    m.   the vehicle was still under factory warranty and Plaintiff would benefit by the factory warranty.

125.    Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants concealed the following:

    a.  the subject vehicle was not in good, safe and operable condition;

    b.  the subject vehicle was not free of defects;

    c.  Plaintiff was being charged unlawful charges and fees;

    d.  the sale was not conducted and the paperwork was completed accurately or lawfully;

    e.  that the vehicle was in an accident or damaged;

    f.  the vehicle was not in perfect condition;

    g.  the vehicle was not CARVANA CERTIFIED or properly CARVANA CERTIFIED or CARVANA CERTIFIED does not mean what it is advertised to mean;

    h.  Defendants were overcharging for sales taxes;

    i.  Defendants were packing an extra $199 of unearned profits into the deal.

126.    The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to Defendants to be false when made, and/or Defendants were recklessly indifferent to their truth or falsity, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreements.

127.    The Defendants knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

128.    The Plaintiff justifiably relied on the Defendants' misrepresentations and was induced to sign the RISC and other documents related to which he apparently and ostensibly purchased the aforementioned automobile at the inflated and misrepresented amounts and charges listed in the purchase agreement.

20

129.    As a result of the aforementioned misconduct, the Plaintiff suffered the damages outlined above and below.

130.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

131.    The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages and render the Defendants joint and severally liable to the Plaintiff.

132.    As a result of Defendants' misconduct, the Plaintiff suffered the damages outlined above and in the following additional ways:

   a.   increased purchase costs;
   b.   received a vehicle of significantly less value;
   c.   damaged and/or excessively consumed credit, credit rating and/or reputation;
   d.   loss of the use and/or enjoyment of the vehicle;
   e.   incurred cost of replacement transportation;
   f.   spent time resolving problems created by Defendants' breach;
   g.   incurred other incidental and consequential damages, including inconvenience and frustration; and/or,
   h.   incurred increased interest and other expenses for financing the purchase of the vehicle;
   i.   frustration and inconvenience.

## COUNT II
### Violation of The Professions and Occupations Act
### Board of Vehicles Act
### (Plaintiff v. All Defendants)

133.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

134.    The licensing statute and code are intended in part to protect the public welfare generally and, more specifically, to protect consumers from dealer misconduct in the sale of motor vehicles.

135.    Pursuant to 63 P.S. §818.303(a)(1), the POVA/BOVA licensing regulations are intended "[t]o promote the public safety and welfare, it shall be unlawful for any person to engage in the business as a salesperson, dealer, branch lot, wholesale vehicle auction, public or retail vehicle auction, manufacturer, factory branch, distributor, distributor branch, factory representative or distributor representative within this Commonwealth unless the person has secured a license as required under this act."

136.    Pursuant to 49 Pa.C. § 19.1, the legislative findings underlying the POVA/BOVA licensing regulations are: "[t]he General Assembly of this Commonwealth finds and declares that the sale of new and used motor vehicles in the Commonwealth vitally affects the general economy of the Commonwealth, the public interest and public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to license manufacturers, dealers and salespersons of new and used motor vehicles doing business in the Commonwealth, <u>in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this Commonwealth</u>." (emphasis added).

137.    Defendants are all required to be licensed under the PAOA/BOVA.

138.    Defendant BREAUX is not a licensed dealer in Pennsylvania.

139.    Defendant BREAUX does not hold any professional licenses in Pennsylvania, including any license under the PAOA/BOVA.

140.    Defendant BREAUX signed the RISC on behalf of CARVANA PHILA and/or CARVANA GA by which CARVANA PHILA and/or CARVANA GA sold and Plaintiff purchased the subject vehicle, and did so for a commission, compensation or other consideration.

141.    Defendant BREAUX has admitted that he signed the subject sales-related documents, including BO, RISC and ODS (Exhibit 13; Breaux Declaration, ¶ 15).[3]

142.    Defendant BREAUX has admitted that he signed the subject sales-related documents, including BO, RISC and ODS while in AZ (Exhibit 13; Breaux Declaration, ¶¶ 4-5, 8, 14, 15).

143.    Defendant BREAUX has admitted that since 2015 he has systematically and continuously signed sales-related documents, including BOs, RISCs and ODSs for sales by, through and at dealerships all across the country, including in Pennsylvania and presumably to Pennsylvania residents (Exhibit 13; Breaux Declaration, ¶¶ 14, 15).

144.    Based on his legal education, his work for the various CARVANA entities, including as General Counsel for Defendant CARVANA LLC, Defendant BREAUX was well-aware of the CARVANA annual reports and the licensing regulations at issue and that he was *involved* in the sales of the vehicles by signing the BOs and RISCs and other sale-related documents as defined in the regulations.

145.    Defendant BREAUX has misrepresented on the record that he was not involved in purchase [sale] or advertising of the subject vehicle (Exhibit 13; Breaux Declaration, ¶ 11).

146.    The documents signed by Defendant BREAUX are in fact and constitute as a matter of law advertising of the subject vehicle and communications from Defendant BREAUX to Plaintiff and constitute in fact and as a matter of law involvement in the sale and advertisement of the subject vehicle related to the subject transaction.

