IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW OKULSKI,<br>        Plaintiff,<br><br>v.<br><br>CARVANA, LLC, PAUL BREAUX, AND KATELYN GREGORY,<br>        Defendants. | CIVIL ACTION<br><br><br><br>NO.  20-1328 |

**MEMORANDUM OPINION**

When a used Nissan car Plaintiff Andrew Okulski purchased from an online car dealer, Carvana, LLC ("Carvana"), malfunctioned he sued Carvana, as well as its Vice President and General Counsel Paul Breaux and employee Katelyn Gregory (collectively, "Defendants"), alleging a wide-ranging consumer fraud scheme, premised on the theory that the car's defects are inconsistent with Carvana's advertising and other documents Carvana gave him when he bought the car.  In his Second Amended Complaint, Okulski brings claims of fraud and negligent representation, as well as violations of the Pennsylvania Board of Vehicles Act ("BVA"), 63 P.S. § 818.1 *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-1 *et. seq.*, against all Defendants and a breach of contract claim against Carvana.  Breaux has moved to dismiss all claims against him for lack of personal jurisdiction, and all three Defendants collectively move to dismiss the fraud, negligent misrepresentation, BVA, and UTPCPL claims for failure to state a claim.[1]

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On July 16, 2019, Okulski, a Pennsylvania resident, bought a used 2017 Nissan Versa

---

[1] Carvana's motion does not seek to dismiss the breach of contract claim.

("the Vehicle") from Carvana for just over $16,000.  Carvana is an e-commerce platform for buying and selling used cars.  The company is publicly traded and has its principal place of business in Arizona.  Defendant Breaux is an Arizona resident and works at Carvana's headquarters.

In connection with the purchase, Okulski and Carvana executed a series of agreements, including the Retail Purchase Agreement (the "RPA"), the Retail Installment Contract and Security Agreement (the "RISC"), the Carvana Care Application (the "Application"), the Odometer Disclosure Statement, the Carvana Limited Warranty, and the GAP Addendum to Retail Installment Contract (collectively, the "Transaction Documents").[2]  Breaux executed the Transaction Documents on behalf of Carvana by remotely electronically signing them.

There is considerable disagreement as to where the Vehicle was purchased.  Okulski maintains that it was purchased at "CARVANA PHILA," where he signed the Transaction Documents and took possession of the car.  Defendants respond that "CARVANA PHILA" is a pleading fiction invented by Plaintiff—it is not a separate legal entity or party in this case.  Because Carvana is an online retailer, it maintains the purchase was made online.  Notably, the RPA's header states "Retail Purchase Agreement – Georgia" and the document identifies the dealership selling the car as Carvana, LLC, located in Winder, Georgia.  By the terms of the

---

[2] Okulski has attached these agreements, as well as the Vehicle's CarFax report and screenshots of Carvana's website, to his Complaint.  Because the Complaint's allegations rely on these documents, the Court may consider them in deciding the motion to dismiss.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that courts may consider documents that are integral or explicitly relied upon in a complaint without converting a motion to dismiss into one for summary judgment).

Additionally, Defendants ask the Court, in ruling on their Motion to Dismiss to consider Carvana's 2019 and 2020 Annual Reports.  Because the Complaint cites to both documents and they are publicly filed with the Securities & Exchange Commission, the Court may consider them in ruling on this motion to dismiss.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (explaining that on motion to dismiss under Rule 12(b)(6), a court may consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents").

contract, Okulski "agree[d] to accept title and ownership of the Vehicle" in Georgia. The Application and the RISC also identify the Winder, Georgia dealership as the seller, although the RISC has a choice of law provision staying "[t]his contract is governed by the law of Pennsylvania."

