# EXHIBIT A

**BENSLEY LAW OFFICES, LLC**
By:    William C. Bensley
Identification No. 79953
1500 Walnut Street, Suite 900
Philadelphia, PA 19106
Email: wcbensley@bensleylawoffices.com
(267) 322-4000

**Attorneys for Plaintiffs**

ASSESSMENT OF DAMAGES HEARING:
☐ IS ☐ IS NOT REQUIRED

☐ JURY ☐ NON-JURY ☐ ARBITRATION

Filed and Attested by the
Office of Judicial Records
13 AUG 2020 02:58 pm

---

| | |
|---|---|
| ROGER M. BURDEN<br>328 Ives Avenue<br>Carneys Point, NJ 08069<br>    v.<br>CARVANA, LLC<br>1043 N. Front Street<br>Philadelphia, PA 19123<br>    and<br>PAUL BREAUX<br>1043 N. Front Street<br>Philadelphia, PA 19123<br>    and<br>CAPITAL ONE AUTO FINANCE<br>7933 Preston Road<br>Plano, TX 75024-2302 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>AUGUST TERM, 2020<br>NO: |

**COMPLAINT**
**NOTICE TO DEFEND**

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find our where you can get legal help.* | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas espuestas en las paginas siguientes, usted tiene veinte (20) disa de plazo el partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perer dinero o sus propiedades u otros derechos importantes para usted.<br><br>*Lleva esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagartal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede consequir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333 | Asociacion de Licenciados<br>de Filadelfia<br>Servicio de Referencia e<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107 |

William Bensley, Esquire
Attorney ID: 79953
Bensley Law Offices, LLC
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
Ph: 267-838-9654
Em: wcbensley@bensleylawoffices.com
*Attorney for Plaintiff*

| | | |
|---|---|---|
| **ROGER M. BURDEN** | : | **COURT OF COMMON PLEAS** |
| **328 Ives Avenue** | : | **PHILADELPHIA COUNTY** |
| **Carneys Point, NJ  08069** | : | **AUGUST TERM, 2020** |
| v. | : | **NO:** |
| **CARVANA, LLC** | : | |
| **1043 N. Front Street** | : | |
| **Philadelphia, PA  19123** | : | |
| and | : | |
| **PAUL BREAUX** | : | |
| **1043 N. Front Street** | : | |
| **Philadelphia, PA  19123** | : | |
| and | : | |
| **CAPITAL ONE AUTO FINANCE** | : | |
| **7933 Preston Road** | : | |
| **Plano, TX  75024-2302** | : | |

**COMPLAINT**
**FRAUD**
**PARTIES**

1.   Plaintiff, Mr. Roger M. Burden, is an adult individual presently residing at 328 Ives
Avenue, Carneys Point, NJ  08069.

2.   Defendant CARVANA, LLC (CARVANA), with an established place of business and
corporate headquarters located at 1930 W. Rio Salado Pkwy, Tempe, AZ  85281, and a
Pennsylvania dealer licensed and required established place of business located at 1043 N.
Front Street, Philadelphia, PA  19123 (CARVANA PHILA) and a separate and distinct
Georgia dealer licensed and required established place of business located at 63 Pierce
Road, Winder, GA  30680-7280 (CARVANA GA); at all times relevant, acting alone or in
concert with others, formulated, directed, concealed, controlled, conspired, substantially
assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

3.   Defendant, PAUL BREAUX, is a supervising agent, Vice-President, Secretary, and/or
employee of CARVANA, CARVANA PHILA, and holds a management position at and/or
with said Defendant, and at all times relevant, acting alone or in concert with others,
formulated, directed, concealed, controlled, conspired, substantially assisted, enabled
and/or participated in the acts and practices set forth in this Complaint.

1

4. Defendant, CAPITAL ONE AUTO FINANCE (COAF) is a corporation licensed to do business in the Commonwealth of Pennsylvania, that regularly does business in Philadelphia County, and that has headquarters located at 7933 Preston Road, Plano, TX 75024-2302; and at all times relevant, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5. At all times relevant hereto, Defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

## FACTUAL ALLEGATIONS

6. In or about May 2020, plaintiff received a solicitation from COAF regarding pre-approval for auto financing.

7. Plaintiff saw the subject vehicle advertised on the COAF Website.

8. Plaintiff submitted an application to be pre-qualified for financing to purchase the subject vehicle.

9. Plaintiff also went to the CARVANA Website and saw the subject 2016 Buick Cascada (VIN: W04WT3N50GG104958) advertised.

10. Defendant CARVANA describes itself as a leading e-commerce platform for buying and selling used cars.

11. Defendant CARVANA operates or partners with used car dealerships located in numerous states, including CARVANA GA and CARVANA PHILA.

12. The various dealerships advertise collectively and advertise their inventory collectively on a single Website.

13. Both the COAF and CARVANA Websites advertised the vehicle as having passed a 150-point inspection, being CARVANA CERTIFIED and never having been in any accidents or damaged.

14. Defendant CARVANA advertised that all of its vehicles are CARVANA CERTIFIED, including the subject vehicle and that all vehicles are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in each vehicle's quality and safety (Exhibit 1).

15. Defendant represented that the subject vehicle had been carefully inspected, CARVANA CERTIFIED and had never been in any accidents or damaged.

16. Defendants represented that the subject vehicle had been carefully inspected, CARVANA CERTIFIED and had never been in any accidents or damaged.

2

17. All of the defendants made these same misrepresentations – as set forth in paragraphs 11, 12 and 13 – at times and in the manner described more fully below.

18. Plaintiff signed the subject Buyers Order (BO) and financed purchase agreement – Retail Installment Sales Contract (RISC) (Exhibits 2 and 3) at his home.[1]

19. Plaintiff signed all of the documents that he signed in connection with the subject purchase of the subject vehicle at his home.

20. Plaintiff purchased the subject vehicle for personal, family or household purposes.

21. Defendant BREAUX signed the subject Buyers Order (BO) and financed purchase agreement – Retail Installment Sales Contract (RISC) (Exhibits 2 and 3).

22. Defendant BREAUX is the Vice-President and Secretary of Defendant CARVANA, LLC (CARVANA PHILA and CARVANA GA).

23. Defendant BREAUX has been the General Counsel of Carvana Co. since August 2015, and is also the Secretary.

24. Defendant BREAUX is the Vice-President of Carvana Auto Receivables 2016-1, LLC.

25. Defendant BREAUX is the General Counsel, Vice-President and Secretary of Carvana Co., Sub, LLC.

26. Defendant BREAUX is the General Counsel, Vice-President and Secretary of Carvana Group, LLC.

27. Defendant BREAUX is the Vice-President and Secretary of Carvana Shipping & Delivery, LLC.

28. In signing the RISC, Defendant BREAUX was fully aware of Defendant CARVANA's advertisements, including that all CARVANA vehicles are CARVANA CERTIFIED and are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

29. The CARVANA CERTIFIED inspection and marketing were and remain a centerpiece of Defendant CARVANA's advertising and promotion.

30. Upon information and belief, Defendant CARVANA has market research indicating that auto consumers want to have comfort that the vehicle they purchase is mechanically sound and will not require costly repairs or replacement in the near term.

31. Upon information and belief, Defendant CARVANA has market research indicating that an online seller such as Defendant CARVANA needs to reassure auto consumers regarding

---

[1] Under Pennsylvania Law, the RISC governs a financed motor vehicle purchase.

the quality of their used vehicles to attract customers and persuade them to make such a significant purchase and investment sight unseen.

32. In signing the RISC, Defendant BREAUX was representing that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that it was CARVANA CERTIFIED and subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

33. Defendants have developed a scheme or scam to heavily advertise the careful inspection, certification and high-quality of its vehicles, and then intentionally to leave out any such term from the contract, and to bury within the fine-print terms and clauses that they can use to later argue that the careful inspection, certification, high-quality, and Carfax report representations are not part of the contract (as they do in this case).

34. Plaintiff purchased the subject vehicle for personal, family or household purposes.

35. Plaintiff purchased the subject vehicle to transport he and his family on the private and public roadways to perform his normal activities of daily living and to do so safely, enjoyable, and reliably and without any concern or anxiety regarding the vehicle's history, condition, fitness, reliability or safety.

36. Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants, including CARVANA, CARVANA PHILA, CARVANA GA, and BREAUX, made the following representations expressly and/or impliedly, as more fully described above and below, about the subject vehicle:

   a) the odometer reading and disclosure statement reflected the actual mileage;

   b) the odometer reading and disclosure statement was reliable and accurate;

   c) the subject vehicle was in good, safe and operable condition;

   d) the subject vehicle was free of defects;

   e) Plaintiff was being charged lawfully amounts paid to public officials;

   f) Defendants were charging a lawful documentary fee;

   g) Defendants would transfer lawfully Title and registration and record the lien;

   h) the sale was conducted and the paperwork was completed lawfully;

   i) Defendants were charging lawfully for all taxes, charges and fees;

   j) that the vehicle was NOT in an accident or damaged;

   k) the vehicle was in perfect condition;

4

l) the vehicle had been subjected to a careful 150-point inspection by inspection specialists all of whom are ASE Certified;

m) the vehicle was CARVANA CERTIFIED;

n) Plaintiff could and should be 100% confident in the subject vehicle's quality and safety;

o) the vehicle was still under factory warranty and Plaintiff would benefit by the factory warranty.

37. Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants concealed the following:

a) the subject vehicle was not in good, safe and operable condition;

b) the subject vehicle was not free of defects;

c) Plaintiff was being charged unlawful taxes, charges and fees;

d) the sale was not conducted and the paperwork was completed accurately or lawfully;

e) that the vehicle was in an accident or damaged;

f) the vehicle was not in perfect condition;

g) the vehicle was not CARVANA CERTIFIED or properly CARVANA CERTIFIED or CARVANA CERTIFIED does not mean what it is advertised to mean.

38. The subject Retail Installment Sales Contract (RISC) identifies CARVANA PHILA as the "Seller-Creditor" – i.e., CARVANA LLC at the CARVANA PHILA address.

39. Defendants have taken the position on the record that Defendant CARVANA GA is distinct from CARVANA PHILA, and that CARVANA GA, unlike CARVANA PHILA, is not subject to Pennsylvania licensing statutes, and that CARVANA GA sold the subject vehicle to Plaintiff online (Motion To Dismiss in Okulksi v. CARVANA LLC, USDC EDPa 20-CV-01328-WB [OKULSI MTD], p. 1, 2, 3).

40. As a matter of law, CARVANA PHILA and CARVANA GA are and must be distinct licensed dealerships.

41. Any reference to CARVANA PHILA and/or CARVANA GA is also a reference to CARVANA.

42. As part of its standard operating procedures, defendant CARVANA always lists CARVANA GA as the seller on the BO and/or RISC.

43. As part of its standard operating procedures, defendant CARVANA always lists CARVANA GA as the seller on the BO and/or RISC in an attempt to skirt the licensing and other state-based regulation of the states in which the CARVANA dealerships are located.

44. Plaintiff purchased the subject vehicle in-person from and at CARVANA PHILA.

45. All of the documents that Plaintiff signed in connection with the subject transaction, including the Buyers Order (BO), Retail Installment Sales Contract (RISC) and Odometer Disclosure Statement (ODS) were prepared by CARVANA PHILA and/or CARVANA GA.

46. All of the documents that Plaintiff signed in connection with the subject transaction, including the BO, RISC and ODS, were presented to Plaintiff for his signature at his home.

47. The subject RISC is a standardized form contract obtained, purchased or licensed by defendants from Reynold and Reynolds and identified as Law Form No. 553-PA-e.

48. The subject RISC was created for use in Pennsylvania by Pennsylvania licensed dealers for the retail installment sale of motor vehicles by Pennsylvania dealers in Pennsylvania.

49. Any reference within the RISC to a selling or licensed dealer elsewhere identified in the RISC was presumed and intended to identify a dealer that was a Pennsylvania licensed dealer.

50. The subject RISC identifies that it is governed by Pennsylvania law.

51. The BO is a standardized form contract created by CARVANA.

52. Plaintiff signed all of the documents that he signed in connection with the subject transaction, including the BO, RISC, Carvana Limited Warranty and ODS at his home.

53. Defendants CARVANA PHILA and/or CARVANA GA falsely advertised and falsely prepared the BO, Carvana Limited Warranty and ODS falsely to identify CARVANA GA as the seller.

54. Defendants CARVANA PHILA and/or CARVANA GA falsely advertised and falsely prepared the documents, including the BO, RISC and ODS falsely to identify CARVANA GA as the seller in violation of the Pennsylvania Automotive Industry Trade Practices (AITP), which require that all advertisements and contracts correctly identify the dealer name and address. 37 Pa.C. §§ 301.2(1)&(2), 301.4(a)(2)(i).

55. The subject vehicle was delivered by Defendant CARVANA PHILA at Defendant CARVANA PHILA's licensed established place of business in Philadelphia, PA.

56. Defendants gave Plaintiff a Carfax report indicating falsely that the vehicle had not been in any accidents or damaged (Exhibit 4).

6

57. The Carfax report and the CARVANA CERTIFIED representations are part of the bargain, part of the meeting of the minds, and are either considered part of the RISC or were omitted fraudulently and/or due to a scrivener's error.

58. Defendants deny that the Carfax and CARVANA CERTIFIED representations are part of the bargain, party of the meeting of the minds, and/or should be or are considered a part of the RISC, and deny that they were omitted fraudulently and/or due to scrivener's error.

59. It has been well-known in the industry for more than a decade that Carfax reports cannot be relied upon to exclude any pre-sale accidents or damage.[2]

60. It is well-known in the industry that Carfax reports only catch a small percentage of accidents and damage events, and even when they are caught, there is more often than not a long delay.

61. At the time of delivery of the vehicle, defendants rushed plaintiff through the process.

62. Within days of the purchase, plaintiff noticed paint peeling on the Left Rear Quarter Panel.

63. Plaintiff took the vehicle to a General Motors dealer, Pointe GMC Buick, thinking that the issue would be covered under the manufacturer warranty.