147.    The documents signed by Defendant BREUAX are in fact and constitute as a matter of law advertisements and offer for the sale of the subject vehicle communicated by Defendants, including Defendant BREAUX, and constitute in fact and as a matter of law involvement in the advertisement, offer for sale, and sale of the subject vehicle and subject sale.

148.    The Pennsylvania Automotive Industry Trade Practices broadly define the term "advertisement:"

> *Advertisement*-An oral, written or graphic statement which offers for sale a particular motor vehicle or motor vehicle goods and services or which indicates the availability of a motor vehicle or motor vehicle goods and services, including a statement or representations made in a newspaper, periodical, pamphlet, circular, other publication or on radio or television; contained in a notice, handbill, sign, billboard, poster, bill, catalog or letter; or printed on or contained in a tag or label which is attached to merchandise.

37 Pa.C. § 301.1.

149.    Defendant BREAUX has misrepresented on the record that he had no personal knowledge as of July 16, 2019, the date on the purchase/sale-related records and presumably the date his signature was affixed thereto, including the BO, RISC and ODS, that the vehicle would be "shipped" to Pennsylvania.

---

[3] Plaintiff by no means adopts globally or without exception or nuance the statements in this or any other Exhibit as true.

150.    As of July 16, 2019, the vehicle was delivered (the industry term for giving possession to the customer – not implying a remote sale) to plaintiff at the CARVANA PHILA licensed established place of business in Philadelphia, PA.

151.    As of July 16, 2019, the records that Defendant BREAUX signed identified Plaintiff's home address in Philadelphia, PA.

152.    Defendant BREAUX is employed by Defendant CARVANA (CARVANA PHILA and/or CARVANA GA) for a commission, compensation or other consideration, and is employed by CARVANA to sell vehicles by signing the RISCs and other retail sales agreements.

153.    All of Defendant BREAUX's signatures on the sales-related documents appear identical (Exhibit 2, 3, 10).

154.    Upon information and belief, the Defendant BREAUX signatures are robo-signed, but with his consent and full-knowledge they are being affixed to motor vehicle retail sales agreements related to the sales of motor vehicles by, through and at dealership all across the county, including in Pennsylvania and including presumably to Pennsylvania residents.

155.    According to Carvana Co.'s 2020 Annual Report, from January 2013 through December 31, 2019, CARVANA purchased, reconditioned, sold, and delivered approximately 343,500 vehicles to customers through its website, generating approximately $7.3 billion in revenue.

156.    According to a Carvana Co. February 26, 2020 Press Release, Carvana LLC sold approximately 177,549 vehicles in 2019.

157.    When Defendant BREAUX's signatures were affixed to the RISC and other documents, Defendant BREAUX was physically located in Arizona.

158.   Defendant BREAUX has never regularly worked at Defendant CARVANA PHILA's licensed established place of business in Philadelphia, PA.

159.   Upon information and belief, Defendant BREAUX affixes his signature or permits his signature to be affixed to RISCs for other dealers inside and outside Pennsylvania, and other than the subject Defendant CARVANA PHILA licensed dealer located in Philadelphia.

160.   Defendant BREAUX's signing the RISCs and other sales-related documents without being licensed to do so on a systematic and continuous basis cannot be said to be random, fortuitous or attenuated.

161.   The PAOA/BOVA and Code do not permit a salesperson to work for more than one dealer at a time.  63 P.S. §818.303(c)(1).

162.   The PAOA/BOVA and Code requires that dealers have an established place of business, which must be the licensed address, and dealers cannot conduct business from another location except a duly licensed branch, and cannot operate the business of another on the established place of business.   63 P.S. § 818.202; 63 P.S. § 818.303(e)(1)&(2); 63 P.S. § 818.318(34); 49 Pa.C. § 19.17; 49 Pa.C. § 19.17a; 49 Pa.C. § 19.18(a).

163.   The subject RISC identifies Defendant CARVANA GA's address as 63 Pierce Road, Winder, GA  30680-7280 (Exhibit 3).

164.   Defendant CARVANA's PAOA/BOVA licensed address is 1043 N. Front Street, Philadelphia, PA  19123 (Exhibit 12).

165.   Defendant BREAUX also signed the sworn Odometer Disclosure Statement swearing and affirming on personal knowledge the then existing odometer reading and that the odometer and odometer reading were accurate and reliable.   The "Transferor" is listed as

Defendant BREAUX.  The address at which the aforesaid certification was alleged falsely to have been made on July 16, 2019 was 63 Pierce Road, Winder, GA  30680-7280 (Exhibit 10).