Several months after the purchase and after driving the Vehicle for approximately 3,000 miles, the car began to have mechanical problems including engine misfires, a shorted engine coil, shuddering on acceleration and shaking when the car went over 40 miles an hour. Okulski took the Vehicle to a shop for repairs, which were performed pursuant to warranties at no cost to him. Okulski alleges that the repair shop discovered "numerous classic, tell-tale signs of damage, improper and incomplete repairs, and still existing damage". Although at the time he bought the Vehicle, the CARFAX report did not show any reported accidents, and Defendant Gregory, a Carvana salesperson, represented to him that the only blemish was a small scratch under the right-side headlight, Okulski concluded that it had been involved in an accident,

The core of Okulski's Complaint is that he was induced to purchase the Vehicle by Defendants' representation to him that it had been "carefully inspected" and was "CARVANA CERTIFIED." But, he contends that these representations were untrue: rather it was "in a damaged, defective, unfit, unmerchantable and unsafe condition." He further alleges that Breaux was required to be licensed in Pennsylvania but was not, and therefore his signing the Transaction Documents constituted "licensing evasion."

## II. ANALYSIS

### A. Breaux's Motion to Dismiss for Lack of Personal Jurisdiction

As a preliminary matter, Defendant Breaux asserts that the Second Amended Complaint as it pertains to him should be dismissed under Rule 12(b)(2) because the Court lacks personal

3

jurisdiction over him in that he is an Arizona citizen with no substantial contacts in Pennsylvania.

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel, Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004); *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).[3]

"A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Thus,

> once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990). Thus, once Breaux moved to dismiss for lack of personal jurisdiction, Okulski had the burden of coming forth with competent evidence demonstrating that Breaux had sufficient contacts to justify the Court's exercise of personal jurisdiction. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (citation omitted).

---

[3] "A district court . . . may require more than a prima facie showing of jurisdiction by holding a quasi-evidentiary hearing. . . ." C. Wright & A. Miller, Federal Practice & Procedure § 1067.6. "[I]f the Court conducts an evidentiary hearing, the plaintiff has the more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence." *Steinfeld v. EmPG Intern., LLC*, 97 F. Supp.3d 606, 611-12 (E.D. Pa. 2015) (internal quotations and citations omitted). The Court has reviewed the exhibits attached to their briefs by the parties and, having done so, does not find it necessary to hold an evidentiary hearing.

4

Personal jurisdiction over a non-resident defendant is proper only if permitted by Pennsylvania's long-arm statute and the United States Constitution. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). Pennsylvania's long-arm statute authorizes personal jurisdiction to the extent permitted by the Fourteenth Amendment of the Constitution. *See* Pa. C.S.A. § 5322(b); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996). Thus, the personal jurisdiction inquiry merges into a single due process analysis under the Constitution. *O'Connor*, 496 F.3d at 316.

There are two basic forms of personal jurisdiction: general and specific. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit."). Okulski's Complaint does not indicate where Breaux lives. Neither has he attached to his opposition to the Rule 12(b)(2) motion any declaration or exhibits to remedy this lacuna. *See Patterson*, 893 F.2d at 603-04 (explaining that "once the [jurisdictional] defense has been raised, then the plaintiff must sustain [her] burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence"). Breaux on the other hand has attached a sworn declaration to the motion to dismiss in which he states that he has never lived in Pennsylvania and has been domiciled in Arizona since 2015. Accordingly, there is no general jurisdiction over Breaux in Pennsylvania.

"Specific personal jurisdiction exists when the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of

5

or relate[] to' those activities.'" *BP Chems. Ltd.*, 229 F.3d at 259 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The specific jurisdiction inquiry has three parts: (1) the defendant must have "purposefully directed his activities at the forum," (2) the litigation must "arise out of or relate to at least one of those activities," and (3) "if the first two requirements have been met a court may consider whether the exercise of jurisdiction comports with fair play and substantial justice." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