64. Pointe GMC Buick advised plaintiff that the vehicle had been repainted.

65. When plaintiff washed the vehicle he noticed water intruding into the passenger side of the occupancy compartment.

66. Plaintiff noticed that the right sideview mirror looks damaged.

---

[2] It has been well-known in the industry for decades that Carfax reports are notoriously incomplete and cannot be reasonably relied upon to exclude accidents, damage, damage events and/or other negative information or events. Carfax limitations have been well-reported in the popular and industry media:
1) http://abcnews.go.com/Business/trust-car-fox-hidden-camera-shows-clean-carfax/story?id=18731208;
2) http://www.nbc12.com/story/15998881/how-reliable-is-carfax;
3) http://www.consumerreports.org/cro/2012/12/don-t-rely-on-used-car-history-reports/index.htm;
4) Carfax was studied by the National Highway Traffic and Safety Administration (NHTSA) and it was famously found that Carfax misses upwards of 80% of the odometer roll-backs;
5) http://www.moneytalksnews.com/can-you-trust-carfax-plus-4-ways-avoid-buying-dud/;
6) http://askbobrankin.com/how_reliable_is_carfax.html;
7) http://www.dealershipforum.com/forums/showthread.php?t=3142.

67. Plaintiff then took the vehicle to a local body shop, Sheridan Auto Body, and was advised that the vehicle had numerous indications of damage and improper and incomplete repairs, including paint lines, peeling, damaged, overspray all over rear of vehicle (Exhibit 5).

68. Plaintiff took the vehicle back to Pointe GMC Buick and Pointe GMC Buick determined and told plaintiff that the vehicle showed indications of having been in an accident (Exhibit 6).

69. The subject vehicle exhibits many well-known, classic tell-tale signs of damage and incomplete and improper repair that would have been evident to anyone with experience in the industry, including overspray, tape lines, dirt in the paint, peeling, impressions in the paint, and compound dust.

70. Anyone experienced in the industry performing an industry standard walk-around appraisal, much less an industry standard full pre-sale inspection, even much less the advertised CARVANA CERTIFIED inspection, could not have missed the tell-tale signs that the subject vehicle was in an accident, was severely damaged and improperly and/or incompletely repaired, and was sold in a damaged, defective, unfit and unmerchantable condition.

71. If the vehicle had, and if Plaintiff had known that Defendants were not licensed or were violating the licensing statutes and regulations, or that the vehicle had been in an accident or had been damaged, had frame or structural damaged, or that any charges or fees were unlawful, false or inaccurate, or that any paperwork was completed unlawfully, or that the Defendants had misrepresented anything, or the true total cost of the purchase, or that the Defendants would not honor their agreements, then Plaintiff would have not purchased the vehicle.

72. Plaintiff demanded that defendants cancel the deal and return his money. Defendants refused.

73. Plaintiff asked to speak to a representative in a higher position to discuss the situation and was told that someone in higher management would call him. When the person in higher management called plaintiff, plaintiff's demand to return the vehicle and get his money back was again refused.

74. There have been no post-sale accidents or damage.

75. In presenting, representing and delivering the vehicle, Defendants were fully aware of Defendant CARVANA's advertisements, including that all CARVANA vehicles are CARVANA CERTIFIED and are subjected to a careful 150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

76. In presenting, representing and delivering the vehicle, Defendants were representing that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that the vehicle was sold in accordance with Defendant CARVANA's advertisements, including that it was CARVANA CERTIFIED and subjected to a careful

8

150-point inspection by inspection specialists resulting in vehicles in perfect condition so customers can be 100% confident in the vehicle's quality and safety.

77.   The subject RISC is a five-page document, which incorporates, as it must under the law, the Buyers Guide, which was never adhered or posted to the vehicle and therefore is missing and/or non-existent as a matter of law (Exhibit 3).

78.   Plaintiff found a Buyers Guide in the glovebox several days after the sale.

79.   The Buyers Guide included in the set of papers signed by plaintiff was never posted on the vehicle.

80.   There was never any Buyers Guide posted on the vehicle at any time that plaintiff observed the vehicle, including when it was presented and/or delivered to plaintiff at CARVANA PHILA.

81.   Defendants represented that they were signing the Title Certificate of the car over to Plaintiff by representing that it would process the Title with the Department of Motor Vehicles, by acting as an agent of the Department of Motor Vehicles to provide his with a temporary tag and a temporary registration, and by using various contract documents that asserted that he was the owner of the car and was giving up a security interest in the car.

82.   The standardized contract contains a standardized and invalid and unlawful AS IS provision, which was used to misrepresent the terms and conditions of the transaction.

## COAF

83.   Pursuant to the express terms of the RISC, State common law of assignments, and Statutory law, COAF "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct.

84.   Plaintiff advised defendant COAF of the dealer's misconduct as alleged herein and defendant refused to acknowledge its potential derivative liability.

85.   Defendant COAF denied that the dealer's misconduct could in any way affect the parties' respective rights and duties under the RISC.

86.   The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

87.   As a result of the Defendants' unlawful actions, the Plaintiff had been overcharged for the vehicle, deprived of the use and/or enjoyment of the vehicle, has incurred expenses for replacement transportation, has suffered inflated consumption and/or damage to his credit,

Case ID: 200801110

credit rating and/or credit reputation, and has suffered extreme emotional distress, frustration, humiliation, and/or embarrassment.

88. Plaintiff has been and will continue to be financially damaged due to Defendants' fraudulent, intentional, reckless, wanton, and/or negligent misconduct and their failure to honor their contractual obligations.

## COUNT I
### Fraud
### Plaintiff v. All Defendants

89. Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

90. Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants, including CARVANA, CARVANA PHILA, CARVANA GA, and BREAUX, made the following representations expressly and/or impliedly about the subject vehicle:

    a) the subject vehicle was in good, safe and operable condition;

    b) the subject vehicle was free of defects;

    c) Plaintiff was being charged lawfully amounts paid to public officials;

    d) Defendants were charging a lawful documentary fee;

    e) Defendants would transfer lawfully Title and registration and record the lien;

    f) the sale was conducted and the paperwork was completed lawfully;

    g) Defendants were charging lawfully for all charges and fees;

    h) that the vehicle was NOT in an accident or damaged;

    i) the vehicle was in perfect condition;

    j) the vehicle had been subjected to a careful 150-point inspection by inspection specialists all of whom are ASE Certified;

    k) the vehicle was CARVANA CERTIFIED;

    l) plaintiff could and should be 100% confident in the subject vehicle's quality and safety;

    m) the vehicle was still under factory warranty and Plaintiff would benefit by the factory warranty.

91. Prior to and during the subject transaction, and at all times relevant thereafter, the Defendants concealed the following:

10

a) the subject vehicle was not in good, safe and operable condition;

b) the subject vehicle was not free of defects;

c) Plaintiff was being charged unlawful charges and fees;

d) the sale was not conducted and the paperwork was completed lawfully;

e) that the vehicle was in an accident or damaged;

f) the vehicle was not in perfect condition;

g) the vehicle was not CARVANA CERTIFIED or properly CARVANA CERTIFIED or CARVANA CERTIFIED does not mean what it is advertised to mean.

92. The misrepresentations and omissions identified in the immediately preceding paragraphs, were known or should have been known to Defendants to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced them to purchase the automobile at the price listed in the purchase agreements.

93. The Defendants knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

94. The Plaintiff relied on the Defendants' misrepresentations and was induced to sign the RISC and other documents related to which he apparently and ostensibly purchased the aforementioned automobile at the inflated and misrepresented amount listed in the purchase agreement.

95. As a result of the aforementioned conduct, the Plaintiff suffered the damages outlined above and below.

96. The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and punitive damages, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

Case ID: 200801110

## COUNT II
### Violation of Pennsylvania Unfair Trade Practices
### And Consumer Protection Law
### Plaintiff v. All Defendants

97.   Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

98.   As Defendants' misrepresentations were made both at defendants' locations in Pennsylvania and at Plaintiff's home and are subject to Pennsylvania law.

99.   The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*

100.  The actions and omissions of Defendants has hereinbefore and hereinafter described constitute violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

   (ii)    Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

   (v)    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

   (vii)    Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

   (ix)    Advertising goods or services with intent not to sell them as advertised;

   (xi)    Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

   (xxi)    Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

101.  Defendants licensing violations set forth more fully above and below constitute *per se* and/or predicate violations of the UTPCPL.

### Pennsylvania Automotive Industry Trade Practices

102.  The defendants actions, including misrepresenting the vehicle's history, condition and value, misrepresenting the seller and the terms and conditions of the sale and financing, as set forth in more detail above and below, and/or the respective sales documents, violated the following provisions of the Pennsylvania Automotive Industry Trade Practices:

12

§ 301.2. Advertising and sales presentation requirements (1) The use of different type, size, style, location, sound, lighting or color, so as to obscure or make misleading a material fact in an advertisement or sales presentation.(2) The misrepresentation in any way of the size, inventory or nature of the business of the advertiser or seller; the expertise of the advertiser or seller or his agents or employes; or the ability or capacity of the advertiser or seller to offer price reductions.(3) The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:

> (i) Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.(ii) Disparaging by act or word the advertised goods and services; the warranty; the credit terms; the availability of service, repairs or parts; or anything which in any other respect is a material fact connected with the sale of the advertised goods and services.(iii) Refusing to take orders for advertised goods and services or taking orders at a price greater than the advertised price.(iv) Showing, demonstrating or delivering advertised goods or services which are obviously defective, unusable or unsuitable for the purpose represented or implied in the advertisement or sales presentation.

(4) The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.(5) The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter. (6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.§ 301.4. General provisions -- motor vehicle dealer (a) With regard to a motor vehicle dealer, the following will be considered unfair methods of competition and unfair or deceptive acts or practices:

(2) Using a printed or written contract form agreement, receipt or invoice in connection with the sale of a motor vehicle which is not clearly identified and which does not contain the following:

> (i) The name and address of the dealer and purchaser.
> (iii) A description of the purchased vehicle as either "new" or "used" and, if used, a brief description of its prior usage such as "executive," "demonstrator," "reconstructed," or any prior usage which is required to be noted on a Pennsylvania Certificate of Title or which appears on the title of any state through which the dealer has acquired ownership.(iv) The total contract price, including an itemized list of charges for repairs, services, dealer-installed optional accessories and documentary preparation which are not included in the purchase price.

(4)     Using in a motor vehicle purchase contract a liquidated damage clause or similar clause which requires the forfeiture of a purchaser's deposit or security when the purchaser cancels or breaches the contract unless: the clause contains a specific dollar amount or item to be retained by the dealer; the clause is clear and conspicuous; the purchaser assents to the clause by initialing the same; and the clause is not otherwise unlawful.(6) Failing to refund the full amount of a purchaser deposit promptly when:

13

Case ID: 200801110

(iv) The dealer fails to deliver to the purchaser a motor vehicle which conforms to the terms of the contract.

(9) Where no express warranty is given, attempting to exclude the implied warranties of merchantability and fitness for a particular purpose in the sale of a motor vehicle purchased primarily for personal, family or household purposes unless the following notice in at least 20-point bold type is prominently affixed to a window in the motor vehicle so as to be easily read from the outside and is brought to the attention of the prospective purchaser by the seller:This vehicle is sold *without* any *warranty*. The purchaser will bear the *entire expense* of repairing or correcting any defects that presently exist and/or may occur in the motor vehicle unless the salesperson promises *in writing* to correct such defect or promises in *writing* that certain defects do not exist.This paragraph prohibits the use of the term "AS IS" unless the sales contract, receipt, agreement or memorandum contains the following information in a clear, concise and conspicuous manner on the face of the document; the notice shall be in addition to the window statement required by this paragraph and may not contradict an oral or written statement, claim or representation made directly or by implication with regard to the quality, performance, reliability or lack of mechanical defects of a motor vehicle which is offered for sale:AS IS*THIS MOTOR VEHICLE IS SOLD AS IS WITHOUT ANY WARRANTY EITHER EXPRESSED OR IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE.*(10) Failing to forward to the proper Commonwealth agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law.

### Pennsylvania Motor Vehicle Sales Finance Act

103. Defendants must be licensed pursuant to MVSFA.

104. Pursuant to the MVSFA Defendants licenses may be revoked if it has violated any provision of the MVSFA.

105. Pursuant to the MVSFA, defendants must maintain satisfactory records to determine that the business is being operated in accordance with the MVSFA and may not falsify any records.

106. Defendants violated the MVSFA by defrauding Plaintiff.

107. Defendants violated the MVSFA by failing willfully to perform a written agreement with the Plaintiff.

108. Defendants violated the MVSFA by engaging in unfair, deceptive, fraudulent or illegal practices or conduct in connection with any business regulated under the MVSFA.

109. Plaintiff's claims all damages to which they are entitled arising from Defendants' violations of the Unfair Trade Practices and Consumer Protection Law.

110. The actions and omissions of Defendants as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection

14

Law, 73 Pa.C.S.A. § 201-1 *et. seq.*

111. Plaintiff claims all damages to which they are entitled arising from Defendants' violations of the Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and treble damages, and attorney fees, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

## COUNT III
### Negligence
### Plaintiff v. All Defendants

112. Plaintiff repeats and realleges all  allegations as if set forth at length herein.

113. This and all subsequent causes of action are pleaded in the alternative and/or in addition to Plaintiff's cause of action for fraud.

114. The Defendants were negligent in the following respects:

    a.    failing to institute appropriate policies and procedures to comply with the applicable laws;

    b.    failing to institute policies, train personnel, and supervise personnel regarding lawful financing and/or sales presentations;

    c.    failing to institute policies, train personnel, and supervise personnel regarding proper pre-sale inspections of vehicles;

    d.    failing to institute policies, train personnel, and supervise personnel regarding Title transfers;

    e.    failing to institute policies, train personnel, and supervise personnel regarding financing agreements;

    f.    failing to institute policies, train personnel, and supervise personnel regarding sales of and performance obligations related to service contracts;

    g.    failing to hire competent and/or honest personnel, such as mechanics and salespeople;

    h.    failing to properly train and/or supervise its personnel;

Case ID: 200801110

h.    failing to honor RISCs and their other promises and representations described more fully above and below;

j.    failing to properly inspect the vehicle, detect defects therein, and/or report said defects to the Plaintiff;

k.    failing to institute proper and lawful policies and practices to comply with Pennsylvania licensing prescriptions and prohibitions as set forth more fully above and below.

115.   Plaintiff suffered actual damages proximately caused by Defendants' negligence as alleged above.

116.   The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages and render the defendants joint and severally liable to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and punitive damages, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

## COUNT IV
### Negligent Misrepresentation
### Plaintiff v. All Defendants

117.   Plaintiff repeats and realleges all allegations as if set forth at length herein.

118.   The conduct of the Defendants as alleged in addition to, and in the alternative, constituted separate negligent misrepresentations that were false because of the failure to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepresentations about the terms and conditions of the sale price, advertisement, financing and sale, and the condition of the vehicle.