166.    The subject vehicle was not located at 63 Pierce Road, Winder, GA  30680-7280 at any time on July 16, 2019.

167.    Under the PAOA/BOVA and Code, anyone involved in any way in the retail sale of motor vehicle in Pennsylvania must be a licensed salesperson.  63 P.S. § 818.303(a)(1) [formerly 818.5(a)(1)] (license required to engage in vehicle sales); 63 P.S. § 818.303(c) [formerly 818.5(c)] (unlawful for unlicensed salesperson to engage in "<u>any activity related to</u> the buying, <u>selling</u>, or exchanging of a vehicle for a commission, compensation or other consideration"); 63 P.S. § 818.2 ("buying, selling or exchanging.. includes listing, offering … advertising, representing or soliciting, offering or attempting to solicit, negotiate on behalf of another a sale, purchase or exchange or any similar or related activity"); 49 Pa.C. § 19.11 (unlawful to engage in motor vehicle sales without a license); 49 Pa.C. § 19.2 (engaging in motor vehicle sales includes "[t]he display, demonstration, offer for sale or retail sale of any vehicle not owned by that person").

168.    The misconduct more particularly identified above and below constitute violations of 63 P.S. § 818.102 [formerly §818.2], §818.303(a)(1), 818.303(c), 818.303(c)(1), 818.303(d) [formerly §818.5] and 63 P.S. § 818.318(2) ("Make any substantial misrepresentation of material facts"), (3) ("Make any false promise of a character likely to influence, persuade or induce the sale of a vehicle"), (6) ("Having engaged in false, deceptive or misleading advertising of vehicles"), (7) ("Having committed any act or engaged in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee under this

act"), (14) ("Engaging in the business for which such licensee is licensed without at all times maintaining an established place of business as required"), (15) ("Employing any person as a salesperson who has not been licensed as required"), (18) ("Willfully failing to display a license"), (21) ("Willfully having made any false statement as to a material matter in any oath or affidavit which is required by this act"), (22-25) failing to collect lawful taxes and/or failing to pay or issuing a false report related thereto; (26) ("Violating any provision of this act", (28) ("Any violation of the regulations promulgated by the board") and (33) ("Being a dealer which willfully permits any person who is not a licensed salesperson or owner of the dealership to use the dealer's dealer identification number issued by the Department of Transportation, vehicle dealer's license number or dealer's vehicle registration plates for the purpose of buying, selling or exchanging vehicles"). [formerly § 818.19]; (34) (prohibits a licensed dealer from conducting its business "at any other location than authorized by its license)" [formerly §818.19].

169.     Defendants' licensing evasion practices are knowing and intentional.

170.     Defendants admitted knowing that the state licensing laws apply and that they are not complying with them all, and do not want to comply with them all in the interest of maximizing profits.

> Various aspects of our business are or may be subject to U.S. federal and state regulation. In particular, the advertising, sale, purchase, financing and transport of used motor vehicles are highly regulated by states in which we do business and by the U.S. federal government. The regulatory bodies that regulate our business include the Consumer Financial Protection Bureau, the Federal Trade Commission, the United States Department of Transportation, the Occupational Health and Safety Administration, the Department of Justice, the Federal Communications Commission, various state dealer licensing authorities, various state consumer protection agencies and various state financial regulatory agencies. We are subject to compliance audits of our operations by many of these authorities. Certain states have concluded that our activities are subject to vehicle dealer licensing laws,

requiring us to maintain a used vehicle dealer license in order to conduct business in that state. In certain other states, we have elected to obtain a used vehicle dealer license to maximize operational flexibility and efficiency and invest in relationships with state regulators. We have at least one licensed facility in Alabama, Arizona, Florida, Georgia, Indiana, Maryland, Massachusetts, New Jersey, North Carolina, New York, Ohio, Tennessee, Texas, Virginia, and Wisconsin.

Most states regulate retail installment sales, including setting a maximum interest rate, caps on certain fees, or maximum amounts financed. In addition, certain states require that finance companies in general and Carvana in particular file a notice of intent or have a sales finance license or an installment sellers license in order to solicit or originate installment sales in that state. In certain other states, we have chosen to obtain such a license to invest in relationships with state regulators. We have obtained a sales finance license in Arizona, Delaware, Louisiana, New Mexico, Pennsylvania, and Texas, an installment seller license in Florida, Maryland, and New Jersey, and have filed consumer credit notices in Colorado, Indiana, Iowa, Kansas, Maine, Mississippi, Oklahoma, South Carolina, Utah, West Virginia, and Wyoming.

For a discussion of the various risks we face from regulation and compliance matters, see Item 1A "Risk Factors—Risks Related to Our Business—We operate in several highly regulated industries and are subject to a wide range of federal, state and local laws and regulations. Failure to comply with these laws and regulations could have a material adverse effect on our business, results of operations and financial condition."

(Carvana 2019 Annual Report, pp. 15-16) (underlining added).