Okulski's argument is that by signing the RISCs, some of which were for vehicles sold in Pennsylvania, Breaux purposefully directed his activities at Pennsylvania. Certainly, "'jurisdiction over corporate officers in their personal capacities *may* be based on acts performed in their corporate capacity. . .", *Hyndman v. Johnson*, 2011 WL 570088, at *4 (E.D. Pa. Feb. 15, 2011) (emphasis added) (quoting *Am. Intern. Airways, Inc. v. Am. Intern. Grp., Inc.*, 1991 WL 87276, at *4 (E.D. Pa. May 21, 1991)), but "only those actions taken within the forum state are to be considered in the jurisdictional analysis." *Am. Intern.*, 1991 WL 87276, at *4. "[A]n individual's transaction of business solely as an officer or agent of a corporation does not create personal jurisdiction over that individual." *Feld v. Tele-View, Inc.*, 422 F. Supp. 1100, 1104 (E.D. Pa. 1976) (citing *Miller v. Am. Tel. & Telegraph Co.*, 394 F. Supp. 58, 62-63 (E.D. Pa. 1975), *aff'd*, 530 F.2d 964 (3d Cir. 1976)).

In his Second Amended Complaint, Okulski readily admits that Breaux has never regularly worked in Philadelphia and signed the Transaction Documents while "physically located in Arizona." Breaux's uncontradicted affidavit states that he is not involved "in the execution of day-to-day vehicle sales" but rather signs certain documents as a duly authorized agent of Carvana. He did not know the car at issue here was being purchased by a Pennsylvania

resident, and indeed the Transaction Documents state that the sale took place in Georgia. Breaux's limited engagement with this matter, which consisted of robo-signing certain corporate contracts, does not constitute Breaux "purposefully directing" his activities at Pennsylvania. *See Burger King*, 471 U.S. at 473; *see also Feld*, 422 F. Supp. at 1104. Under these facts, specific jurisdiction does not exist over Breaux in Pennsylvania.

### B. Defendants' Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). The relevant question is not whether the claimant "will ultimately prevail . . . but whether [the] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011).

Defendants collectively assert that Plaintiff's claims for common law fraud, negligent misrepresentation, and violations of the UTPCPL and BVA should be dismissed pursuant to Rule 12(b)(6), on the following grounds: (1) application of the "gist of the action" doctrine and/or the economic loss doctrine; (2) application of Rule 9(b), which requires that claims sounding in fraud be pled with particularity; and, (3) either the BVA does not apply here, or if it does, Okulski has failed to plead a cognizable BVA violation. Because the Court finds Defendants' other arguments dispositive, Defendant's Rule 9(b) argument need not be addressed.

Defendants contend that any representations regarding the Vehicle are covered by contract, and accordingly, the gist of the action doctrine precludes the fraud and negligent representation claims which merely recast breach of contract claims as torts. Okulski responds that his Complaint is focused on fraud, not breach of contract, and that his allegations are rooted

7

in fraudulent inducement to enter a contract, which he argues falls outside the scope of the gist of the action doctrine.

The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (internal citation omitted). The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* at 19.

Courts evaluate the "gist or gravamen of the cause of action stated in the complaint" to determine whether, "although sounding in tort, [it] is, in actuality, a claim against the party for breach of its contractual obligations." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014). "[T]he mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling." *Id.* at 68. "Whether the gist of the action doctrine applies in any particular setting is a question of law." *The Knit With v. Knitting Fever, Inc.*, 2009 WL 3427054, at *5 (E.D. Pa. Oct. 20, 2009), *aff'd*, 625 F. App'x 27 (3d Cir. 2015).