119.   The Defendants supplied information including but not limited to price of the vehicle, that the vehicle was in good, safe and operable condition, the vehicle had not been in any accidents or damaged, intending to and in fact causing the Plaintiff to buy the vehicle, or taking or refraining from taking action with respect to the vehicle, such as returning the vehicle or rescinding the purchase contract and/or filing suit.

120.   As a direct and proximate result of these negligent misrepresentations, the Plaintiff suffered damages as alleged.

121.   The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to

Case ID: 200801110

Plaintiff's indivisible harm and damages and render the defendants joint and severally liable to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and punitive damages, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

## COUNT V
### Breach of Contract
### Plaintiff v. All Defendants

122.   Plaintiff repeats and realleges all allegations as if set forth at length herein.

123.   In the alternative, Plaintiff apparently and/or ostensibly was misled to believe that they had contracted with Defendants for the purchase of the subject vehicle as well as taxes, registration, tags, service contract, and transfer of clear and clean title, which agreement was final and included all payment and financing terms.

124.   Plaintiff performed or satisfied all of his obligations due and owing under the aforementioned finance purchase agreement.

125.   The Plaintiff was at no time relevant in default.

126.   Defendants are in breach of the aforementioned contract in that they have in the past and continue without justification to negligently, intentionally, willfully, fraudulently, and/or recklessly failed and/or refused to deliver to Plaintiff(s) the car for which Plaintiff(s) contracted under the agreed terms and/or demanded the return of the vehicle or deprived plaintiff(s) of the quiet enjoyment of the vehicle or the amount of credit promised, and/or have not accepted Plaintiff's cancellation as set forth more fully elsewhere.

127.   As a result of Defendants' breach, the Plaintiff suffered the damages outlined above and in the following additional ways:

  a.   increased purchase costs;

  b.   damaged credit rating and reputation;

  c.   deprived of the use and enjoyment of the vehicles;

  d.   incurred cost of replacement vehicles;

  e.   spent time resolving problems created by Defendants' breach;

  f.   incurred other incidental and consequential damages, including emotional distress; and,

Case ID: 200801110

    g.   incurred increased interest and other expenses for financing the purchase of the vehicle.

128.    The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, hereby justifying the imposition of exemplary, treble and/or punitive damages.

129.    The defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages more fully described above and render the defendants joint and severally liable to the Plaintiff.

    WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and punitive damages, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

**COUNT VI**
**Violation of The Professions and Occupations Act**
**Board of Vehicles Act**
**Plaintiff v. All Defendants**

130.    Plaintiff incorporates all facts and allegations set forth in this Complaint.

131.    The licensing statute and code are intended in part to protect the public welfare generally and, more specifically, to protect consumers from dealer misconduct in the sale of motor vehicles.

132.    Pursuant to 63 P.S. §818.303(a)(1), the POVA/BOVA licensing regulations are intended "[t]o promote the public safety and welfare, it shall be unlawful for any person to engage in the business as a salesperson, dealer, branch lot, wholesale vehicle auction, public or retail vehicle auction, manufacturer, factory branch, distributor, distributor branch, factory representative or distributor representative within this Commonwealth unless the person has secured a license as required under this act."

133.    Pursuant to 49 Pa.C. § 19.1, the legislative findings underlying the POVA/BOVA licensing regulations are: "[t]he General Assembly of this Commonwealth finds and declares that the sale of new and used motor vehicles in the Commonwealth vitally affects the general economy of the Commonwealth, the public interest and public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to license manufacturers, dealers and salespersons of new and used motor vehicles doing business in the Commonwealth, <u>in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this Commonwealth</u>." (emphasis added).

134.    Defendants are all required to be licensed under the PAOA/BOVA.

18

135.   Defendant BREAUX is not a licensed dealer in Pennsylvania.

136.   Defendant BREAUX does not hold any professional licenses in Pennsylvania, including any license under the PAOA/BOVA.

137.   Defendant BREAUX signed the RISC on behalf of CARVANA PHILA and/or CARVANA GA by which CARVANA PHILA and/or CARVANA GA sold and Plaintiff purchased the subject vehicle, and did so for a commission, compensation or other consideration.

138.   Defendant BREAUX has admitted that since 2015 he has systematically and continuously signed sales-related documents, including BOs, RISCs and ODSs for sales by, through and at dealerships all across the country, including in Pennsylvania and presumably to Pennsylvania residents (Exhibit 7; Breaux Declaration, ¶¶ 14, 15).

139.   Defendant BREAUX has admitted that he signs the sales-related documents, including BO, RISC and ODS while in AZ (Exhibit 7; Breaux Declaration, ¶¶ 4-5, 8, 14, 15).

140.   Based on his legal education, his work for the various CARVANA entities, including as General Counsel for Defendant CARVANA LLC, Defendant BREAUX was well-aware of the CARVANA annual reports and the licensing regulations at issue and that he was *involved* in the sales of the vehicles by signing the BOs and RISCs and other sale-related documents as defined in the regulations.

141.   The documents signed by Defendant BREAUX are in fact and constitute as a matter of law advertising of the subject vehicle and communications from Defendant BREAUX to Plaintiff and constitute in fact and as a matter of law involvement in the sale and advertisement of the subject vehicle related to the subject transaction.

142.   The documents signed by Defendant BREUAX are in fact and constitute as a matter of law advertisements and offer for the sale of the subject vehicle communicated by Defendants, including Defendant BREAUX, and constitute in fact and as a matter of law involvement in the advertisement, offer for sale, and sale of the subject vehicle and subject sale.

143.   The Pennsylvania Automotive Industry Trade Practices broadly define the term "advertisement:"

*Advertisement*-An oral, written or graphic statement which offers for sale a particular motor vehicle or motor vehicle goods and services or which indicates the availability of a motor vehicle or motor vehicle goods and services, including a statement or representations made in a newspaper, periodical, pamphlet, circular, other publication or on radio or television; contained in a notice, handbill, sign, billboard, poster, bill, catalog or letter; or printed on or contained in a tag or label which is attached to merchandise.

37 Pa.C. § 301.1.

144.   Defendant BREAUX has misrepresented on the record that he had no personal knowledge as of July 16, 2019, the date on the purchase/sale-related records and presumably the date

his signature was affixed thereto, including the BO, RISC and ODS, that the vehicle would be "shipped" to Pennsylvania.

145. As of May 9, 2020, the vehicle was delivered (the industry term for giving possession to the customer – not implying a remote sale) to plaintiff at the CARVANA PHILA licensed established place of business in Philadelphia, PA.

146. As of May 9, 2020, the records that Defendant BREAUX signed identified Plaintiff's home address in New Jersey.

147. Defendant BREAUX is employed by Defendant CARVANA (CARVANA PHILA and/or CARVANA GA) for a commission, compensation or other consideration, and is employed by CARVANA to sell vehicles by signing the RISCs and other retail sales agreements.

148. All of Defendant BREAUX's signatures on the sales-related documents appear identical (Exhibit 2, 3, 8).

149. Upon information and belief, the Defendant BREAUX signatures are robo-signed, but with his consent and full-knowledge they are being affixed to motor vehicle retail sales agreements related to the sales of motor vehicles by, through and at dealership all across the county, including in Pennsylvania and including presumably to Pennsylvania residents.

150. According to Carvana Co.'s 2020 Annual Report, from January 2013 through December 31, 2019, CARVANA purchased, reconditioned, sold, and delivered approximately 343,500 vehicles to customers through its website, generating approximately $7.3 billion in revenue.

151. According to a Carvana Co. February 26, 2020 Press Release, Carvana LLC sold approximately 177,549 vehicles in 2019.

152. When Defendant BREAUX's signatures were affixed to the RISC and other documents, Defendant BREAUX was physically located in Arizona.

153. Defendant BREAUX has never regularly worked at Defendant CARVANA PHILA's licensed established place of business in Philadelphia, PA.

154. Upon information and belief, Defendant BREAUX affixes his signature or permits his signature to be affixed to RISCs for other dealers inside and outside Pennsylvania, and other than the subject Defendant CARVANA PHILA licensed dealer located in Philadelphia.

155. Defendant BREAUX's signing the RISCs and other sales-related documents without being licensed to do so on a systematic and continuous basis cannot be said to be random, fortuitous or attenuated.

156. The PAOA/BOVA and Code do not permit a salesperson to work for more than one dealer at a time. 63 P.S. §818.303(c)(1).

157.    The PAOA/BOVA and Code requires that dealers have an established place of business, which must be the licensed address, and dealers cannot conduct business from another location except a duly licensed branch, and cannot operate the business of another on the established place of business. 63 P.S. § 818.202; 63 P.S. § 818.303(e)(1)&(2); 63 P.S. § 818.318(34); 49 Pa.C. § 19.17; 49 Pa.C. § 19.17a; 49 Pa.C. § 19.18(a).

158.    The subject RISC identifies Defendant CARVANA PHILA as the seller-creditor (Exhibit 3).

159.    Defendant CARVANA's PAOA/BOVA licensed address is 1043 N. Front Street, Philadelphia, PA 19123 (Exhibit 12).

160.    Defendant BREAUX also signed the sworn Odometer Disclosure Statement swearing and affirming on personal knowledge the then existing odometer reading and that the odometer and odometer reading were accurate and reliable. The "Transferor" is listed as Defendant BREAUX.  The address at which the aforesaid certification was alleged falsely to have been made on May 9, 2020 was 63 Pierce Road, Winder, GA 30680-7280 (Exhibit 10).

161.    The subject vehicle was not located at 63 Pierce Road, Winder, GA 30680-7280 at any time on May 9, 2020.

162.    Under the PAOA/BOVA and Code, anyone involved in any way in the retail sale of motor vehicle in Pennsylvania must be a licensed salesperson.  63 P.S. § 818.303(a)(1) [formerly 818.5(a)(1)] (license required to engage in vehicle sales); 63 P.S. § 818.303(c) [formerly 818.5(c)] (unlawful for unlicensed salesperson to engage in "any activity related to the buying, selling, or exchanging of a vehicle for a commission, compensation or other consideration"); 63 P.S. § 818.2 ("buying, selling or exchanging.. includes listing, offering … advertising, representing or soliciting, offering or attempting to solicit, negotiate on behalf of another a sale, purchase or exchange or any similar or related activity"); 49 Pa.C. § 19.11 (unlawful to engage in motor vehicle sales without a license); 49 Pa.C. § 19.2 (engaging in motor vehicle sales includes "[t]he display, demonstration, offer for sale or retail sale of any vehicle not owned by that person").

163.    The misconduct more particularly identified above and below constitute violations of 63 P.S. § 818.102 [formerly §818.2], §818.303(a)(1), 818.303(c), 818.303(c)(1), 818.303(d) [formerly §818.5] and 63 P.S. § 818.318(2) ("Make any substantial misrepresentation of material facts"), (3) ("Make any false promise of a character likely to influence, persuade or induce the sale of a vehicle"), (6) ("Having engaged in false, deceptive or misleading advertising of vehicles"), (7) ("Having committed any act or engaged in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee under this act"), (14) ("Engaging in the business for which such licensee is licensed without at all times maintaining an established place of business as required"), (15) ("Employing any person as a salesperson who has not been licensed as required"), (18) ("Willfully failing to display a license"), (21) ("Willfully having made any false statement as to a material matter in any oath or affidavit which is required by this act"), (22-25) failing to collect lawful taxes and/or failing to pay or issuing a false report

related thereto; (26) ("Violating any provision of this act", (28) ("Any violation of the regulations promulgated by the board") and (33) ("Being a dealer which willfully permits any person who is not a licensed salesperson or owner of the dealership to use the dealer's dealer identification number issued by the Department of Transportation, vehicle dealer's license number or dealer's vehicle registration plates for the purpose of buying, selling or exchanging vehicles"). [formerly § 818.19]; (34) (prohibits a licensed dealer from conducting its business "at any other location than authorized by its license)" [formerly §818.19].

164.    Defendants' licensing evasion practices are knowing and intentional.

165.    Defendants admitted knowing that the state licensing laws apply and that they are not complying with them all, and do not want to comply with them all in the interest of maximizing profits.

> Various aspects of our business are or may be subject to U.S. federal and state regulation. In particular, the advertising, sale, purchase, financing and transport of used motor vehicles are highly regulated by states in which we do business and by the U.S. federal government. The regulatory bodies that regulate our business include the Consumer Financial Protection Bureau, the Federal Trade Commission, the United States Department of Transportation, the Occupational Health and Safety Administration, the Department of Justice, the Federal Communications Commission, various state dealer licensing authorities, various state consumer protection agencies and various state financial regulatory agencies. We are subject to compliance audits of our operations by many of these authorities. Certain states have concluded that our activities are subject to vehicle dealer licensing laws, requiring us to maintain a used vehicle dealer license in order to conduct business in that state. In certain other states, we have elected to obtain a used vehicle dealer license to maximize operational flexibility and efficiency and invest in relationships with state regulators. We have at least one licensed facility in Alabama, Arizona, Florida, Georgia, Indiana, Maryland, Massachusetts, New Jersey, North Carolina, New York, Ohio, Tennessee, Texas, Virginia, and Wisconsin.

> Most states regulate retail installment sales, including setting a maximum interest rate, caps on certain fees, or maximum amounts financed. In addition, certain states require that finance companies in general and Carvana in particular file a notice of intent or have a sales finance license or an installment sellers license in order to solicit or originate installment sales in that state. In certain other states, we have chosen to obtain such a license to invest in relationships with state regulators. We have obtained a sales finance license in Arizona, Delaware, Louisiana, New Mexico, Pennsylvania, and Texas, an installment seller license in Florida, Maryland, and New Jersey, and have filed consumer credit notices in Colorado, Indiana, Iowa, Kansas, Maine, Mississippi, Oklahoma, South Carolina, Utah, West Virginia, and Wyoming.

Case ID: 200801110

For a discussion of the various risks we face from regulation and compliance matters, see Item 1A "Risk Factors—Risks Related to Our Business—We operate in several highly regulated industries and are subject to a wide range of federal, state and local laws and regulations. Failure to comply with these laws and regulations could have a material adverse effect on our business, results of operations and financial condition."

(Carvana 2019 Annual Report, pp. 15-16) (underlining added).