### *We operate in several highly regulated industries and are subject to a wide range of federal, state, and local laws and regulations. Changes in these laws and regulations, or our failure to comply, could have a material adverse effect on our business, results of operations, and financial condition.*

We are subject to a wide range of evolving federal, state, and local laws and regulations, many of which may have limited to no interpretation precedent as it relates to our business model. Our sale and purchase of used vehicles and related activities, including the sale of complementary products and services, are subject to state and local licensing requirements, state laws related to title and registration, state laws regulating the sale of motor vehicles and related products and services, federal and state laws regulating advertising of motor vehicles and related products and services, and federal and state consumer protection laws prohibiting unfair, deceptive or misleading practices toward consumers. Our facilities and business

operations are subject to laws and regulations relating to environmental protection and health and safety. <u>The financing we offer to customers is subject to state licensing laws and to federal and state laws regulating the advertising and provision of consumer finance</u> options, along with the collection of consumer credit and financial information. <u>Regulators in jurisdictions where our customers reside but in which we do not have a dealer or financing license could require that we obtain a license or otherwise comply with various state regulations, and may seek to impose punitive fines for operating without a license or demand we seek a license in those jurisdictions, any of which may inhibit our ability to do business in those jurisdictions, increase our operating expenses and adversely affect our financial condition and results of operations.</u> In the future, we may engage in different business activities or make changes to our business model that subject us to further state and federal regulation.

(Carvana 2020 Annual Report, pp. 23-24) (bold and italics in original) (underlining added).

171.    Based on these statements, it is believed and therefore averred that neither CARVANA PHILA nor CARVANA GA had a Pennsylvania Motor Vehicle Installment Sellers License at the time of the subject transaction.

172.    Defendant CARVANA was aware that the lawful and licensed operation of dealerships took place at a single, licensed, established place of business: "Providing an end-to-end solution requires inspection, repair, reconditioning and showroom facilities, as well as inventory sourcing and financing capabilities, substantially all of which is traditionally done at each dealership location" (Carvana 2019 Annual Report, p. 4).

173.    The Pennsylvania Department of State Name Search for "Carvana" shows a registration of "Carvana" as a fictitious named owned by Defendant BREAUX (Exhibit 8).

174.    The Pennsylvania Dealer License Application contains the following instructions and affirmations: a) "ALL questions in ALL sections MUST be answered completely and truthfully" (p. 1); b) dealer must supply photographs of its established place of business; 3) "**The Dealership must be a complete and separate entity from any other business or residence**"

(p. 2) (bold in original); c) a work history of every owner, partner and officer must be submitted (p. 2); d) copy of approved certificate of registration for the business must be submitted (p. 3); e) "Note that a license is necessary in order for anyone to conduct vehicle sales on behalf of an entity" (p. 3); f) dealer must identify a person in charge of the dealership (p. 5); g) dealer must identify all officers, members or partners, including SSNs (p. 5);[4] h) dealers must disclose any criminal history for every owner, officer, member or partner and consent to criminal history check (p. 6); applicant must sign certification – "I hereby certify that I have read the Board of Vehicles Act, Act of December 22, 1983, P.L. 306, No. 84, as amended, 63 P.S. §§818.1 – 818.37, and the Board's regulations, 49 Pa. Code §§19.1 – 19.38, and that I will abide by the Act and the regulations while practicing in the Commonwealth of Pennsylvania. I/we certify that I/we have met all facility requirements and all information supplied in this application is true and correct to the best of my/our knowledge and belief. I/we understand that any false statement made is subject to the penalties of 18 Pa.C.S. Section §4904 relating to unsworn falsification to authorities and may result in the suspension or revocation of the license" (p. 7-8) (Exhibit 15).

175.    The Pennsylvania Installment Seller License Application contains the following instructions and affirmations: a) specific reference and recitation of MVSF Section 6211(a) and 6202 clearly setting forth that any installment seller of motor vehicles must be licensed (p. 1); b) specific reference and recitation of MVSF Section 6204(A) requiring the licensees maintain records of its operations at is licensed established place of business (p. 2); c) requirement that applicant identify all officers, directors, members, partners and owners (p. 7); d) applicant must

---

[4] Since the license applications required defendant CARVANA to identify all its members, there hardly could be any reasonable argument that CARVANA should not have to produce this information, which was highly relevant and CARVANA alleged previously would require disproportionate time and effort to produce.

disclose any criminal history for every owner, officer, member or partner and consent to criminal history check (p. 10); e) attest that applicant has read and understand the Consumer Credit Code, Motor Vehicle FAQs and Motor Vehicle Sales Finance Examination Guide (p. 12) (Exhibit 16).

176.    The aforementioned Motor Vehicle FAQs states that "A prospective dealer must follow the instructions contained in Pub459 'Requirements on Becoming a Dealer' in order to receive their Dealer Identification Number and dealer plates (Exhibit 19).

177.    Defendant CARVANA PHILA has salespeople who applied for and received professional sales licenses from Pennsylvania.

178.    The Pennsylvania motor vehicle sales license applications have to be verified and signed by Defendant CARVANA PHILA.

179.    The salesperson license applications contained following instructions and information: a) "An individual who holds a vehicle dealership license as a partnership, corporation or any other form of business entity other than a sole proprietorship must also hold a valid, current vehicle salespersons license in order to conduct vehicle sales. An individual who holds a vehicle dealership license as a sole proprietor is not required to also hold a vehicle salesperson license in order to engage in vehicle sales" (p. 1); b) "Each salesperson shall be licensed to only one dealership at any one time. All salesperson licenses will be issued to the primary location (VD license address). It will be the dealer's responsibility to distribute salesperson licenses to the appropriate branch office locations for employees who desire to work at those locations" (p. 2); c) "Out-of-state residents should consult the Board's web page for information about obtaining an out-of-state background check at: www.dos.pa.gov/vehicle, click on General Board Information and click Criminal Record Check" (p. 1) (Exhibit 14).