In *eToll*, the seminal Pennsylvania case on the application of the gist of the action doctrine to fraud claims, the Superior Court held that the doctrine applies to claims alleging fraud in the performance of a contract but observed (without holding) that "fraud in the *inducement* of a contract would not necessarily be covered by [the] doctrine because fraud to induce a person to enter into a contract is generally collateral to (*i.e.*, not 'interwoven' with) the terms of the contract itself." 811 A.2d at 17 (emphasis in original). Thus, as Okulski correctly states, there is

8

a basis for drawing a distinction between fraudulent inducement claims and fraudulent performance claims.  But Pennsylvania federal courts have reached different conclusions from the state courts about whether the gist of the action doctrine bars fraudulent inducement claims.  *Compare Williams v. Hilton Group PLC*, 93 F. App'x 384, 386-87 (3d Cir. 2004) (affirming fraudulent inducement claim being barred by gist of the action doctrine); *Vives v. Rodriguez*, 849 F. Supp.2d 507, 518-20 (E.D. Pa. 2012) (collecting cases and holding that fraudulent inducement claims were barred by gist of the action doctrine where "the false representation concerned duties later enshrined in the contract") *with Telwell v. Grandbridge Real Estate Capital LLC*, 143 A.3d 421, 429-30 (Pa. Super. 2016) (refusing to dismiss fraudulent inducement claim based on gist of the action doctrine); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. 2005) (same).

      As this Court has previously discussed, *see Wen v. Willis*, 117 F. Supp.3d 673 (E.D. Pa. 2015), although courts are far from unified on this question, absent specific guidance from the Third Circuit or the Pennsylvania Supreme Court, this Court continues to "opt for the interpretation [of Pennsylvania law] that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently."  *Id.* at 682 (quoting *Vives*, 849 F. Supp.2d at 522).  This Court therefore continues to rely on the holding in *Vives*, which after a thorough analysis of the case law predicted that the Pennsylvania Supreme Court would apply the gist of the action doctrine to bar fraudulent inducement claims arising from the misrepresentation of an intention to perform under a contract.  *See* 849 F. Supp.2d at 520; *see also Clark v. EMC Mortgage Corp.*, 2009 WL 229761, at *4 (E.D. Pa. Jan. 29, 2009) ("Since *eToll*, courts have established few bright-line rules in the area, but rather have explored, on a case-by-case basis, the applicability of the gist of the action doctrine to claims of fraud that relate to party contracts,

9

including claims of fraud in the inducement of such contracts.").

Given this backdrop, the resolution of this issue turns on the gist of the action doctrine's fundamental question: "What's this case really about?" *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (internal quotations omitted). Here, Okulski's fraud and negligent misrepresentation claims are based on Defendants' alleged misrepresentations in the course of the transaction, which are contained in the Transaction Documents. Specifically, the Complaint alleges that "[p]rior to and during the subject transaction," Defendants misrepresented the Vehicle's condition and accident and inspection history—misrepresentations that Okulski trusted and that induced him to make the purchase. The CarFax report Carvana supplied as part of the transaction stated that the Vehicle had been in "no accidents" and that "no damage" had been reported. Additionally, as Okulski alleges, "Defendants provided express warranties, including that the vehicle was carefully inspected [and] CARVANA CERTIFIED"—indeed, pursuant to the parties' agreements, the Vehicle was covered by a 100-day limited warranty as well as a manufacturer's warranty.

Okulski's allegations about Defendants' knowledge at the time of signing are akin to a party signing a contract knowing they have no intention of performing their duties under it. *See Downs*, 639 F. App'x at 820 (barring fraud in the inducement claim based on defendants' "alleged failure to fulfill their contractual promises" where "the obligation to perform was the result of the contract"); *see also Tier 1 Innovation, LLC v. Expert Tech. Grp., LP*, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing fraud in the inducement and negligent misrepresentation claims stemming from defendant's representations of its expertise and ability to perform because the parties' contract was not "merely collateral" but instead "at the heart" of both claims). Moreover, the Complaint alleges that Defendants developed a "scheme" that

10

involved "bury[ing]" certain terms "within the fine-print terms and clauses" of the contract. By Okulski's own description, therefore, the gist of the dispute is about the parties' contractual terms. The torts allegedly committed by Defendants are "inextricably intertwined" with the parties' contractual terms. *See eToll*, 811 A.2d at 21. Such claims are barred under the gist of the action doctrine, and accordingly Defendants' motion shall be granted on the fraud and negligent misrepresentation claims.[4]