**_We operate in several highly regulated industries and are subject to a wide range of federal, state, and local laws and regulations. Changes in these laws and regulations, or our failure to comply, could have a material adverse effect on our business, results of operations, and financial condition._**

We are subject to a wide range of evolving federal, state, and local laws and regulations, many of which may have limited to no interpretation precedent as it relates to our business model. Our sale and purchase of used vehicles and related activities, including the sale of complementary products and services, are subject to state and local licensing requirements, state laws related to title and registration, state laws regulating the sale of motor vehicles and related products and services, federal and state laws regulating advertising of motor vehicles and related products and services, and federal and state consumer protection laws prohibiting unfair, deceptive or misleading practices toward consumers. Our facilities and business operations are subject to laws and regulations relating to environmental protection and health and safety. The financing we offer to customers is subject to state licensing laws and to federal and state laws regulating the advertising and provision of consumer finance options, along with the collection of consumer credit and financial information. Regulators in jurisdictions where our customers reside but in which we do not have a dealer or financing license could require that we obtain a license or otherwise comply with various state regulations, and may seek to impose punitive fines for operating without a license or demand we seek a license in those jurisdictions, any of which may inhibit our ability to do business in those jurisdictions, increase our operating expenses and adversely affect our financial condition and results of operations. In the future, we may engage in different business activities or make changes to our business model that subject us to further state and federal regulation.

(Carvana 2020 Annual Report, pp. 23-24) (bold and italics in original) (underlining added).

166.  Based on these statements, it is believed and therefore averred that neither CARVANA PHILA nor CARVANA GA had a Pennsylvania Motor Vehicle Installment Sellers License at the time of the subject transaction.

167.  Defendant CARVANA was aware that the lawful and licensed operation of dealerships took place at a single, licensed, established place of business: "Providing an end-to-end solution requires inspection, repair, reconditioning and showroom facilities, as well as

23

inventory sourcing and financing capabilities, substantially all of which is traditionally done at each dealership location" (Carvana 2019 Annual Report, p. 4).

168. The Pennsylvania Department of State Name Search for "Carvana" shows a registration of "Carvana" as a fictitious named owned by Defendant BREAUX (Exhibit 9).

169. The Pennsylvania Dealer License Application contains the following instructions and affirmations: a) "ALL questions in ALL sections MUST be answered completely and truthfully" (p. 1); b) dealer must supply photographs of its established place of business; 3) **"The Dealership must be a complete and separate entity from any other business or residence"** (p. 2) (bold in original); c) a work history of every owner, partner and officer must be submitted (p. 2); d) copy of approved certificate of registration for the business must be submitted (p. 3); e) "Note that a license is necessary in order for anyone to conduct vehicle sales on behalf of an entity" (p. 3); f) dealer must identify a person in charge of the dealership (p. 5); g) dealer must identify all officers, members or partners, including SSNs (p. 5);[3] h) dealers must disclose any criminal history for every owner, officer, member or partner and consent to criminal history check (p. 6); applicant must sign certification – "I hereby certify that I have read the Board of Vehicles Act, Act of December 22, 1983, P.L. 306, No. 84, as amended, 63 P.S. §§818.1 – 818.37, and the Board's regulations, 49 Pa. Code §§19.1 – 19.38, and that I will abide by the Act and the regulations while practicing in the Commonwealth of Pennsylvania. I/we certify that I/we have met all facility requirements and all information supplied in this application is true and correct to the best of my/our knowledge and belief. I/we understand that any false statement made is subject to the penalties of 18 Pa.C.S. Section §4904 relating to unsworn falsification to authorities and may result in the suspension or revocation of the license" (p. 7-8) (Exhibit 10).

170. The Pennsylvania Installment Seller License Application contains the following instructions and affirmations: a) specific reference and recitation of MVSF Section 6211(a) and 6202 clearly setting forth that any installment seller of motor vehicles must be licensed (p. 1); b) specific reference and recitation of MVSF Section 6204(A) requiring the licensees maintain records of its operations at is licensed established place of business (p. 2); c) requirement that applicant identify all officers, directors, members, partners and owners (p. 7); d) applicant must disclose any criminal history for every owner, officer, member or partner and consent to criminal history check (p. 10); e) attest that applicant has read and understand the Consumer Credit Code, Motor Vehicle FAQs and Motor Vehicle Sales Finance Examination Guide (p. 12) (Exhibit 11).

171. The aforementioned Motor Vehicle FAQs states that "A prospective dealer must follow the instructions contained in Pub459 'Requirements on Becoming a Dealer' in order to receive their Dealer Identification Number and dealer plates (Exhibit 12).

172. Defendant CARVANA PHILA has salespeople who applied for and received professional sales licenses from Pennsylvania.

---

[3] Since the license applications required defendant CARVANA to identify all its members, there hardly could be any reasonable argument that CARVANA should not have to produce this information, which was highly relevant and CARVANA alleged previously would require disproportionate time and effort to produce.

24

173.  The Pennsylvania motor vehicle sales license applications have to be verified and signed by Defendant CARVANA PHILA.

174.  The salesperson license applications contained following instructions and information: a) "An individual who holds a vehicle dealership license as a partnership, corporation or any other form of business entity other than a sole proprietorship must also hold a valid, current vehicle salespersons license in order to conduct vehicle sales. An individual who holds a vehicle dealership license as a sole proprietor is not required to also hold a vehicle salesperson license in order to engage in vehicle sales" (p. 1); b) "Each salesperson shall be licensed to only one dealership at any one time. All salesperson licenses will be issued to the primary location (VD license address). It will be the dealer's responsibility to distribute salesperson licenses to the appropriate branch office locations for employees who desire to work at those locations" (p. 2); c) "Out-of-state residents should consult the Board's web page for information about obtaining an out-of-state background check at: www.dos.pa.gov/vehicle, click on General Board Information and click Criminal Record Check" (p. 1) (Exhibit 13).

175.  The Sales Finance Company Application contained similar instructions and information: a) "**Entire Consumer Credit Code along with other law and regulations apply**" (p. 3) (emphasis in original); b) all officers, directors, owners, partners and members must be identified (p. 6); c) the criminal histories for all officers, directors, owners, partners and members must be set forth (p. 9); d) requires applicant to attest that he/she has read and understands the Consumer Credit Code, Motor Vehicle FAQs and Motor Vehicle Sales Finance Examination Guide (p. 11) (Exhibit 14).

176.  The Motor Vehicle Sales Finance Examination Guide advises applicants: a) topics in the exam will include "General Compliance and Licensing," "Requirements as to Contracts and Separate Disclosures," "Contents of Contracts and Disclosure Requirements," "Prohibited Provisions of Contracts," "Prohibited Charges," "Buyer's Waiver of Statutory Protection," and "Compliance with applicable federal laws" (p. 1) (Exhibit 15).

177.  Defendants refuse to acknowledge both Defendant BREAUX's duty to be licensed and all of their duty to comply with all of the prescriptions and prohibitions contained with the licensing statutes and regulations.

178.  But for Defendants' violations of the various licensing statutes, the subject sale could not have taken place, and the subject vehicle could not have been available or offered for sale to Plaintiff in Pennsylvania.

179.  Plaintiff reasonably and justifiably believed that defendants were operating lawfully and in accordance with all legally imposed duties, including in accordance with all required licenses and in accordance with all applicable licensing prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably relied upon said belief in doing business with defendants.

180.  Plaintiff reasonably and justifiably believed that defendants were operating lawfully, including with all required licenses and in accordance with all applicable licensing

prescriptions and prohibitions, and in accordance with all applicable statutes and regulations, and reasonably and justifiably relied upon the misrepresentations and the fraudulent and/or deceptive and misleading conduct more fully described above, all of which were in violation of the PAOA/BOVA, including the misrepresentations that the vehicle was carefully inspected, CARVANA CERTIFIED, and never in any accidents or damaged, and that the Title Certificate and Title ownership were being lawfully and properly transferred, and that all of the charges and fees were set forth honestly and accurately.

181. The misrepresentations and omissions identified more fully above and below, were known or should have been known to Defendants to be false and in violation of the PAOA/BOVA, when made, and/or Defendants were recklessly indifferent to their truth or falsity and violations, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreements.

182. The Defendants' actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

183. As a result of the Defendants' misconduct, the Plaintiff suffered the damage and harm set forth above and below, including received a vehicle of much less value, incurred an inflated amount of debt, was deprived of the use and enjoyment of the subject vehicle, will incur costs and expenses for replacement transportation, and incurred inconvenience and frustration, together with the other damages set forth above and below.

184. The Defendants' individual and collective acts and/or omissions were substantial contributing factors and causes of violations of the duties as set forth in this Count and to Plaintiff's indivisible harm and damages more fully described above and below, and render the Defendants joint and severally liable to the Plaintiff.

185. The Board of Vehicles Act – also known as the Profession and Occupation Act – provides for a private right of action and civil remedies. 63 P.S. § 818.329.

**§ 818.329. Civil actions for violations**

Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, any person who is or may be injured by a violation of a provision of this act of any party to a franchise who is so injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.

63 P.S. § 818.329.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount greater than Fifty Thousand Dollars ($50,000), together with interest, other costs, incidental and consequential damages, and punitive damages, and such other relief, including equitable, including rescission, revocation and/or restitution, that the Court may find appropriate.

### COUNT VII
**Violations of the Consumer Fraud Act and
the Motor Vehicle Advertising Practices Regulations
PLAINTIFF V. ALL DEFENDANTS**

186. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

187. The Consumer Fraud Act ("CFA"), at N.J.S.A. 56:8-2, prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

188. "Merchandise" includes goods and services, including motor vehicles. N.J.S.A. 56:8-1.

189. Plaintiff is a "consumer" as defined by the CFA.

190. Defendants are subject to the CFA. N.J.S.A. 56:8-1 *et seq.*

191. Defendants are used motor vehicle "Dealers" as defined by the CFA at N.J.S.A. 56:8-67.

192. Plaintiff's purchase of the vehicle is a sale of merchandise subject to the CFA.

193. As sellers of motor vehicles in the State of New Jersey, Defendants are subject to the Motor Vehicle Advertising Practices regulations (hereinafter the "MVAP regulations"), N.J.A.C. 13:45A-26A.1, *et seq.*

194. The MVAP Regulations, at N.J.A.C. 13:45A-26A.1, *et seq.*, were promulgated pursuant to the CFA. And a violation of the MVAP Regulations is a *per se* violation of the CFA, pursuant to N.J.S.A. 56:8-4 and N.J.A.C. 13:45A-26A.1.

195. Defendants are "Dealers" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3.

196. Defendants are "Advertisers" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3. and are subject to the MVAP Regulations.

197. Defendants' advertisements of the vehicle as a CPO qualifying vehicle is an "Advertisement" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3.

198. Defendants' violations of the CFA and MVAP Regulations include, but are not limited to, the following:

27

a) Defendants' concealment and/or omission of the accident damage and substantial body repairs to the vehicle is a violation of both the MVAP Regulations at N.J.A.C. 13:45A-26A.7 and a violation of the CFA at N.J.S.A. 56:8-2;

b) Defendants' advertisement of the vehicle as a CPO when it did not qualify for the CPO program is a violation of both the MVAP Regulations at N.J.A.C. 13:45A-26A.7 and a violation of the CFA at N.J.S.A. 56:8-2;

c) Defendants' advertisement of the vehicle without disclosing the accident damage and substantial body repairs to the vehicle that were known or should have been known by defendants is a violation of both the MVAP Regulations at N.J.A.C. 13:45A-26A.7 and a violation of the CFA at N.J.S.A. 56:8-2;

d) Defendants' misrepresentation of the vehicle as qualifying as a CPO vehicle when it did not is a violation of the CFA at N.J.S.A. 56:8-2;

199. Plaintiff would not have purchased the subject vehicle if they were aware that the subject vehicle had damage and repairs and if he were aware that the subject vehicle did not qualify as a CPO vehicle.

200. Plaintiff experienced numerous issues with the vehicle and was forced to pay for repairs to the vehicle which would have been covered under the CPO warranty if the vehicle were properly certified as advertised by Defendants.

201. As a result of Defendants' violations of the Consumer Fraud Act and the MVAP Regulations, Plaintiff suffered an ascertainable loss, including without limitation:

a) $20,713.28, the total purchase price of the vehicle;

b) deprived of the use and/or enjoyment of the vehicle;

c) has suffered inflated consumption and/or damage to his credit rating and/or credit reputation.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a. For actual damages;
b. For treble damages under the Consumer Fraud Act (N.J.S.A.56:8-19);
c. For the maximum civil penalty permitted under the MVAP Regulations (N.J.A.C. 13:45A-26A.1, *et seq.*);
d. For reasonable attorneys' fees and costs under the CFA at N.J.S.A.56:8-19, and all other applicable statutes;
e. For prejudgment interest and post-judgment interest; and
f. For any other relief the Court deems just and proper.

Case ID: 200801110

<u>COUNT VIII</u>
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act**
**N.J.S.A. 56:12-14-18**
**PLAINTIFF V. ALL DEFENDANTS**

202.   Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

203.   The Retail Order is a "consumer contract" and/or "consumer notice" subject to the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 – 18, ("TCCWNA").

204.   TCCWNA at N.J.S.A. 56:12-15 prohibits sellers and lenders from offering or entering into consumer contracts, or giving or displaying notices that contain a provision in that violate clearly established rights of Plaintiff or responsibilities of Defendants, as established by State or Federal law.

205.   The CFA and the MVAP Regulations create clearly established rights of Plaintiff and responsibilities of Defendants.

206.   Plaintiff are each a "consumer" as defined under TCCWNA.

207.   Defendants are a seller, creditor and/or lender with regard to the sale and lease of motor vehicles within the meaning of the TCCWNA.

208.   Defendants are subject to TCCWNA.

209.   The CFA and the MVAP Regulations are clearly established laws at the time of the transaction between Plaintiff and Defendants.

210.   Defendants violated TCCWNA at N.J.S.A. 56:12-15 by entering into consumer contracts with Plaintiff that violated clearly established rights of Plaintiff and/or clearly established responsibilities of Defendants – specifically, Defendants concealed and/or omitted the pre-sale damage and substantial body repairs to the vehicle, and omitted that the vehicle did not qualify as a CPO in violation of the CFA and the MVAP Regulations.