180.    The Sales Finance Company Application contained similar instructions and information: a) "**Entire Consumer Credit Code along with other law and regulations apply**" (p. 3) (emphasis in original); b) all officers, directors, owners, partners and members must be identified (p. 6); c) the criminal histories for all officers, directors, owners, partners andmembers must be set forth (p. 9); d) requires applicant to attest that he/she has read and understands the Consumer Credit Code, Motor Vehicle FAQs and Motor Vehicle Sales Finance Examination Guide (p. 11) (Exhibit 17).

181.    The Motor Vehicle Sales Finance Examination Guide advises applicants: a) topics in the exam will include "General Compliance and Licensing," "Requirements as to Contracts and Separate Disclosures," "Contents of Contracts and Disclosure Requirements," "Prohibited Provisions of Contracts," "Prohibited Charges," "Buyer's Waiver of Statutory Protection," and "Compliance with applicable federal laws" (p. 1).

182.    Defendants refuse to acknowledge both Defendant BREAUX's duty to be licensed and all of their duty to comply with all of the prescriptions and prohibitions contained with the licensing statutes and regulations.

183.    But for Defendants' violations of the various licensing statutes, the subject sale could not have taken place, and the subject vehicle could not have been available or offered for sale to Plaintiff in Pennsylvania.

184.    Plaintiff reasonably and justifiably believed that defendants were operating lawfully and in accordance with all legally imposed duties, including in accordance with all required licenses and in accordance with all applicable licensing prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably

relied upon said belief in doing business with defendants.

185.    Plaintiff reasonably and justifiably believed that defendants were operating lawfully, including with all required licenses and in accordance with all applicable licensing prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably relied upon the misrepresentations and the fraudulent and/or deceptive and misleading conduct more fully described above, all of which were in violation of the PAOA/BOVA, including the misrepresentations that the vehicle was carefully inspected, CARVANA CERTIFIED, and never in any accidents or damaged, and that the Title Certificate and Title ownership were being lawfully and properly transferred, and that all of the charges and fees were set forth honestly and accurately.

186.    The misrepresentations and omissions identified more fully above and below, were known or should have been known to Defendants to be false and in violation of the PAOA/BOVA, when made, and/or Defendants were recklessly indifferent to their truth or falsity and violations, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreements.

187.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

188.    As a result of the Defendants' misconduct, the Plaintiff suffered the damage and harm set forth above and below, including received a vehicle of much less value, incurred an inflated amount of debt, was deprived of the use and enjoyment of the subject vehicle, will incur

costs and expenses for replacement transportation, and incurred inconvenience and frustration, together with the other damages set forth above and below.

189.    The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages more fully described above and below, and render the Defendants joint and severally liable to the Plaintiff.

190.    The Board of Vehicles Act – also known as the Profession and Occupation Act – provides for a private right of action and civil remedies.  63 P.S. § 818.329.

### § 818.329.  Civil actions for violations

Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, any person who is or may be injured by a violation of a provision of this act of any party to a franchise who is so injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

63 P.S. § 818.29.

### Count III
### Negligence
### (Plaintiff v. CARVANA)

191.    Plaintiff repeats and realleges all allegations as if set forth at length herein.

192.    This and all subsequent causes of action are pleaded in the alternative and/or in addition to Plaintiff's cause of action for fraud.

193.    The Defendants were negligent in the following respects:

a.      failing to institute appropriate policies and procedures to comply with the applicable laws, including the licensing laws;

b.      failing to institute policies, train personnel, and supervise personnel regarding lawful financing and/or sales presentations;

c.      failing to institute policies, train personnel, and supervise personnel regarding proper pre-sale inspections of vehicles;

d.      failing to institute policies, train personnel, and supervise personnel regarding Title transfers;

e.      failing to institute policies, train personnel, and supervise personnel regarding financing agreements;

f.      failing to institute policies, train personnel, and supervise personnel regarding sales of and performance obligations related to service contracts;

g.      failing to hire competent and/or honest personnel, such as mechanics and salespeople;

h.      failing to properly train and/or supervise its personnel;

i.      failing to honor RISCs and their other promises and representations described more fully above and below;

j.      failing to properly inspect the vehicle, detect damage or defects therein, and/or report said damage or defects to the Plaintiff.

194.    Plaintiff suffered actual damages proximately caused by Defendants' negligence as alleged above and below.

195.    The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages and render the Defendants joint and severally liable to the Plaintiff.

**Count IV**
**Negligent Misrepresentation**
**(Plaintiff v. All Defendants)**

196.     Plaintiff repeats and realleges all allegations as if set forth at length herein.

197.     The conduct of the Defendants as alleged in addition to, and in the alternative, constituted separate negligent misrepresentations that were false because of the failure to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepresentations about the vehicle's history and condition, terms and conditions of the sale and price, Transfer of Title ownership, financing terms, and the charges and fees.