Okulski alleges that Defendants violated the UTPCPL by misrepresenting the condition of the Vehicle. Defendants argue that his UTPCPL claim must also be dismissed under the gist of the action doctrine, or alternatively, the economic loss doctrine, arguing that the claims are premised upon the parties' contract.[5]

Like the gist of the action doctrine, the economic loss doctrine was established to maintain a boundary between contract and tort law; it "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract. . . ." *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618-20 (3d Cir. 1995).[6]

The Pennsylvania Supreme Court has not ruled on whether the economic loss doctrine

---

[4] The gist of the action doctrine applies with equal force to bar the tort claims against Gregory because "Pennsylvania courts have repeatedly held that employees receive coextensive protection from the gist of the action doctrine." *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 911 (3d Cir. 2015); *see also eToll*, 811 A.2d at 12, 20.

[5] Defendants move to dismiss "all of the duplicative non-contract claims" under these doctrines, and they include the BVA claim in that grouping. However, because Defendants have cited no case law analyzing how the doctrines apply to BVA claims, this argument will not be addressed. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").

[6] Okulski alleges that he suffered not only economic damages but also "harm to his credit rating and credit reputation"—yet his only argument on this point is in a footnote that does not connect the alleged harm to any viable claim: As stated *supra*, his fraud and negligent misrepresentation claims will be dismissed and, with respect to his UTPCPL claim, he has not cited any cases permitting damages under the UTPCPL for harm to a credit rating and reputation. *See, e.g.*, *Allen v. Wells Fargo, N.A.*, 2015 WL 5137953, at *9 (E.D. Pa. Aug. 28, 2015) (dismissing UTPCPL claim based on alleged "harm to credit score" because plaintiff could not "show that he suffered an ascertainable loss").

applies to bar UTPCPL claims for economic damages, but in *Werwinski*, the Third Circuit predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to such claims. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002). This prediction has long been subject to criticism by the district courts. *See, e.g.*, *Catena v. NVR, Inc.*, 2020 WL 3412348, at *6 (W.D. Pa. June 22, 2020) (collecting cases). Moreover, post-*Werwinski*, the Pennsylvania Superior Court has held that UTPCPL claims are not subject to the economic loss doctrine because they are statutory claims that do not sound in negligence. *See Knight v. Springfield Hyundai*, 81 A.3d 940, 951-52 (Pa. Super. 2013).

But as this Court has previously discussed, *see McGuckin v. Allstate Fire and Cas. Ins. Co.*, 118 F. Supp.3d 716, 720 (E.D. Pa. 2015), when the Third Circuit has predicted how the Pennsylvania Supreme Court will rule on an issue, this Court is bound by that precedent unless one of those two courts subsequently rules otherwise. *See also Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174 (3d Cir. 2016) (post-*Knight*, affirming the dismissal of a UTPCPL claim as barred by the economic loss doctrine and citing *Werwinski* as binding precedent); *Dixon v. Northwestern Mut.*, 146 A.3d 780, 790 n.12 (Pa. Super. 2016) (noting "with concern" that *Knight* and *Werwinski* are "in tension" and that "[t]his split in authority means that state and federal courts in this Commonwealth follow difference substantive rules in considering claims advanced under the UTPCPL").

Thus, following *Werwinski*, the economic loss doctrine bars Plaintiff's UTPCPL claim.[7]

---

[7] In *Werwinski*, the Third Circuit discussed a "limited" exception to the economic loss doctrine for fraudulent inducement claims, "but only if the fraud is 'extraneous to the contract,' not 'interwoven with the breach of contract.'" 286 F.3d at 676 (quoting *Huron Tool & Eng. Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. App. 1995)). "'[W]here the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods'"—and the exception therefore does not apply. *Id.* That is precisely the case here, and thus the limited exception does not work for Okulski; the economic loss doctrine does apply.