211.   Plaintiff is entitled to statutory damages of not less than $100 for each consumer contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

212.   Plaintiff is entitled to statutory damages of not less than $200 for the Retail Order that is in violation of TCCWNA.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

    a.   For actual damages;

    b.   For a declaratory judgment that the contract involved herein is canceled and/or void for fraud under the Consumer Fraud Act at N.J.S.A.56:8-19;

Case ID: 200801110

c.   For a refund of all payments made under the equitable provisions of the Consumer Fraud Act at N.J.S.A.56:8-19

d.   For treble damages under the Consumer Fraud Act at N.J.S.A.56:8-19;

e.   For the maximum civil penalty permitted under TCCWNA at NJ.S.A. 56: 12- 17;

f.   For reasonable attorneys' fees and costs under the CFA at N.J.S.A.56:8-19, the TCCWNA at N.J.S.A. 56:12-17, and all other applicable statutes;

g.   For judgment interest and post-judgment interest; and

h.   For any other relief the Court deems just and proper.


                          BENSLEY LAW OFFICES, LLC


          BY:    /s/ William C. Bensley
                          WILLIAM C. BENSLEY
                          **Attorney for Plaintiff**

Case ID: 200801110

<u>VERIFICATION</u>

I hereby verify that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief.

This verification is made subject to the penalties set forth in 18 Pa. C.S. Sec. 4904 relating to unsworn falsification to authorities.

DATE: __8/12/2020__

Filed and Attested by the
Office of Judicial Records
13 AUG 2020 02:58 pm
S. RICE

# EXHIBIT 1

2/1/2020



About Us | Carvana.com

CARVANA   SEARCH CARS   SELL/TRADE   FINANCING ▾   CAR FINDER      HOW IT WORKS ▾   ABOUT CARVANA ▾   SUPPORT ▾

## Say hello to Carvana - a whole new way to buy a car.

About time, isn't it?



SEE OUR CARS

### REAL SAVINGS
#### NO DEALERSHIPS

Cutting out the dealerships translates to lower cost for us on every vehicle we sell. What does that mean for you? We pass the savings on to you in four ways: lower prices, premium cars, a better experience, and no hidden fees.

### CARS YOU CAN COUNT ON
#### EVERY CAR IS CERTIFIED



At Carvana, we know that trust begins and ends with the car, which is why every vehicle we sell comes Carvana Certified. The process begins well before you land on our site with our rigorous inspection and reconditioning process, and it continues long after we leave your driveway with our 100 day/4,189 mile "Worry Free Guarantee."

### YOU'RE IN CONTROL
#### PURCHASE HOW YOU WANT



At Carvana, our goal is to put you in total control of the purchase process. What does this mean? We're open 24 hours a day so you can buy whenever you want. You are able to use your computer or your phone so you can buy however you want. You also can buy wherever you want, like the comfort of your couch and not a dealership. You can purchase as fast or slow as you want; we've had customers complete a purchase and schedule delivery in as little as ten minutes!

### TRADE IN
#### TRADE-IN YOUR VEHICLE

At Carvana, we believe that you shouldn't have to spend time in a dealership, especially if you are looking for a value for your trade-in. To do that, we have built a process that enables you to quickly and easily get a fair value for your trade.

How does it work? You complete an appraisal process completely online by answering a few questions about your vehicle, and then we provide you with a value for your trade-in. If you accept Carvana's offer you then have two options: apply your trade-in value to an online purchase from Carvana in the form of a down payment, or we can simply cut you a check. Depending on your location, we will either come to you to perform a final inspection of your trade-in, or you can drop it off at one of our vending machines located in Atlanta, Nashville, Charlotte, Houston, Austin, San Antonio, Frisco, Raleigh, Jacksonville, Tampa, Birmingham, Orlando, Gaithersburg, Tempe, Warrensville Heights, Philadelphia, Indianapolis, Bridgeville, Oak Brook, Kansas City, Ontario, Greensboro, Westminster, Oklahoma City, Memphis or Miami. that easy.

https://www.carvana.com/about-us

Case I.D.: 200801110

2/1/2020

About Us | Carvana.com



1.800.967.8523

## BETTER THAN A TRADITIONAL TEST DRIVE
### EXPERIENCE YOUR CARVANA CAR

We understand that buying a car is an important life decision. That's why every Carvana car we sell comes with a 7-Day Money Back Guarantee. Take the time and see if the car fits with your life. Show it to your friends. Get it checked out by a trusted mechanic. Once the week is up, if for any reason you don't love it, we'll take it back.





## WHAT OUR CUSTOMERS ARE SAYING

"Just purchased and traded in a car with Carvana, it was by far the easiest and one, if not the, best experiences I've ever had purchasing a car. Hanna, Jared, Stephen, Brittnee and the gentleman who deliver my car went above and beyond. I would highly recommend!"

- Terese B.
2011 BMW 5 Series

"At 10:02 AM on Friday I bought a car from Carvana.com. I uploaded all my forms, I electronically signed all the papers, and was approved for financing without ever speaking to a human. At 10:07 AM on Saturday they delivered the car to my door. 24 hours, no sales person, no hassle, no price haggling. If you are in the Atlanta area looking for a used car you should be looking here before anywhere else."

- Forrest F.
2011 Kia Soul



https://www.carvana.com/about-us

2/1/2020                    Carvana - The New Way to Buy a Car Online - Find Out How it Works



## Browse. Buy. Breathe.®

Sit back, relax and experience a whole new way to buy a car.



### FIND THE BEST CAR FOR YOU
**WITHIN OUR FULL INVENTORY**



Find the car that fits your life using one of our nine dynamic filters. Take it for a virtual spin and inspect the features and imperfections (if there are any) with our patented 360-degree photo technology. Head to the details tab to get all the specifics of your vehicle and access a free vehicle history report. Have a question? Call us at 1.800.333.4554. We're here to help.

### CREATE AN ACCOUNT
**TO STORE ALL YOUR FAVORITES**

Create your account and save your favorite vehicles, compare prices and review financing options.

### GETTING FINANCING
**IT'S EASY WITH CARVANA**



Buy with cash, use your financial institution, or get financing from us. Either way, you can complete the process and see all of your options online – and without a pit stop at the F&I back office. If you decide to finance through us, our interactive financing sliders will help you find the right payment plan for your life.



Case I.D: 200801110

2/1/2020                                     Carvana - The New Way to buy a Car Online - Find Out How it Works

## PURCHASE
### EVERYTHING WITHIN OUR SITE

Review your contracts and sign them electronically. Feel free to take as much time as you'd like, or complete the process in as little as 10 minutes. Once you get the paperwork out of the way, simply select a delivery or pick up time, submit your down payment information, and you are all set. The internet, your car-expert friends, and our customer advocates are all at your disposal. No pressure. No fast talking. No managers or back rooms. You are in complete control.

## CARVANA VENDING MACHINE
### NO DEALERSHIP OR SALESMAN



**Pick Up Experience**
If you would rather pick up your vehicle than have it delivered, you can visit a Carvana Vending Machine in Atlanta, Nashville, Charlotte, Houston, Austin, San Antonio, Frisco, Raleigh, Jacksonville, Tampa, Birmingham, Orlando, Gaithersburg, Tempe, Warrensville Heights, Philadelphia, Indianapolis, Bridgeville, Oak Brook, Kansas City, Ontario, Greensboro, Westminster, Oklahoma City, Memphis or Miami for a completely new experience. For peace of mind, Carvana staff will be on-site to assist you.

**Fly and Drive**
Even if you are located outside of our extended service area, you can still buy a car from Carvana and pick it up at one of our Vending Machines. Book a one-way flight to one of our vending machines, and Carvana will subsidize $200 of your airfare. Carvana will also arrange white glove transportation to the Vending Machine you choose, where you can take possession of your car and drive it home.

## PEACE OF MIND
### WE DO EVERYTHING WE CAN



At Carvana, we know that buying a car is a serious undertaking. We want to do everything we can to put your mind at rest. Every car we sell is Carvana Certified with a 100 day/4,189 mile "Worry Free Guarantee," and a 7-Day Money Back Guarantee.
We work as hard as we can before your purchase to make sure the car is everything you expect it to be. If for any reason you decide the car isn't right for you, we will take it back, free of awkwardness. We're in this for the long haul, so breathe easy.



## WHAT OUR CUSTOMERS ARE SAYING

"I'll tell you this much, if this all works out I'll never buy a car another way again."

"Wow, Thank you! This process was amazing- simple and helpful. I love the idea that I have not had to deal with the pressure and haggling of a dealership."

— Jeffery L.
2010 Honda Pilot

Jessica C.
2017 Ford Escape



Case ID: 200801110

2/1/2020                                    Carvana Certified Program | Peace of Mind | Carvana.com



## Peace of mind comes certified

We won't sell you a car that we wouldn't sell to someone in our family. Everyone says this. We actually mean it. We'll give you every important detail about our cars - all features, imperfections, and whether it's subject to an open safety recall.



### OVERVIEW
**THE CARVANA DIFFERENCE**



At Carvana, we have only one standard when it comes to the quality of our cars--the highest. That means you can purchase with supreme confidence when shopping our inventory for the right car for you. Check out the video above to learn more about our Carvana Certified vehicles.

### QUALITY
**EVERY DETAIL MATTERS**

**150-POINT INSPECTION**
We put each vehicle through a 150-point inspection so that you can be 100% confident in the quality and safety of your vehicle. This inspection includes everything from tread depth of tires to thickness of brake pads to exterior paint quality to Bluetooth compatibility. Certain cars may be subject to open safety recalls with no currently available remedy. Click here for more information.

**NO REPORTED ACCIDENTS**
We do not sell cars that have been in a reported accident or have frame or structural damage.

**PREMIUM DETAIL**
We go the extra mile so that your car is looking as good as new. There are a lot of specifics that we won't list here (we wash, clean, buff, paint, polish, wax, seal), but trust us that when your car arrives, it's going to look sweet.

### CONFIDENCE
**WE STAND BEHIND OUR WORD**

**"WORRY FREE" GUARANTEE**
Enjoy a limited warranty on all mechanical assemblies for 100 days, or for 4,189 miles, whichever expires first. Why 4,189 miles? Consumers drive on average 41.89 miles per day. The duration of your coverage should actually match the amount of miles you drive. We think details like this are important.

**7 DAY MONEY BACK GUARANTEE**
This guarantee will give you the ability to return the vehicle to Carvana for any reason and receive a refund, within 7 days of delivery.

**FREE CARFAX VEHICLE HISTORY REPORT**
We want our customers to have full transparency into the history of our vehicles. For this reason, we have partnered with CarFax to provide you the history report for every vehicle on the site! You can see this on every vehicle details page under the "Details & Specs" section at no cost to you.

Case ID: 200801110

2/1/2020                                    Carvana Certified Program | Peace of Mind | Carvana.com

## EXTRAS
### WE GO THE EXTRA MILE FOR YOU

### FREE OIL CHANGE
This falls into the "of course" category, but as part of that inspection we told you about, we also change out your vehicle's oil and check all the fluids.

### OWNER'S MANUAL
Call us crazy, but we think you need an owner's manual, which is why we work hard to make sure you have the necessary information about your vehicle at your fingertips. No physical copy of the manual? No problem! We'll send you a digital copy upon request at no extra cost to you.



## WHAT OUR CUSTOMERS ARE SAYING

"It was by far the easiest and one of, if not the best experiences I've ever had purchasing a car."

"We got a great deal and the whole purchase process was amazingly simple. I'll never go to a traditional dealer again."

- Terese B.
2011 BMW 1 Series

- Clifford G.
2011 Toyota Camry



Case ID: 200801110

6/24/2020

nimbus screenshot app print



CARVANA

SEARCH CARS    SELL/TRADE    FINANCING    CAR FINDER

2016 BUICK CASCADA

$17,990

Est. $229/mo

    

## VEHICLES YOU MIGHT LIKE



2019 BUICK ENCORE    18,990

2019 JEEP CHEROKEE    20,990

2018 CHEVROLET EQUINOX    18,500

2016 GMC TERRAIN    19,990

2018 BUICK ENCORE    14,990

2019 HYUNDAI KONA    15,990

## VEHICLE DETAILS

HIGHLIGHTS



ACCIDENT FREE



4 NEW TIRES

6/24/2020

nimbus screenshot app print





| | | | |
|---|---|---|---|
| Engine Type | | MFG | |
| Exterior Color | | Interior Color | |
| Transmission | | Drivetrain | FWD |
| Doors | | Number of Keys | |
| VIN | | Stock # | |
| Vehicle ID | | | |
| INSTALLED OPTIONS | | | |
| STANDARD EQUIPMENT | | | |

# BUILD MY DEAL



MONTHLY PAYMENT

CASH DOWN

APPLY A TRADE-IN VALUE

PROTECTION PLANS

# 150 POINT INSPECTION

Case ID: 200801110

6/24/2020                                        nimbus screenshot app print

MODEL 2016 Dodge Charger                                                    VIN 2C3CDXHG8GH349141

| Clean History | ✓ | Interior | ✓ |
| Road Test | ✓ | Suspension | ✓ |
| Under the Hood | ✓ | Exterior Appearance | |
| Wheels & Brakes | ✓ | Interior Appearance | |
| Body | ✓ | | |



## FROM INSPECTION TO PERFECTION

We won't settle for less when it comes to ensuring the quality of our vehicles. Our 150-point inspection is only the start.

BACK TO SEARCH        GET FINANCING        GET TRADE-IN VALUE

FINANCE          TRADE/SELL          HOW IT WORKS          ABOUT CARVANA          SUPPORT

Copyright © 2020 Carvana. All Rights Reserved.

Case ID: 200801110





Case ID: 200801110









85  Power test operation of equipment          PASSED          FIXED OR REPLACED

86  Seat bottom of equipped and check for proper operation.          PASSED          FIXED OR REPLACED

87  Inspect movement of equipment          PASSED          FIXED OR REPLACED

88  Seat test operation          PASSED          FIXED OR REPLACED

89  Notice movement safety light operation          PASSED          FIXED OR REPLACED

90  Interior light/lube/other operation, warning lamps          PASSED          FIXED OR REPLACED

91  Check headglow rear light operation          PASSED          FIXED OR REPLACED

92  Inspect compartments (glove and load covers)          PASSED          FIXED OR REPLACED

77  Side & high beam headlights and aim/check working and operation)          PASSED          FIXED OR REPLACED

78  Outside mirrors and power windows          PASSED          FIXED OR REPLACED

79  Remove and check all spotlight/weight operation          PASSED          FIXED OR REPLACED

80  Windshield wiper blades, spray operation for travel          PASSED          FIXED OR REPLACED

81  Door covers test, check motor power operation and fixed safety functions          PASSED          FIXED OR REPLACED

82  Power relay switch operation          PASSED          FIXED OR REPLACED

83  Seat belt condition and use for adjustment and operation          PASSED          FIXED OR REPLACED

84  Seat controls/adjustment positions for car seat          PASSED          FIXED OR REPLACED



 COVID-19 information No payments for up to 90 days. Touchless delivery/pickup available. Learn more

## 2016 BUICK
## CASCADA

VEHICLE DETAILS      MAKE IT YOURS      150 POINT INSPECTION

This vehicle is currently not available for purchase.