198.     The Defendants supplied information including but not limited to price of the vehicle, that the vehicle was in good, safe and operable condition, the vehicle had been carefully inspected and CARVANA CERTIFIED, the vehicle had not been in any accidents or damaged, that it would Transfer Title timely and lawfully, that it was charging a lawful document preparation fee, that the financing terms and charges were true and accurate, intending to and in fact causing the Plaintiff to buy the vehicle, or taking or refraining from taking action with respect to the vehicle, such as returning the vehicle or rescinding the purchase contract and/or filing suit.

199.     As a direct and proximate result of these negligent misrepresentations, the Plaintiff suffered damages as alleged.

200.     The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to

Plaintiff's indivisible harm and damages and render the Defendants joint and severally liable to the Plaintiff.

**Count V**
**Breach of Contract**
**(Plaintiff v. CARVANA)**

201.    Plaintiff repeats and realleges all allegations as if set forth at length herein.

202.    In the alternative, Plaintiff apparently and/or ostensibly was misled to believe that he had contracted with Defendant for the purchase of the subject vehicle as well as taxes, registration, tags, service contract, and timely transfer of clear and clean Title and Title ownership, which agreement was final and included all payment and financing terms.

203.    Plaintiff performed or satisfied all of his obligations due and owing under the aforementioned finance purchase agreement.

204.    The Plaintiff was at no time relevant in default.

205.    Defendants are in breach of the aforementioned contract in that they have in the past and continue without justification to negligently, intentionally, willfully, fraudulently, and/or recklessly failed and/or refused to deliver to Plaintiff(s) the car for which Plaintiff(s) contracted under the agreed terms and/or demanded the return of the vehicle or deprived Plaintiff(s) of the enjoyment of the vehicle or the amount of credit promised, and/or have not accepted Plaintiff's cancellation as set forth more fully elsewhere.

206.    As a result of Defendants' breach, the Plaintiff suffered the damages outlined above and in the following additional ways:

    a.    increased purchase costs;

    b.    received a vehicle of significantly less value;

    c.    damaged and/or excessively consumed credit, credit rating and/or reputation;

    d.  loss of the use and/or enjoyment of the vehicle;

    e.  incurred cost of replacement transportation;

    f.  spent time resolving problems created by Defendants' breach;

    g.  incurred other incidental and consequential damages, including inconvenience and frustration; and/or,

    h.  incurred increased interest and other expenses for financing the purchase of the vehicle.

207.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, hereby justifying the imposition of exemplary, treble and/or punitive damages.

208.    The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages more fully described above and render the Defendants joint and severally liable to the Plaintiff.

## COUNT VI
### Unfair Trade Practices and Consumer Protection Law
### (Plaintiff v. All Defendants)

209.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

210.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

211.    Defendants' PAOA/BOVA violation are predicate and per se violations of the UTPCPL.

212.    The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive

and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*

213.     The actions and omissions of Defendants has hereinbefore and hereinafter described constitute "Unfair methods of competition" and "unfair or deceptive acts or practices" including violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

   (i)     Passing off goods or services as those of another;

   (ii)    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

   (iii)   Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

   (iv)    Using deceptive representations or designations of geographic origin in connection with goods or services;

   (v)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

   (vii)   Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

   (ix)    Advertising goods or services with intent not to sell them as advertised;

   (xxi)   Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

214.     Defendants had a duty to accurately and honestly represent the subject vehicle's history, condition and quality, and the charges and terms within the RISC, which duty arises under the common law (fraud, negligence, negligent misrepresentation, conspiracy), the AITP, MVSF, PAOA/BOVA and UTPCPL as set forth more fully above and below – irrespective of the RISC in this matter.

40

215.    Defendants had a duty NOT to misrepresent or to present deceptively or misleadingly the subject vehicle's history, condition and quality, and the charges and terms within the RISC, which duty arises under the common law (fraud, negligence, negligent misrepresentation, conspiracy), the AITP, MVSF, PAOA/BOVA and UTPCPL as set forth more fully above and below – irrespective of the RISC in this matter.

216.    Plaintiff justifiably relied on the Defendants' misrepresentations and deceptive and misleading conduct and suffered the harm and damages set forth more fully above and below as a result.

217.    Defendants obtain an unfair competitive advantage over other motor vehicle dealers and salespeople by evading and refusing and/or failing to comply with all applicable licensing rules and regulations, which distorts the market place and harms consumers.

**Pennsylvania Automotive Industry Trade Practices (AITP)**

218.    Vehicles offered for retail sale are presumed to be represented to be roadworthy.

219.    Dealers and salespersons are required to disclose any condition that would render a vehicle non-roadworthy.

220.    Dealers and salespersons are required to disclose if a vehicle has a damaged frame/structure.

221.    Dealers and salespersons cannot make any statement about a product or service without a reasonably sufficient basis.