Additionally, Okulski misconstrues the Pennsylvania Supreme Court's opinion in *Dittman v. UPMC*, 196 A.3d 1036

12

*See Werwinski*, 286 F.3d at 680-81 (dismissing UTPCPL claim based on economic loss from defective Ford transmission); *see also, e.g.*, *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp.2d 546, 556-59 (M.D. Pa. 2010).  Okulski's UTPCPL claim "flows" from the parties' contracts, *see Duquesne*, 66 F.3d at 618—alleging misrepresentations about "the subject vehicle's history, condition and quality, and the charges and terms within the RISC" and claiming that Defendants "fail[ed] willfully to perform a written agreement with the Plaintiff."  Because no amount of artful pleading will separate them, amendment would be futile, and the UTPCPL claim shall therefore be dismissed with prejudice.

Lastly, the remaining Defendants, Carvana and Gregory, move to dismiss the BVA claim against them.  Okulski alleges that Breaux was not properly licensed in Pennsylvania, and his signatures on the Transaction Documents on behalf of Carvana therefore constitute a BVA violation.[8]

The BVA makes it unlawful "to engage in the business as a salesperson [or] dealer . . . *within this Commonwealth* unless the person has secured a license."  63 Pa. C.S. § 818.303(a)(1)

---

(Pa. 2018), describing it as holding that the economic loss doctrine "only applies where duties arise strictly and solely under contract" and contending that it implicitly overrules *Werwinski*.  But in *Dittman*, the Pennsylvania Supreme Court considered only negligence claims—not fraud or statutory claims—and held that economic losses are recoverable (*i.e.*, not barred by the economic loss doctrine) where "the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." *Id.* at 1038.  The court held that because the employees had alleged their employer breached a common law duty to act with reasonable care in storing their personal and financial data, a legal duty existed *independent* of any contractual employment obligations between the parties, and the economic loss doctrine did not bar the employees' negligence claims.  *Id.* at 1056.

By contrast, the duties that arise here are by virtue of the parties' contract.  Dismissal is therefore appropriate and in keeping with other district courts that, post-*Dittman*, have applied the economic loss doctrine to bar UTPCPL claims in similar circumstances.  *See, e.g.*, *Bordoni v. Chase Home Fin. LLC*, 374 F. Supp.3d 378, 386 (E.D. Pa. 2019) (discussing *Dittman* and concluding that "the Court . . . remains bound by the Third Circuit's holding in *Werwinski* and the economic loss doctrine bars the UTPCPL claim"); *Clapps v. State Farm Ins. Cos.*, 2020 WL 1308230, at *6 (E.D. Pa. Mar. 19, 2020).

[8] Although Okulski includes Gregory in his BVA claim, the Complaint does not include any allegations at all that could even arguably be construed to support a BVA claim against her.

(emphasis added).  The Transaction Documents repeatedly stipulate that the Vehicle was purchased from a Georgia dealer.  Moreover, the transaction took place online, because as Carvana's website and Annual Reports explain, it is an online-only business and consumers "execut[e] their purchases" digitally.  While Plaintiff describes these stipulations and the online-only business model as a sham, the Court need not accept such conclusory labels.  *See Iqbal*, 556 U.S. at 678 (providing that "mere conclusory statements . . . do not suffice"); *see also Brightwell v. Lehman*, 2006 WL 931702, at *3 (W.D. Pa. April 10, 2006) (noting that "the court need not accept allegations in the complaint as true where they are contradicted by the documents attached to the complaint").  Okulski has offered no authority compelling extension of the BVA's reach to an online transaction that stipulated the Vehicle was being sold by a Georgia dealer.  Accordingly, the BVA claim will be dismissed with prejudice.

      For the foregoing reasons, Defendants' motion shall be granted.  An appropriate order follows.

**August 24, 2020**

                                                     **BY THE COURT:**

                                                    /s/Wendy Beetlestone, J.
                                                    _____
                                                    **WENDY BEETLESTONE, J.**