$17,990      34,890 MILES

Each vehicle comes

OPTIONS

with our 7-Day Return
Policy

# VEHICLE DETAILS

HIGHLIGHTS



### ACCIDENT FREE

Like every Carvana vehicle, this vehicle has never been in a reported accident.

**CARFAX**

FEATURES     BROCHURE     WARRANTY

| | |
|---|---|
| Engine Type | 4-Cyl, Turbo, 1.6 Liter |
| MPG | 20 City / 27 Hwy |
| Exterior Color | Gray |
| Interior Color | Black |
| Transmission | Automatic, 6-Spd W/Overdrive |
| Drivetrain | FWD |
| Doors | 2-Door Convertible |
| Number of Keys | 2 |
| VIN | W04WT3N50GG104958 |
| Stock # | 2000485127 |
| Vehicle ID | 1391731 |

VIEW ORIGINAL WINDOW STICKER

INSTALLED
OPTIONS

Graystone Metallic                    Front license plate bracket

STANDARD
EQUIPMENT

Glass solar absorbing                Wipers, front intermittent, Rainsense

$32,090      74,650 MILES

Audio system feature, display, 7" diagonal, touch-screen color, located on center stack

SiriusXM Satellite Radio is standard on nearly all 2016 GM models. Enjoy a 3-month All Access trial subscription with over 150 channels including commercial-free music, plus sports, news and entertainment. Plus listening on the app and online is included, so you'll hear the best SiriusXM has to offer, anywhere life takes you. Welcome to the world of SiriusXM. (IMPORTANT: The SiriusXM Satellite Radio trial package is not provided on vehicles that are ordered for Fleet Daily Rental ("FDR") use. If you decide to continue service after your trial, the subscription plan you choose will automatically renew thereafter and you will be charged according to your chosen payment method at then-current rates. Fees and taxes apply. To cancel you must call us at 1-866-635-2349. See our Customer Agreement for complete terms at www.siriusxm.com. All fees and programming subject to change.)

Seat adjuster, driver 8-way power

Seat adjuster, front passenger 6-way power

Seat adjuster, driver and front passenger easy entry

Seat adjuster, power driver lumbar control

Seat adjuster, power passenger lumbar control

Seats, rear split-folding with trunk pass-through/trunk release access

Seats, driver and front passenger, 1-lever rear Easy Entry system

Seats, front and rear, heat-reflective leather-appointed

Seats, heated driver and front passenger

Power outlet, front auxiliary, 12 volt, covered

Power outlet, rear auxiliary, 12 volt, covered

Floor mats, premium carpeted front and rear

Steering column, tilt and telescopic

Steering wheel, leather-wrapped 4-spoke

Steering wheel, heated

Steering wheel controls, mounted audio and phone interface controls

Cruise control, electronic with set and resume speed

Driver Information Center with trip odometer, fuel range, average fuel economy, instantaneous fuel economy, average vehicle speed, tire pressure and oil life remaining

Keys, (2) foldable

speedometer, miles/kilometers

Tail lamps, LED illumination, rear

Headlamp control, automatic on/off with tunnel detection

Headlamp control, automatic leveling system

Headlamps, articulating

Headlamps, high intensity discharge

Fog lamps, front

Lamp, center high-mounted stop/brake (CHMSL)

Grille, chromium silver finish with Buick red shield

Moldings, bright bodyside

Air deflector, rear spoiler

Air deflector, front seats

Convertible roof, folding, acoustically and thermally insulated

Tire and Wheel, 17" (43.2 cm) spare

Tires, P245/40R20 all-season, blackwall

Wheels, 20" (50.8 cm) dynamic twin spoke bi-color finish

Exhaust, single-outlet stainless steel with bright tip

Brakes, 4-wheel antilock, 4-wheel disc, 17" front and 16" rear

Brake, electronic parking

Steering, power, electric

StabiliTrak, stability control system, includes Traction Control

Suspension, rear, compound crank with Z-link for enhanced rear stability

Suspension, front Hi-Per strut

Suspension, Sport Tuned

Battery, maintenance free with rundown protection, heavy-duty 501 cold cranking amps

Alternator, 140 amps

Drivetrain, front wheel drive

Engine, 1.6L turbo 4-cylinder, SIDI DOHC with Variable Valve Timing (200 hp [149.1 kW] @ xxxx rpm, 206 lb-ft of torque [278.1 N·m] and 221 lb-ft of torque [298.4 N·m] with overboost @ xxxx rpm)

Driver Confidence Package includes (UEU) Forward Collision Alert, (UFL) Lane Departure Warning, (UD5) Front and Rear Parking Assist, (CE1) Rainsense wipers and (TTW) automatic on/off headlamp control with tunnel detection

Emissions Override, Federal

Emissions, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington State Requirements

20" dynamic twin-spoke bi-color finish wheels

Buick IntelliLink with navigation and 7" diagonal touch-screen display

Jet Black, Perforated Leather-Appointed Seat Trim

Sport bucket front seats

Premium Preferred Equipment Group

Horn, dual-note high and low

Tire Pressure Display

Trunk emergency release handle

Safety belts, 3-point, rear

Safety belts, 3-point, driver and front passenger with electronic seat belt presenter, includes pretensioners and load limiters

Forward Collision Alert

Lane Departure Warning

Rear Vision Camera

Front and Rear Parking Assist

OnStar Basic Plan for 5 years including limited RemoteLink mobile app services, Advanced Diagnostics and Dealer Maintenance Notification (OnStar plan available for 5 years from the date of vehicle delivery and is transferable. Does not include Emergency, Security or Navigation services.)

OnStar with 4G LTE and built-in Wi-Fi hotspot to connect to the internet at LTE speeds, includes 3GB or 3 months OnStar Data Trial (whichever comes first) (Available 4G LTE Wi-Fi requires compatible mobile device, active OnStar subscription and data plan after trial.)

$17,990        54,660 MILES

OnStar Guidance Plan for 6 months including Automatic Crash Response, Stolen Vehicle Assistance, Roadside Assistance, Turn-by-Turn Navigation, Advanced Diagnostics and more (trial excludes Hands-Free Calling) (Visit www.onstar.com for coverage map, details and system limitations. Services may vary by model and conditions.)

Air bag, Passenger Sensing System sensor indicator inflatable restraint, front passenger/child presence detector

Air bags, dual-stage frontal and knee for driver and front passenger and seat mounted side impact for front seating positions (Always use safety belts and child restraints. Children are safer when properly secured in a rear seat in the appropriate child restraint. See the Owner's Manual for more information.)

Daytime Running Lamps, separate cavity, LED

Automated rollover pop-up bars high-strength steel, located behind rear seats

Shift knob, leather-wrapped

Visors, driver and front passenger illuminated vanity mirrors, covered

Mirror, inside rearview auto-dimming

Trim, interior decor, Piano Black

Defogger, rear-window, electric

Air conditioning, dual-zone automatic climate control with individual climate settings for driver and front passenger

Windows, power, rear with Express-Up/Down

Windows, power with front passenger Express-Up/Down

Windows, power with driver Express-Up/Down

Theft-deterrent system, content theft alarm

Remote vehicle starter system includes Remote Keyless Entry

QuietTuning, Buick exclusive process that consists of numerous noise canceling acoustic treatments to reduce, block and absorb noise and vibration to create a quiet interior cabin

SHOW FEWER

## MAKE IT YOURS

## 150 POINT INSPECTION

We put every vehicle through a **150 point inspection** so that you can be
**100% confident** in the quality and safety of your vehicle.

MODEL
VIN

Clean History                                                          Passed

Interior                                                               Passed

Road Test                                                             Passed

Suspension

14,954 MILES

Exterior Appearance

Normal Use

Wheels & Brakes

Passed

Interior Appearance

Normal Use

Body

Passed

SEE ENTIRE 150 POINT INSPECTION LIST

This vehicle is currently located at: 20001 Euclid Ave, Euclid, OH 44117 (NOT A RETAIL LOCATION)

Learn more about

VEHICLES YOU MIGHT LIKE

2018 BUICK
ENCORE

2017 HYUNDAI
TUCSON

2017 FORD
FUSION

34,250 MILES

Case ID: 200801110



2017 CHEVROLET
EQUINOX                    14,590

2017 FORD
ESCAPE                              13,590

2016 BUICK
ENCORE                            14,590

Case ID: 200801110

# EXHIBIT 2

Case ID: 200801110

Sign Envelope ID: ADA9EDF8-3984-40FD-89A0-E14C72A658AF

THIS IS A COPY

# Retail Purchase Agreement
## – Pennsylvania –

| BUYER | Roger M Burden |
|---|---|
| ADDRESS LINE 1 | 328 IVES AVE |
| ADDRESS LINE 2 | |
| CITY, STATE, ZIP | CARNEYS POINT NJ 08069 |
| PHONE(S) | RES. 8562753531 | BUS. |

**VEHICLE BEING PURCHASED**

| Year 2016 | Make Buick | Model Cascada | Body Convertible |
|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 34650 | Color Gray |
| VIN # W04WT3N50GG104958 | | | | |

Dealership provides an express limited warranty. Buyer has a copy of the limited warranty agreement. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Seller does not have to make any repairs on this vehicle, except as required under the limited warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("you") and Dealership ("we") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address listed above. We are agreeing to sell to you and you are agreeing to buy from us the Vehicle at our licensed dealership location shown above, subject to the terms and conditions of this Agreement. We agree to transfer to you and you agree to accept title and ownership of the Vehicle in the state of the Dealership Address listed above. When we transfer title and ownership of the Vehicle to you, you may take delivery of the Vehicle from us at our licensed dealership location shown above or you may make arrangements with us to have the Vehicle transported to another mutually agreed-upon location for your pick-up.

**TRADE IN VEHICLE #1**

| Year N/A | Make N/A | Model N/A | Body N/A |
|---|---|---|---|
| Lic. Plate # N/A | License Tab # N/A | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

**TRADE IN VEHICLE #2**

| Year N/A. | Make N/A | Model N/A | Body N/A |
|---|---|---|---|
| Lic. Plate # N/A | License Tab # N/A | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

*RB* _____ Buyer's Initials

| Date | 05/09/2020 | Phone | 1-800-333-4554 |
|---|---|---|---|

Dealership   CARVANA, LLC

Address   63 PIERCE RD

City, State, Zip   WINDER GA 30680-7280

Stock Number   2000485127

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| Selling price | $17,990.00 |
|---|---|
| Sales Tax | $1,191.84 |
| NJ Registration Fee | $46.50 |
| Title Fee | $60.00 |
| Temporary Permit Fee | $5.00 |
| Subtotal (Selling Price • Delivery Fee • Fees • Taxes) | $19,293.34 |
| Cash Down Payment | $5,000.00 |
| | $14,293.34 |

**Lienholders**
please send Lien Holder Balance amount to:
Attention: Finance Operations
1930 W Rio Salado Parkway
Tempe, AZ 85281
FinOps Contact # 460-401-5770

Case ID: 200801110

DocuSign Envelope ID: ADA9EDF8-3984-40FD-89A0-E14C72A658AF

THIS IS A COPY

> **NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give you the ability to return the Vehicle to Carvana and terminate this retail purchase agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior Vehicles to Carvana in connection with any Retail Purchase Agreements or Retail Installment Contracts associated with this transaction.
   i. If you have returned, exchanged, or swapped two (2) prior Vehicles in connection with this transaction, you will be given a one-time opportunity to decline or accept the third and final Vehicle either during the delivery or pick-up appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after you take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
   i. Within a Carvana service area: you make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Cost of pickup will be paid by Carvana. Service area is designated by zip code and subject to change without prior notice.
   ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by you. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created in your favor by any applicable retail installment contract executed between you and Carvana;

5. The Vehicle is in the same condition you received it except for reasonable wear and tear (evidence of smoking in the Vehicle during the 7 Day Test Own is not considered reasonable wear and tear) and any mechanical problem that becomes evident after delivery that was not caused by you;

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident that occurred after you took delivery of the Vehicle;

8. If the Vehicle is driven more than 400 miles, at Carvana's election you will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles. If you return your Vehicle and had traded in a vehicle to us, we will return your trade to you only after you have paid all fees required for the return of the Vehicle. Required fees may not be paid by personal check. Required fees will be deducted from your down payment refund. If you paid your down payment via ACH transaction, we will pay you and/or return your trade in by the earlier of (a) when you provide evidence that the ACH transaction was cleared, or (b) 15 business days after your purchase of the Vehicle. So long as you meet all conditions for return of the Vehicle outlined above, Carvana will not report this account to the credit bureaus.

9. Any Trade-In vehicles with current liens which are involved in this transaction will be paid off once sale is complete and after the test own period ends. You should continue to make payments on liens if payment is due within your test own period. The lien holder of the Trade-In vehicle will reimburse you for any over-payment after the transaction is complete.

**Trade in Representation and Warranty:** You represent and warrant that the trade-in described in the Buyer's order/Purchase Agreement, if any, has not been misrepresented and air pollution equipment is on the trade-in and is working, you will provide to us a Certificate of Title (or documents that allow us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency,) and you have the right to sell the trade-in.

**General:** At time of delivery, or at any time during your 7 Day Test Own period, you may reject your vehicle and terminate your vehicle financing and purchase for any reason.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies dealer otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the vehicle's license plate cover. Buyer expressly waives any compensation for the placement of dealer's name on the vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave us false or misleading information on carvana.com or on the telephone, via email or text message, in person, or any other communication medium in connection with the purchase of the Vehicle relating to this Agreement; 2. If we cannot verify any information that you have provided us; 3. If we discover a material adverse change in any information you provided us during our review process; 4. If you do not cooperate in the verification and review process described below; 5. You fail to keep any other agreement or promise you made in this Agreement and/or any retail installment contract executed in connection herewith.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

DocuSign Envelope ID: ADA9EDF8-3984-40FD-89A0-E14C72A658AF

THIS IS A COPY

**After-sale Review and Verification Process:** The Vehicle sold to you is subject to an after-sale review and verification of the information you have provided to us. You agree to cooperate with the after-sale review and verification process.