222.    Any violation of the AITP is an automatic violation of the UTPCPL.

223.    Pursuant to the AITP, Defendants CARVANA, CARVANA PHILA and

41

CARVANA GA were required to post the vehicle prominently with a Buyers Guide.  37 Pa.C. § 301.4(a)(9); see also, 16 CFR **§** 455.2.

224.    The window form or Buyers Guide is incorporated into the RISC by law and by the terms of the RISC. 37 Pa.C. § 301.4(a)(9); see also, 16 CRF § 455.3.

225.    There was never any Window Form or Buyers Guide or any other posting adhered to the vehicle at any time during the transaction or presentation or delivery of the vehicle to Plaintiff.

226.    Plaintiff videotaped the delivery of the vehicle through defendants' vending machine, which video proves that there was never any Window Form or Buyers Guide or other posting adhered to the vehicle.

227.    The Defendants actions, including misrepresenting the vehicle's history, condition and value, misrepresenting the seller and the terms and conditions of the sale and financing, as set forth in more detail above and below, and/or the respective sales documents, violated the following provisions of the Pennsylvania Automotive Industry Trade Practices:

§ 301.2. Advertising and sales presentation requirements
(1) The use of different type, size, style, location, sound, lighting or color, so as to obscure or make misleading a material fact in an advertisement or sales presentation.
(2) The misrepresentation in any way of the size, inventory or nature of the business of the advertiser or seller; the expertise of the advertiser or seller or his agents or employes; or the ability or capacity of the advertiser or seller to offer price reductions.
(3) The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:
        (i) Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.
        (iv) Showing, demonstrating or delivering advertised goods or services which are obviously defective, unusable or unsuitable for the purpose represented or implied in the advertisement or sales presentation.
(4) The failure or refusal to sell a motor vehicle or other goods or services under terms or

conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.

(5) The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter.

(6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

§ 301.4. General provisions -- motor vehicle dealer (a) With regard to a motor vehicle dealer, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

(2) Using a printed or written contract form agreement, receipt or invoice in connection with the sale of a motor vehicle which is not clearly identified and which does not contain the following:

> (i) The name and address of the dealer and purchaser.
>
> (iii) A description of the purchased vehicle as either "new" or "used" and, if used, a brief description of its prior usage such as "executive," "demonstrator," "reconstructed," or any prior usage which is required to be noted on a Pennsylvania Certificate of Title or which appears on the title of any state through which the dealer has acquired ownership.(iv) The total contract price, including an itemized list of charges for repairs, services, dealer-installed optional accessories and documentary preparation which are not included in the purchase price.

(4)     Using in a motor vehicle purchase contract a liquidated damage clause or similar clause which requires the forfeiture of a purchaser's deposit or security when the purchaser cancels or breaches the contract unless: the clause contains a specific dollar amount or item to be retained by the dealer; the clause is clear and conspicuous; the purchaser assents to the clause by initialing the same; and the clause is not otherwise unlawful.

(6) Failing to refund the full amount of a purchaser deposit promptly when:

> (iv) The dealer fails to deliver to the purchaser a motor vehicle which conforms to the terms of the contract.

(9) Where no express warranty is given, attempting to exclude the implied warranties of merchantability and fitness for a particular purpose in the sale of a motor vehicle purchased primarily for personal, family or household purposes unless the following notice in at least 20-point bold type is prominently affixed to a window in the motor vehicle so as to be easily read from the outside and is brought to the attention of the prospective purchaser by the seller: This vehicle is sold *without* any *warranty.* The purchaser will bear the *entire expense* of repairing or correcting any defects that presently exist and/or may occur in the motor vehicle unless the salesperson promises *in writing* to correct such defect or promises in *writing* that certain defects do not exist. This paragraph prohibits the use of the term "AS IS" unless the sales contract, receipt, agreement or memorandum contains the following information in a clear, concise and conspicuous

43

manner on the face of the document; the notice shall be in addition to the window statement required by this paragraph and may not contradict an oral or written statement, claim or representation made directly or by implication with regard to the quality, performance, reliability or lack of mechanical defects of a motor vehicle which is offered for sale: AS IS*THIS MOTOR VEHICLE IS SOLD AS IS WITHOUT ANY WARRANTY EITHER EXPRESSED OR IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE.*(10) Failing to forward to the proper Commonwealth agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law.

10) Failing to forward to the proper Commonwealth agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law.

**Pennsylvania Motor Vehicle Sales Finance**

228.   Defendant CARVANA must be licensed pursuant to MVSF as both an installment seller and sales finance company.  12 Pa.C.S.A. § 6211(a).

229.   Pursuant to the MVSF, an applicant must identify the name under which it will be doing business and the physical address at which it will do business.   12 Pa.C.S.A. § 6212(b)(1)&(2).

230.   Pursuant to the MVSF, an installment seller may not operate from any other address unless all records are kept at one address and the seller submits a separate application for each location including paying separate fees and bonds.  12 Pa.C.S.A. § 6219(a)&(d).

231.   Neither Defendant CARVANA PHILA or CARVANA GA submitted any application or obtained any installment license in PA to operate out of each other's addresses.