**Limitation on Damages:** Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the vehicle to you if it is beyond our control, not our fault or we are not negligent.

**References:** To the extent you are financing your purchase with us, we may contact your employer or your references to verify the information you provided to us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Disclosure on Airbags:** We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of the airbag(s) on the vehicle unless otherwise disclosed to you on the Carfax Vehicle History Report. You acknowledge that we have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and you accept the vehicle without representation or warranty from us. You further acknowledge that you had the opportunity to have the airbag(s) checked by someone of your choice prior to the expiration of your 7 Day Test Own Period.

**Liability Insurance:** You understand that state law requires you to purchase and maintain liability insurance. We do not provide liability insurance for you and it is not included in your Agreement. Your choice of insurance providers will not affect our decision to sell you the vehicle.

**Record Retention:** You agree that we may maintain documents and records related to the vehicle and the Agreement electronically, including, but not limited to, documents and record images, and that we may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, or non-judicial or regulatory proceeding related to the vehicle.

**Arbitration Agreement:** The arbitration agreement entered into between you and Dealer is incorporated by reference into and is part of this Agreement.

**NOTICE:** Carvana, LLC allows you to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether you finance your vehicle purchase or pay cash, if your vehicle is registered in the state where you purchased your vehicle, Carvana will remit the applicable sales/use tax on ancillary products to that state on your behalf. Unless required by state law, if your vehicle is registered in a state that is not the state where you purchased the vehicle, Carvana will not collect or remit to the state of vehicle registration any applicable sales/use tax on ancillary products on your behalf unless you live in Kansas, Louisiana, or Pennsylvania.

**Buyer(s) acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply.**
**This agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____*Roger Burden*_____
         Roger M Burden

                                                    Accepted By _____*[signature]*_____
                                                                      Carvana

Case ID: 200801110

# EXHIBIT 3

Case ID: 200801110

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

**LAW 553-PA-e 12/19**

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Roger M Burden 528 Ives Ave Penns Grove, NJ 08069 SALEM | N/A | Carvana LLC 1045 N Front Street Philadelphia PA 19123 |

You, the Buyer (and Co-Buyer if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2016 | Buick Cascada | N/A | W04WT3N50GG104958 | Personal, family, or household unless otherwise indicated below □ business □ agricultural   N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $5,000.00 |
|---|---|---|---|---|
| 3.17 % | $ 1,419.94 | $ 14,293.34 | $ 15,713.28 | $ 20,713.28 |

| NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. |
|---|

Returned Check Charge: You agree to pay the costs we actually pay or amount of any check you give us that dishonors.

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 218.24 | Monthly beginning   06/08/2020 |
| N/A | $ N/A | N/A   N/A |
| N/A | | |

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2 1/2% of the part of the payment that is late.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information, including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

---

### If you do not meet your contract obligations, you may lose the vehicle.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

LAW 553-PA-e 12/19 v1   Page 1 of 5

T30-383737-DP304383736 · This copy was created on Sat May 16 10:17:56 GMT 2020

Case ID: 200801110

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the

law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (iii) a semitrailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false or misleading information during credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreement in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs if court awards us.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peaceably and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   a. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.
   If we repossess the vehicle, we may at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.
   If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it and preparing it for sale.

Case ID: 200801110

This is a Copy of the Customer Completed signed electronic form held by RouteOne LLC.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ......... N/A .........        Mos. .........                                    N/A
                                                                     Name of Gap Contract
I want to buy a gap contract.

Buyer Signs X  **B**                           **N/A**

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before    N/A    , Year  N/A    SELLER'S INITIALS    N/A

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X **C**    *Roger M Burden*    Co-Buyer Signs X **C** N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See the rest of this contract for other important agreements.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.

Buyer Signs X **D**    *Roger M Burden*    Date 05/09/2020    Co-Buyer Signs X **D**    N/A    Date  N/A

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X **E**    *Roger M Burden*    Date 05/09/2020    Co-Buyer Signs X **E**    N/A    Date  N/A
Buyer Printed Name Roger M Burden                           Co-Buyer Printed Name N/A

If the business use is checked, the Primary Use for Which Purchased" Print Name N/A                          Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other person agrees to    X N/A

Seller signs Carvana LLC                           Date 05/09/2020    Address N/A    By X **E**                           Title Customer Ad:

THESE ARE NO WARRANTIES EXPRESS OR IMPLIED, AS TO CONTRACT OR
LIABILITY FOR ACCURACY OF THIS FORM, CONSULT YOUR OWN LEGAL COUNSEL

Case ID: 200801110

4. **Hardware and Software Requirements.** To receive or retain electronic Communications, you must have access to:

> **Browser Options:**
> This Signature and Document Delivery Service and Website will support the most Current Version of the major desktop, laptop, and tablet browsers. *MOBILE PHONE BROWSERS ARE NOT SUPPORTED AT THIS TIME.*
>
> **Read and Display Requirements:**
> Our system works with any Current Version of Adobe Reader® that views and prints PDF documents.
>
> **Printer or Storage Space:**
> You will need access to a printer or sufficient storage space to retain the Communications.

<u>You must also have an active email address and SMS-enabled mobile/cellular telephone to use the Signature and Document Delivery Service and Website.</u>

<u>For transactions you complete on our hardware, we will supply any additional required hardware and software.</u>

By "Current Version," we mean a version of the software that is currently supported by its publisher. From time to time, we may offer services or features that require the Internet browser you are using to be configured in a particular way, such as permitting the use of JavaScript or cookies. If we detect that the Internet browser you are using is not properly configured, we will provide you with a notice and advice on how to update your configuration. We reserve the right to discontinue support of a Current Version of software if, in our sole opinion, it suffers from a security flaw or other flaw that makes it unsuitable for use with your Transaction.

If our hardware or software requirements change, and that change would create a material risk that you would not be able to access or retain electronic Communications, we will give you notice of the revised hardware or software requirements. Continuing to use this service after receiving notice of the change is reaffirmation of your consent.

5. Paper Copies.

a. **Transactions Completed Using Our Hardware and Software**

For Transactions completed using our hardware and software ("**Type I Transactions**"), we will use electronic signatures obtained from you for Communications and we will provide those Communications to you in paper form at the time of your Transaction. For Type I Transactions, we will tell you that you will be receiving a paper copy of the Communications at the time of your Transaction.

b. **Transactions Completed Using Your Hardware and Software**

For Transactions completed using your hardware and software to access the Signature and Document Delivery Service and Website ("**Type II Transactions**"), we will use electronic signatures obtained from you for Communications and we will provide those Communications to you at the time of your Transaction. For Type II Transactions, we will tell you that you will be receiving an electronic copy of the Communications at the time of your Transaction.

For Type II Transactions, we <u>will not</u> send you a paper copy of electronic Communications unless you

Case ID: 200801110

# EXHIBIT 4

Case ID: 200801110



# CARFAX®
# VEHICLE HIGHLIGHTS

**2016 BUICK CASCADA PREMIUM**
VIN: W04WT3N50GG104958
Body Style: CONVERTIBLE
Engine Size: 1.6L I4 F DOHC 16V
Drivetrain: FRONT WHEEL DRIVE

**Original Manufacturer's Warranty:**
Basic Warranty Active
Please confirm remaining factory warranty and extended warranty options with your dealer!
The original manufacturer's warranty includes:
48 months or 50,000 miles

Courtesy of
Carvana, LLC
1930 W Rio Salado Pkwy
Tempe, AZ 85281
(800) 333-4554
www.carvana.com

## OWNERSHIP HISTORY

| | |
|---|---|
| Number of Owners: | 2 |
| Last owned in the following state/province: | New York |
| Annual average mileage: | 10,377 LOW MILEAGE * |

*Below industry annual average of 15,000 miles

## STATE DMV-REPORTED TITLE PROBLEMS

None of these major title problems were reported by a state Department of Motor Vehicles: 

| | |
|---|---|
| Salvage, Junk, Rebuilt, Fire, Flood, Hail, Lemon | Guaranteed No Problem |
| Not Actual Mileage, Exceeds Mechanical Limits | Guaranteed No Problem |

## ACCIDENTS AND OTHER ISSUES

No issues reported to CARFAX on the following:

| | |
|---|---|
| Total Loss | ☑ No Issues Reported |
| Structural Damage | ☑ No Issues Reported |
| Airbag Deployment | ☑ No Issues Reported |
| Odometer Rollback | ☑ No Issues Reported |
| Other Accidents / Damage | ☑ No Issues Reported |

SHOW ME THE CARFAX

Case ID: 200801110

# CARFAX® Warranty Check™

CARFAX has estimated the remaining original manufacturer warranty coverage based on information reported to us on this 2016 BUICK CASCADA PREMIUM (W04WT3N50GG104958). Please confirm remaining factory warranty and extended warranty options with your dealer.

| | |
|---|---|
| VIN: | W04WT3N50GG104958 |
| Estimated start date of warranty: | 11/10/2016 |
| Last CARFAX reading reported on 03/09/2020: | 34,544 miles |
| Today's Date: | May 7, 2020 |

Enter the current mileage and click 'Recalculate Warranty' to update the remaining warranty coverage.

**Enter current mileage:**

Recalculate Warranty

| | | |
|---|---|---|
| Basic | 48 months or 50,000 miles | 7 months or 15,456 miles |
| Drivetrain | 72 months or 70,000 miles | 31 months or 35,456 miles |
| Emissions | 96 months or 80,000 miles | 55 months or 45,456 miles |
| Corrosion | 72 months or unlimited mileage | 31 months or unlimited mileage |
| Transferable | No cost, unlimited owners covered | Same |
| Roadside Assistance | No data reported to CARFAX | |
| Safety belt & inflatable restraint | No data reported to CARFAX | |
| Specific Components | No data reported to CARFAX | |
| Notes: | Emissions: Manufacturer covers emissions components under basic warranty. Emissions coverage may vary by state. Refer to owners manual for specific details. Transferable: No cost, unlimited owners covered. Roadside Assistance: See notes below. Specific Components: See notes below. Maintenance: Alignment and wheel balancing are considered maintenance after 7,500 miles. Experience Buick 2/24,000 scheduled maintenance 2016-18 models receive two service visits. 2019 model year vehicles receive one maintenance visit during the first year of ownership. Notes: Includes surface corrosion, batteries, adjustments, alternate transportation, roadside assistance, tires prorated. Includes courtesy transportation, roadside assistance, transferable, no deductible. | |

➤ CARFAX Warranty Check provides an **estimate** of this vehicle's remaining warranty coverage. It does not take into account some vehicle history events such as some title brands that may void the original manufacturer warranty or ownership transfers that may decrease warranty coverage. This warranty information is only valid for vehicles manufactured for the United States. Complete warranty coverage information is available for this vehicle at the BUICK web site.

Case ID: 200801110



# CARFAX BUYBACK GUARANTEE

## CARFAX Buyback Coverage

Visit https://www.mycarfax.com/bbg to register your CARFAX Buyback Guarantee and sign up for myCARFAX

Guarantee Coverage: 05/07/2020 - 05/07/2021

CARFAX Vehicle Description: 2016 BUICK CASCADA PREMIUM

VIN: W04WT3N50GG104958

Body Style: CONVERTIBLE

Driveline: FRONT WHEEL DRIVE

Engine: 1.6L I4 F DOHC 16V

## CARFAX will buy this vehicle back if
you find that any of these severe problems were reported by a Department of Motor Vehicles and were not included in this report.



**SEVERE DAMAGE**
Salvage/Junk
Rebuilt/Reconstructed
Dismantled
Fire/Flood/Hail



**ODOMETER PROBLEMS**
Exceeds Mechanical Limits
Not Actual Mileage



**LEMON HISTORY**
Manufacturer Buyback

Visit the Buyback Guarantee registration page to register the CARFAX Buyback Guarantee and sign up for myCARFAX.

Terms and Conditions Apply
View terms and conditions for CARFAX Buyback Guarantee coverage

© 2020 CARFAX, Inc., an IHS company. All rights reserved. Patents pending. 05/07/2020 10:26:47



**2016 BUICK CASCADA PREMIUM**
VIN: W04WT3N50GG104958
CONVERTIBLE
1.6L I4 F DOHC 16V
GASOLINE
FRONT WHEEL DRIVE

 No accidents reported to CARFAX

 No damage reported to CARFAX

 2 Previous owners

 10 Service history records

 Types of owners: Personal lease, Personal



This CARFAX Report Provided by:

**Carvana, LLC**

 34,544 Last reported odometer reading

This CARFAX Vehicle History Report is based only on information supplied to CARFAX and available as of 5/7/20 at 10:26:38 AM (CDT). Other information about this vehicle, including problems, may not have been reported to CARFAX. Use this report as one important tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.



| | | |
|---|---|---|
| Year purchased | 2016 | 2020 |
| Type of owner | Personal lease | Personal |
| Estimated length of ownership | 3 yrs. 4 mo. | 1 month |
| Owned in the following states/provinces | Ohio, New York | New York |
| Estimated miles driven per year | 10,377/yr | --- |
| Last reported odometer reading | 34,544 | --- |



Salvage | Junk | Rebuilt | Fire | Flood | Hail | Lemon

Not Actual Mileage | Exceeds Mechanical Limits

 Guaranteed No Problem     Guaranteed No Problem

Guaranteed No Problem     Guaranteed No Problem

**GUARANTEED** - None of these major title problems were reported by a state Department of Motor Vehicles (DMV). If you find that any of these title problems were reported by a DMV and not included in this report, CARFAX will buy this vehicle back.

View Certificate



No total loss reported to CARFAX.

No structural damage reported to CARFAX.