232.   Parties to a regulated installment sales contract cannot contract out of the scope and application of the regulations.  12 Pa.C.S.A. § 6234.

233.   Pursuant to the MVSF, all installment sales contracts must be signed by the seller. 12 Pa.C.S.A. § 6221(a)(3).

234.    Pursuant to the MVSF, all installment sales contracts must contain the name and street address of all parties to the contract.  12 Pa.C.S.A. § 6222(1).

235.    Pursuant to the MVSF, Defendant CARVANA's license may be revoked if it has violated any provision of the MVSF and violators are subject to fine or imprisonment.   12 Pa.C.S.A. § 6272.

236.    Pursuant to the MVSF, anyone involved in any operations without a required license is subject to fine or imprisonment, including owners, partners, and members.   12 Pa.C.S.A. § 6271.

237.    Pursuant to the MVSF, Defendants must maintain satisfactory records to determine that the business is being operated in accordance with the MVSF and may not falsify any records.

238.    Defendants violated the MVSF by defrauding Plaintiff.

239.    Defendants violated the MVSF by failing willfully to perform a written agreement with the Plaintiff.

240.    Defendants violated the MVSF by overcharging for sales taxes

241.    Defendants violated the MVSF by engaging in unfair, deceptive, fraudulent or illegal practices or conduct in connection with any business regulated under the MVSF.

242.    Plaintiff's claims all damages to which they are entitled arising from Defendants' violations of the Unfair Trade Practices and Consumer Protection Law.


243.    All of the duties, prescriptions and prohibitions set forth in the AITP, MVSF, PAOA/BOVA and UTPCPL described more fully above related exist and apply irrespective of

the RISC and any duties set forth in the RISC, and are independent of any claim or breach of contract or the success for any claim for breach of contract.

244.     Plaintiff reasonably and justifiably believed that defendants were operating lawfully and in accordance with all legally imposed duties, including in accordance with all required licenses and in accordance with all applicable licensing prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably relied upon said belief in doing business with defendants.

245.     Plaintiff reasonably and justifiably believed that defendants were operating lawfully, including with all required licenses and in accordance with all applicable licensing prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably relied upon the misrepresentations and the fraudulent and/or deceptive and misleading conduct more fully described above, all of which were in violation of the AITP, MVSF, PAOA/BOVA and UTPCPL, including the misrepresentations that the vehicle was carefully inspected, CARVANA CERTIFIED, and never in any accidents or damaged, and that the Title Certificate and Title ownership were being lawfully and properly transferred, and that all of the charges and fees were set forth honestly and accurately.

246.     The misrepresentations and omissions identified more fully above and below, were known or should have been known to Defendants to be false and in violation of the AITP, MVSF, PAOA/BOVA and UTPCPL, when made, and/or Defendants were recklessly indifferent to their truth or falsity and violations, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreements.

46

247.     As a result of the aforementioned misconduct, the Plaintiff suffered the damages outlined above and below.

248.     The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

249.     The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages and render the Defendants joint and severally liable to the Plaintiff.

250.     The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*

251.     Plaintiff claims all damages to which he is entitled arising from Defendants' violations of the Unfair Trade Practices and Consumer Protection Law.

252.     As a result of Defendants' misconduct, the Plaintiff suffered the damages outlined above and in the following additional ways:

   a.   increased purchase costs, including overcharges;

   b.   received a vehicle of significantly less value;

   c.   damaged and/or excessively consumed credit, credit rating and/or reputation;

   d.   loss of the use and/or enjoyment of the vehicle;

   e.   incurred cost of replacement transportation;

f.   spent time resolving problems created by Defendants' breach;

g.   incurred other incidental and consequential damages, including inconvenience and frustration; and/or,

h.   incurred increased interest and other expenses for financing the purchase of the vehicle;

i.   Equitable remedies, including rescission, revocation, rejection, restitution and disgorgement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

253.   Declaratory judgment that the noted Defendants' conduct violated the AITP, FTCUCR, MVSF and UTPCPL.

254.   Actual damages for the decreased value of the vehicle;

255.   Actual damages for loss of the use and enjoyment of the vehicle;

256.   Actual damages for the unlawful documentary fee;

257.   Actual damages for overcharges.

258.   Actual damages for the increased interest and taxes on the inflated sales price;

259.   Actual damages for the excess consumption of his credit, credit rating or reputation.

260.   Actual damages for frustration and inconvenience;

261.   Reasonable attorney fees and costs pursuant to the UTPCPL.

262.   Treble damages pursuant to the UTPCPL.

263.   Punitive damages.

48

**TRIAL BY JURY**

264.    Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const.

amend. 7. Fed. R. Civ. Pro. 38.


/s/William C. Bensley
BENSLEY LAW OFFICES, LLC
Attorney for Plaintiff
By:  William C. Bensley, Esquire
Pa. Id. No. 79953
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
(267) 322-4000


Dated: 6/12/2020

**Certificate of Service**

I, William C. Bensley, counsel for Plaintiff, hereby certify that the foregoing was served on all counsel of record *via* email:


Dated: June 12, 2020                    /s/ William C. Bensley_____