 No Issues Reported     No Issues Reported

 No Issues Reported     No Issues Reported

 No Issues     No Issues

No airbag deployment reported to CARFAX.                    ☑ Reported                    ☑ Reported

**Odometer Check**
No indication of an odometer rollback.                      ☑ No Issues                    ☑ No Issues
                                                              Indicated                       Indicated

**Accident / Damage**
No accidents or damage reported to CARFAX.                  ☑ No Issues                    ☑ No Issues
                                                              Reported                        Reported

**Manufacturer Recall**
No open recalls reported to CARFAX. Check for open recalls on GM    No Recalls              No Recalls
vehicles at recalls.gm.com.                                          Reported               Reported

**Basic Warranty**
Original warranty, estimated to have 7 months or 15,456 miles remaining.    ☑ Warranty      ☑ Warranty
                                                                              Active          Active

## C A R F A X

| | | | | |
|---|---|---|---|---|
| **Owner 1**<br>Purchased:<br>2016 | | **Low mileage!** This owner drove less than the industry average of 15,000 miles per year. | | Personal Lease Vehicle<br>10,377 mi/yr |



| Date | Mileage | Source | | Comments |
|---|---|---|---|---|
| Original Equipment | | OnStar | | Vehicle equipped with OnStar |
| | | | | Get 3 free months of premium OnStar with Automatic Crash Response, Roadside Assistance and Remote Door Unlock by pressing the blue OnStar button Learn more |
| 06/06/2016 | 6 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>♥  293  Customer Favorites | | Vehicle offered for sale |
| 06/08/2016 | | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>♥  293  Customer Favorites | | Vehicle serviced<br>- Pre-delivery inspection completed |
| 10/31/2016 | 490 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>♥  293  Customer Favorites | | Vehicle sold |
| 11/02/2016 | 492 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>♥  293  Customer Favorites | | Vehicle serviced<br>- Front license plate bracket installed/replaced<br>- Vehicle washed/detailed |
| 11/10/2016 | | Ohio<br>Motor Vehicle Dept.<br>Youngstown, OH<br>Title #1501369592 | | Vehicle purchase reported<br>- Title issued or updated<br>- Registration issued or renewed<br>- First owner reported<br>- Titled or registered as personal lease vehicle<br>- Loan or lien reported |
| 04/01/2017 | 5,452 | Sweeney Buick GMC | | Vehicle serviced |

Case ID: 200801110

|  |  | Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | - Maintenance inspection completed<br>- Brakes checked<br>- Tire condition and pressure checked |
| 09/27/2017 | 11,890 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed<br>- Brakes checked<br>- Tire condition and pressure checked |
| 10/16/2017 | 12,215 | Sweeney Chevrolet<br>Youngstown, OH<br>330-758-7521<br>sweeneychevrolet.com/<br>4.2 / 5.0  95 Verified Reviews<br>332  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed |
| 01/09/2018 |  | Ohio<br>Motor Vehicle Dept.<br>Youngstown, OH<br>Title #1501369592 | Registration issued or renewed<br>- Registration updated when owner moved the vehicle to a new location |
| 12/11/2018 | 25,038 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed |
| 01/14/2019 |  | Ohio<br>Motor Vehicle Dept.<br>Youngstown, OH<br>Title #1501369592 | Registration issued or renewed |
| 05/22/2019 | 29,275 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed<br>- Oil and filter changed |
| 05/31/2019 | 29,490 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed<br>- Valve cover(s) replaced |
| 08/23/2019 | 31,288 | Sweeney Buick GMC<br>Youngstown, OH<br>330-726-2277<br>sweeneycars.com/<br>4.6 / 5.0  79 Verified Reviews<br>293  Customer Favorites | Vehicle serviced<br>- Maintenance inspection completed<br>- Oil and filter changed |
| 03/09/2020 | 34,544 | Jerome's Automotive-Ignition Services<br>Rochester, NY<br>585-482-5573 | Vehicle serviced<br>- Safety inspection performed<br>- Emissions inspection performed |
| 03/09/2020 |  | New York<br>Inspection Station | Passed safety inspection<br>- Passed emissions inspection |
| 03/11/2020 |  | New York<br>Motor Vehicle Dept.<br>Fairport, NY | Registration issued or renewed<br>- Passed safety inspection |

Case ID: 200801110

Owner 2
Purchased: 2020                                                                          Personal Vehicle

| Date | Mileage | Source | Comments |
|------|---------|--------|----------|
| 03/24/2020 | | New York Motor Vehicle Dept. Fairport, NY | Title issued or updated - New owner reported |
| 05/07/2020 | | CARFAX Car Care | Manufacturer Recommended Maintenance Schedules |



Get this vehicle's maintenance schedule,
service history and recall alerts at
carfax.com/service.

Have Questions? Please visit our Help Center at www.carfax.com



**First Owner**
When the first owner(s) obtains a title from a Department of Motor Vehicles as proof of ownership.

**New Owner Reported**
When a vehicle is sold to a new owner, the Title must be transferred to the new owner(s) at a Department of Motor Vehicles.

**Ownership History**
CARFAX defines an owner as an individual or business that possesses and uses a vehicle. Not all title transactions represent changes in ownership. To provide estimated number of owners, CARFAX proprietary technology analyzes all the events in a vehicle history. Estimated ownership is available for vehicles manufactured after 1991 and titled solely in the US including Puerto Rico. Dealers sometimes opt to take ownership of a vehicle and are required to in the following states: Maine, Massachusetts, New Jersey, Ohio, Oklahoma, Pennsylvania and South Dakota. Please consider this as you review a vehicle's estimated ownership history.

**Title Issued**
A state issues a title to provide a vehicle owner with proof of ownership. Each title has a unique number. Each title or registration record on a CARFAX report does not necessarily indicate a change in ownership. In Canada, a registration and bill of sale are used as proof of ownership.

Follow Us:   facebook.com/CARFAX    @CarfaxReports    About CARFAX

CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION. THEREFORE, NO RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR ERRORS OR OMISSIONS IN THIS REPORT. CARFAX FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CARFAX®

SYSTEMATIC RETRIEVAL OF THE CONTENT OR OTHER DATA FROM THIS SITE TO CREATE OR COMPILE, DIRECTLY OR INDIRECTLY, IN WHOLE OR IN PART, A COLLECTION, COMPILATION, DATABASE OR DIRECTORY WITHOUT THE EXPRESS WRITTEN PERMISSION OF CARFAX IS STRICTLY PROHIBITED. THE CARFAX VEHICLE HISTORY REPORT IS SUBJECT TO THE CARFAX.COM TERMS OF USE.

© 2020 CARFAX, Inc., a unit of IHS Markit. All rights reserved.
Covered by United States Patent Nos. 7,113,853; 7,778,841; 7,596,512; 8,600,823; 8,595,079; 8,606,648; 7,505,838.
5/7/20 10:26:38 AM (CDT)

Case ID: 200801110

# EXHIBIT 5

## SHERIDAN AUTO BODY

100 BALTIMORE AVE., ELSMERE, DE 19805
Phone: (302) 998-2911
FAX: (302) 998-9969

| | |
|---|---|
| Workfile ID: | ccfae554 |
| PartsShare: | 5QRSts |
| Federal ID: | 51-0109253 |

### Preliminary Estimate

### Customer: BURDEN, RODGER

Written By: Vince Holt

| | | | | | |
|---|---|---|---|---|---|
| Insured: | BURDEN, RODGER | Policy #: | | Claim #: | |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**
BURDEN, RODGER
328 IVES AVE
CARNEYS PT, NJ 08069

**Inspection Location:**
SHERIDAN AUTO BODY
100 BALTIMORE AVE.
ELSMERE, DE 19805
Repair Facility
(302) 998-2911 Business

**Insurance Company:**

### VEHICLE

2016 BUIC Cascada Premium 2D CNVT 4-1.6L Turbocharged Gasoline Direct Injection PEWTER

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VIN: | W04WT3N58GG104938 | Interior Color: | | Mileage In: | | Vehicle Out: | |
| License: | | Exterior Color: | PEWTER | Mileage Out: | | | |
| State: | | Production Date: | | Condition: | | Job #: | |

| **TRANSMISSION** | Intermittent Wipers | FM Radio | **ROOF** |
|---|---|---|---|
| Automatic Transmission | Tilt Wheel | Stereo | Power Convertible Roof |
| Overdrive | Cruise Control | Search/Seek | **SEATS** |
| **POWER** | Rear Defogger | CD Player | Bucket Seats |
| Power Steering | Keyless Entry | Auxiliary Audio Connection | Leather Seats |
| Power Brakes | Alarm | Satellite Radio | Heated Seats |
| Power Windows | Message Center | **SAFETY** | Rear Heated Seats |
| Power Locks | Steering Wheel Touch Controls | Drivers Side Air Bag | **WHEELS** |
| Power Mirrors | Telescopic Wheel | Passenger Air Bag | 20" Or Larger Wheels |
| Heated Mirrors | Climate Control | Anti-Lock Brakes (4) | **PAINT** |
| Power Driver Seat | Navigation System | 4 Wheel Disc Brakes | Clear Coat Paint |
| Power Passenger Seat | Remote Starter | Front Side Impact Air Bags | **OTHER** |
| **DECOR** | Backup Camera | Communications System | Fog Lamps |
| Dual Mirrors | Parking Sensors | Hands Free Device | Traction Control |
| **CONVENIENCE** | **RADIO** | Roll Bar | Stability Control |
| Air Conditioning | AM Radio | Lane Departure Warning | Xenon Headlamps |

Case ID: 200801110

## Preliminary Estimate

**Customer: BURDEN, RODGER**

2016 BUIC Cascada Premium 2D CNVT 4 1.6L Turbocharged Gasoline Direct Injection PEWTER

### ESTIMATE TOTALS

| Category | Basis | | Rate | Cost $ |
|----------|-------|---|------|--------|
| Parts | | | | 35.00 |
| Body Labor | 11.6 hrs | @ | $ 50.00 /hr | 580.00 |
| Paint Labor | 9.8 hrs | @ | $ 50.00 /hr | 490.00 |
| Paint Supplies | 9.8 hrs | @ | $ 30.00 /hr | 294.00 |
| Subtotal | | | | 1,399.00 |
| **Grand Total** | | | | **1,399.00** |
| Deductible | | | | 0.00 |
| **CUSTOMER PAY** | | | | **0.00** |
| **INSURANCE PAY** | | | | **1,399.00** |

**MyPriceLink Estimate ID / Quote ID:**

69274893224510259 ?

ANY PERSON WHO KNOWINGLY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE OR MISLEADING INFORMATION IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

Case ID: 200801110

# EXHIBIT 6

Case ID: 200801110



Case ID: 200801110

# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW J. OKULSKI,<br><br>                              Plaintiff,<br><br>       v.<br><br>CARVANA, LLC, PAUL BREAUX, AND<br>KATELYN GREGORY,<br><br>                              Defendants. | Civil Action<br>No. 2:20-cv-01328-WB |

### DECLARATION OF PAUL BREAUX
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

I, PAUL BREAUX, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am the General Counsel and Vice President of Carvana, LLC, and Carvana Group, LLC. I also serve as the Vice President, General Counsel, and Secretary of Carvana Co.

2.      I make this declaration based on my personal knowledge, formed from my personal experience and my position as an officer and employee of Carvana.

3.      Carvana Co. is a publicly traded company. Carvana, LLC has over 8,000 employees. In 2019, Carvana, LLC sold over 175,000 used vehicles throughout the United States.

4.      Since 2015, I have permanently resided in Arizona. From 2015 to early 2019, I resided in Scottsdale, Arizona. In early 2019, prior to the transaction at issue in this litigation, I purchased a home in Phoenix, Arizona, where I permanently reside. I understand this lawsuit was initially commenced in February 2020 and that Plaintiff Andrew J. Okulski ("Plaintiff") alleges he purchased a 2017 Nissan Versa (the "Vehicle") in July 2019 from Carvana, LLC.

5.      During all times since (and including) the filing of this lawsuit and the purchase of the Vehicle, I have lived in my primary residence located in Arizona with my family.

6.    I have never lived in Pennsylvania or owned real estate in Pennsylvania.

7.    I was not served with this lawsuit in Pennsylvania and to my knowledge no service was attempted on me in Pennsylvania in this case.

8.    During all times since the initial filing of this suit, I have worked out of Carvana, LLC's headquarters, located at 1930 W. Rio Salado Pkwy., Tempe, Arizona 85281.

9.    I am not involved in the execution of day-to-day vehicle sales activities or sales communications, customer interactions, or the inspection of individual vehicles.

10.    I have never communicated with Plaintiff through any medium (oral, written, email, text message, etc.) in connection with the purchase of the Vehicle from Carvana, LLC, nor have I ever communicated with him in any way for any other reason.

11.    I was not involved with the purchase, inspection, repair, sale, advertising, or promotion of this specific Vehicle to Plaintiff or anyone else.

12.    I was not involved in the transport or pickup arrangement for the Vehicle.

13.    As of July 16, 2019, I had no personal knowledge that this Vehicle would be shipped to Pennsylvania for pickup by Plaintiff.

14.    As a company, Carvana, LLC requires certain transaction documentation to be signed by Carvana, LLC only through duly authorized agents.  With respect to purchase and financing agreements for the sale of vehicles, those authorized agents are typically senior-level personnel, including myself (for example, with respect to Carvana, LLC's sale of the Vehicle), who execute such documents solely on behalf of Carvana, LLC.

15.    I did not intend to, and did not in fact, execute any purchase agreement, financing agreement, odometer statement, or any other document related to Carvana, LLC's sale of the Vehicle in a personal capacity. Instead, in accordance with Carvana, LLC's regular business

2

practices, these documents were executed only on behalf of Carvana, LLC, the seller of the Vehicle to Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Phoenix, Arizona on this 22nd day of May, 2020.

PAUL BREAUX

3

Case ID: 200801110

# EXHIBIT 8

Case ID: 200801110

DocuSign Envelope ID: ADA9EDF8-3984-40FD-B9A0-E14C72A658AF

THIS IS A COPY

# ODOMETER DISCLOSURE STATEMENT
## (Retail)

DATE OF STATEMENT  05/09/2020

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership.
Failure to complete or providing a false statement may result in fines and/or imprisonment.

I,  CARVANA, LLC.                                      state that the odometer now reads

34650                (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of
the vehicle described below, unless one of the following statements is checked:

☐ (1)  I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.

☐ (2)  I hereby certify that the odometer reading is NOT the actual mileage.
WARNING – ODOMETER DISCREPANCY

YEAR  2016          MAKE  Buick          MODEL  Cascada

BODY TYPE  Convertible     VEHICLE ID NO.  W04WT3N50GG104958

TRANSFEROR'S NAME  CARVANA, LLC.
(PRINTED NAME)

TRANSFEROR'S ADDRESS  63 PIERCE RD
(STREET)

WINDER                              GA          30680-7280
(CITY)                              (STATE)     (ZIP)

TRANSFEROR'S NAME  X
(SIGNATURE) Paul Breaux

TRANSFEREE'S NAME  Roger M Burden
(PRINTED NAME)

TRANSFEREE'S ADDRESS  328 Ives Ave
(STREET)

Carneys Point                       NJ          08069
(CITY)                              (STATE)     (ZIP)

TRANSFEREE'S NAME  X  Roger Burden
(SIGNATURE) Roger M Burden