**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW J. OKULSKI** | : | |
| **Plaintiff** | : | |
| **v.** | : | **NO. 20-CV-01328-WB** |
| | : | |
| **CARVANA, LLC; PAUL BREAUX;** | : | |
| **KATELYN GREGORY** | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR
RECONSIDERATION OF THIS HONORABLE COURT'S AUGUST 24, 2020 ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

## I.      INTRODUCTION

Plaintiff seeks reconsideration and reversal of the Court's dismissal of his Fraud (Count I), Pennsylvania Professions and Occupations Act (Count II), and Unfair Trade Practices and Consumer Protection Law (Count VI) claims as against Defendants CARVANA and KATELYNN GREGORY.  Plaintiff does not seek reconsideration as to the dismissal of PAUL BREAUX.

Plaintiff files this Motion for Reconsideration pursuant to FRCP 54(b) which empowers a court to revise interlocutory Orders disposing of less than all claims and parties.[1]  The standard is broader than for other motions for reconsideration.  Reconsideration is permitted where there is new evidence – not just newly discovered evidence --, a change in applicable law, or to prevent manifest injustice.  Carlson v. Bos. Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).[2]

---

[1] Plaintiff still avers that FRCP 59(e), 60(b)(1),(2),(3)&(6) and 60(d)(3) apply and provide the Court with authority to reconsider and revise the Order at issue. The defendants recently produced additional materials (at 8:22 PM, Friday, 03/26/2021), including the original hardcopy purchase agreement signed in-person at CARVANA PHILA and audio files of telephone calls in which CARVANA agents admit that selling a vehicle that has been in an accident and/or is having the operational problems the subject vehicle was obviously outside Carvana standards (Exhibit E). Defendants are still withholding the audio recording and/or any other record of its admitted call with Conicelli Nissan regarding Conicelli Nissan's findings and conclusions.
[2] The previously submitted newly discovered evidence should have been considered by the Court, because it was newly discovered despite reasonable diligence given the evidence and claims and

The Court's decision on Defendants' Motion to Dismiss (MTD) was based on its application of the Gist-of-the-Action Doctrine (GOTAD) and Economic Loss Doctrine (ELD) and to its factual finding that the subject transaction took place entirely online and/or the sale took place in Georgia and was by a Georgia dealer.  As the Court is aware, there has been a dramatic change in the applicable law: the Third Circuit's recent decision in <u>Earl v. NVR, Inc.</u>, (3rd Cir. 2021) (Mar. 5, 2021) and the Pennsylvania Supreme Court's recent decision in <u>Gregg v. Ameriprise</u>, 29 WAP 2019 (February 17, 2021).  Additionally, Defendant CARVANA recently belatedly produced records (at 8:22 pm on Friday, 03/26/2021) that confirm the purchase contracts were signed at CARVANA PHILA in hardcopy form (Exhibit E).

In <u>Earl v. NVR</u>, the Third Circuit endorsed expressly the Pennsylvania Superior Court's analysis and holding in <u>Knight v. Springfield Hyundai</u>, 81 A.3d 940 (Pa.Super. 2012) and held the GOTAD and ELD do not apply to almost exactly the same type of pre-sale marketing and advertising-based claims as instantly.  Applying the GOTAD or ELD to dismiss the claims instantly cannot be reconciled with Third Circuit's decision in <u>Earl</u> and/or its express endorsement of the claims in <u>Knight</u>.

---

law (Exhibit A-B).  In <u>Frederick S. Wyle Professional Corp. v. Texaco, Inc.</u>, 764 F.2d 604, 609 (9th Cir. 1985), the Court stated: "to support a motion for reconsideration of a grant of summary judgment based upon newly discovered evidence, the movant is '*obliged* to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing.'"  Therefore, "newly discovered" applies to evidence that was unavailable or unknown to movant and that movant could not with *reasonable* diligence have discovered it.  Given the applicable standard mandated the acceptance of all Plaintiff's well-pleaded facts, including the transaction took place and was consummated at CARVANA PHILA, reasonable diligence would not have included combing PACER for CARVANA cases and filings from across the country to located consumers to swear and attest that they too purchased their vehicles and consummated their deals in-person – to disprove CARVANA's unsupported allegation that the subject transaction did not take place in-person and that all CARVANA deals take place entirely online.

In <u>Gregg v Ameriprise</u>, the Pennsylvania Supreme Court significantly simplified and broadened and the UTPCPL's application.[3]  The Supreme Court held the UTPCPL is a strict liability statute.  It is not necessary to show any form of intent: "… deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding and upon which the consumer relies to his or her financial detriment <u>does not depend upon the actor's state of mind</u>." <u>Id</u>. at 17-18. "Liberally construing the CPL as we must, the amended language places the duty of compliance with the CPL on commercial vendors, without regard to their intent. <u>Id</u>. at 17-18.  CARVANA's actions and standard operating procedures evidently create a likelihood of confusion and misunderstanding as to the representations about the vehicles, which representations are part of the bargain and can be relied upon, and who is selling and delivering the vehicle.

Beyond the change in the law, in holding the subject transaction was online and/or the seller was a Georgia dealer, and with all respect, the Court still has not taken full cognizance of Plaintiff's specific allegations that the vehicle was presented to him, that he signed all the purchase-related records, and the vehicle was delivered to him <u>*at CARVANA PHILA*</u> (Second Amended Complaint, ¶¶ 36-38, 43).[4]  These specific allegations were not in any manner *conclusory* or *conclusory labels* – and are/were rock-solid truths.   The transaction, therefore, was consummated

---

[3] The Pennsylvania Supreme Court has held repeatedly that the UTPCPL is to be given the broadest application possible. The reach of the UTPCPL extends to conduct occurring outside Pennsylvania. <u>Danganan v. Guardian Prot. Servs.</u>, 179 A.3d 9, (Pa 2018) (non-Pennsylvania resident could bring suit under UTPCPL based on transactions that occurred out-of-state, based in the plain language of the Law and the fact that it was to be given a liberal interpretation to effectuate its remedial purpose).

[4] No matter what Defendants may say, the term "CARVANA PHILA" is not a pleading fiction or any other type of fiction. As well-pleaded in Plaintiff's Second Amended Complaint, and as is beyond any reasonable dispute, CARVANA PHILA is a Pennsylvania licensed dealer with a licensed established place of business located at 1043 N. Front Street, Philadelphia, PA 1123 (Second Amended Complaint, ¶¶ 4, 6).

at CARVANA PHILA.[5]  Whether the sale took place in part online, or was in GA or by a GA dealer should not have disposed of the PAOA and other licensing -- and PA regulatory and statutory -- violations.   There is no dispute that CARVANA PHILA and GREGORY were licensed.  There can be no reasonable dispute that they were involved (engaged in "<u>any activity related to</u> the buying, <u>selling</u>, or exchanging of a vehicle for a commission, compensation or other consideration") in the sale of the subject vehicle.[6]  As licensees, they were prohibited from selling a vehicle, or being involved in the sale of a vehicle, owned by or for other dealers except under limited circumstances that do not apply instantly – e.g., consignment sale -- and with specific attendant procedures that were not satisfied – e.g., consignment agreement.

The Court, essentially, made a choice of law decision, and repeatedly and expressly based its decision.  The Court expressly based this finding by accepting as true Defendant CARVANA's alleged (but actually non-existent) statements on its Website and in its Annual Reports: "…[t]he transaction took place on line, because Carvana's website and Annual Reports explain, it is an online-only business and consumers 'execut[e] their purchases' digitally… Okulski has offered no authority compelling extension of the BVA's reach to an online transaction that stipulated the Vehicle was being sold by a Georgia dealer. Accordingly, the BVA claim will be dismissed with

---

[5] Respectfully, because the transaction was consummated at CARVANA PHILA, there can be no reasonable argument that the transaction did not involve CARVANA PHILA and/or that all of Pennsylvania's consumer protection and public-safety regulations and statutes applied, including the Board of Vehicles Act/Professions and Occupations Act and Motor Vehicle Sales Finance Act.
[6] In denying plaintiff's first Motion for Reconsideration, the Court only addressed the licensing provision prohibiting the sale of a vehicle in PA.  The Court did not address the provisions related to engaging in any activity related to the sale of the subject vehicle.  There is no dispute that CARVANA PHILA and GREGORY were licensed and therefore subject to the licensing provisions, which governed all their vehicle sales-related activities in PA.  The sales activies in question took place in PA.  A salesperson is defined broadly without regarding to where or by whom the vehicle is being sold.  "'Salesperson. Any person who, for a commission, compensation or other consideration, is employed by a dealer to buy, sell or exchange one or more new or used vehicles." 63 P.S. § 818.102.

prejudice." (Court Opinion, 14).[7]  In addition to the hardcopy signed agreements newly produced

by CARVANA, Plaintiff produced sworn statements from two additional CARVANA customers

that they also signed the purchase agreements at CARVANA dealerships in Pennsylvania (Exhibits

A-B).[8]

Respectfully, if the Court were to maintain its analysis and holding, then it would vitiate

all of the consumer protection and public-safety regulations and statutes, because all any dealer –

not just CARVANA – would have to do to escape the application of these consumer protection

regulations and statutes is to insert false facts within the contracts such as that the sale took place

out of state or misidentifying the seller as an out-of-state dealer – regardless of the actual, factual

circumstances.[9]

## II.    STATEMENT OF FACTS

This matter arises out of the Defendants' fraudulent advertising, presentation, sale, and

financing of a motor vehicle.   Defendants misrepresented the subject vehicle's history and

condition.   Defendants misrepresented the vehicle had been carefully inspected, CARVANA

---

[7] At a minimum, Plaintiff should be permitted to amend to add additional facts that the subject transaction did take place at CARVANA PHILA, and that a significant percentage of CARVANA sales are consummated not online but at the dealer.   Phillips v. County of Allegheny, 515 F.3d 224, 228 (3rd. Cir. 2008).

[8] If the Court retains any doubt, then it may Order a hearing.   We can call the witnesses, including Defendant GREGORY, and have them testify on the record where the subject and other – probably many, many other – transactions are consummated.   Steinfeld v. EmPG Intern, LLC, 97 F.Supp. 606, 611-612 (E.D.Pa. 2015).

[9] Parties cannot stipulate to the law – at least not in a way that binds any Court or relieves any Court of the responsibility of determining the truly applicable law.   Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 290 (1917) (Court is not bound by stipulations of counsel).   "The duty of this Court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. . . . No stipulation of parties or counsel, whether, in the case before the court or in any other case, can enlarge the power, or affect the duty, of the Court in this regard."   California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314 (1893).

CERTIFIED, and had never been in any accidents or damaged (Second Amended Complaint [SAC] ¶¶ 14-16, 25-27, 32-34, 53-61, 124-125).  In truth, and Defendants own inspection and service records show, the vehicle was in one or more pre-sale accidents or damage events.  The vehicle, in fact, was severely damaged, including frame/structurally damaged and sold in an unfit, unmerchantable, and unsafe condition (SAC, ¶¶ 62-96).  The contract (RISC) does not contain any language regarding inspections, CARVANA CERTIFIED or accidents or damage (SAC, ¶¶ 54-55).  In belatedly produced audio files of telephone calls between plaintiff and defendant CARVANA, defendants' agents admitted that "Obviously, if the vehicle was in an accident then it would be outside our standards" and that a vehicle with only 9,000 miles should not be having the problems it was having (Exhibit E).

In granting Defendants' MTD, the Court decided, essentially, that PA regulatory law does not apply.  The Court based its MTD decision explicitly on its belief that CARVANA was an online only dealer and that the subject transaction took place online.  The first sentence in the Court's opinion makes this point: "When a used Nissan car Plaintiff Andrew Okulski purchased from an online car dealer, Carvana, LLC ("Carvana")…" (Court Opinion, 1) (emphasis added). The Court stated explicitly that it was relying on CARVANA's alleged (but actually non-existent) statements in its Website and Annual Reports in support of its belief that the subject transaction and all CARVANA transactions take place online: "…[t]he transaction took place on line, because Carvana's website and Annual Reports explain, it is an online-only business and consumers 'execut[e] their purchases' digitally." (Court Opinion, 2 FN 2); (Court Opinion, 14).  The Court stated explicitly that it was accepting as true statements, which it termed stipulations, within the contracts that the seller was CARVANA GA and the Title was transferred in GA (Court Opinion, 2-3).  The records Defendant CARVANA recently produced confirm the purchase contracts were

signed at CARVANA PHILA in hardcopy form and the Title was signed in hardcopy form and transferred at CARVANA PHILA (Exhibit E).  Lastly, the initials "AO" CARVANA used were produced in hardcopy form on July 16, 2019 at CARVANA PHILA (Exhibit E).  This was all witnessed by Plaintiff's fiancé, Brittany O'Brien, and she has executed a sworn statement as well (Exhibit C).

Beyond the belatedly produced records, Plaintiff produced sworn statements from two additional customers swearing to the fact that they also signed and consummated the purchase agreements at CARVANA dealerships in Pennsylvania (Exhibits A-B).  Plaintiff's counsel also represents another consumer in a similar case involving the purchase of a misrepresented damaged and defective vehicle from CARVANA PHILA: Roger Burden v. CARVANA (PCCP 2008-1110) (Exhibit A).  Importantly, the RISC in Burden identifies CARVANA PHILA as the seller-creditor (Exhibit 3 attached to Exhibit A hereto).  Importantly, however, the BO in Burden identifies the seller as CARVANA GA (Exhibit 2 attached to Exhibit A hereto).  This shows that the false stipulations are boundless and not to be accepted.

## III.   LEGAL ARGUMENT

### A.   AUTHORITY AND STANDARD FOR RECONSIDERATION

FRCP 54(b) authorizes this Court to reconsider and revise the subject Order, because it disposed of fewer than all claims and parties.[10]  FRCP 54(b) states: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  FRCP 54(b).

---

[10] Plaintiff still avers that FRCP 59(e), 60(b)(1),(2),(3)&(6) and 60(d)(3) apply and provide the Court with authority to reconsider and revise the Order at issue.

> Where a district court issues an interlocutory order such as one for partial summary judgment 'that adjudicates fewer than all of the claims,' the court retains discretion to revise such order 'at any time before the entry of a judgment adjudicating all the claims.' Fed. R. Civ. P. 54(b). Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light. *See Am. Canoe Ass'n , 326 F.3d at 514–15 ; Cobell v. Jewell , 802 F.3d 12, 25–26 (D.C. Cir. 2015).*

Carlson v. Bos. Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).[11]

The standard applied is the same as with *the law of the case* doctrine.

> …a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.' *Canoe Ass'n , 326 F.3d at 515 (quoting Sejman , 845 F.2d at 69).* This standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.' *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)* (providing 'three grounds for amending an earlier [final] judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice').

Carlson v. Bos. Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

## B.    AUTHORITY AND STANDARD ON MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Fed. Rule 12(b)(6), a court must "accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  Courts are not supposed to weigh the evidence, but rather are supposed to determine whether, under any reasonable reading of the complaint, the Plaintiff may

---

[11] A district court, under Rule 54(b), has the inherent power to reconsider interlocutory orders "when it is consonant with justice to do so."  United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973).

8

be entitled to relief.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3rd. Cir. 2008).  A complaint may not be dismissed merely because it appears unlikely that the Plaintiff can prove those facts or will ultimately prevail on the merits.  <u>Id.</u> at 231.

In ignoring or failing to take full cognizance of the significance of Plaintiff's specific allegations that the contract signing and consummation took place at CARVANA PHILA, and not online, the Court violated the applicable standard of review.[12]   The Website and Annual reports statements do not contradict Plaintiff's sworn allegations.   At most, there is a potential inconsistency.  They certainly do not, in any manner, render Plaintiff's specific, sworn and well-pleaded allegations implausible – especially without making an improper credibility determination.

The sales activities at CARVANA PHILA have significant legal implications.   In accordance with the applicable standard, the so-called stipulations would have to be rejected for what they are: false and untrue, <u>OR themselves defendant admissions of other violations</u>.  The Court disposed of Plaintiff's specific, sworn and true allegations as merely conclusory: "While Plaintiff describes these stipulations and the online-only business model as a sham, the Court need not accept such conclusory labels. *See Iqbal*, 556 U.S. at 678 (providing that "mere conclusory

---

[12] Movants cannot argue that the contract was consummated elsewhere or at another time without admitting still more statutory violations.  The RISC states that it is governed by PA law.  **A financed motor vehicle transaction is consummated at the time the consumer signs the RISC**. 12 Pa.C.S.A. § 6221(a)&(b).  The seller must have already signed at the time the buyer signs.  12 Pa.C.S.A. §(b)(1)&(2) ("The installment seller shall furnish an exact copy of the installment sale contract without charge to the buyer at the time the buyer signs the contract; The buyer's copy of the contract shall contain the signature of the seller identical to the signature on the original contract").  These prescriptions and proscriptions are non-waivable.  12 Pa.C.S.A. § 6234.  So, CARVANA cannot submit any further misrepresentation that the contract permits BREAUX to sign later or that the contract is not accepted until he signs.  The law is the law.  And the law is the law in this circumstance precisely to eradicate these sort of sharp practices.  These remedial and public-safety related laws must be liberally construed and applied to effectuate their purposes. Allowing CARVANA to flout dozens of them is not consistent with the law.

statements . . . do not suffice"); *see also Brightwell v. Lehman*, 2006 WL 931702, at *3 (W.D. Pa. April 10, 2006) (noting that 'the court need not accept allegations in the complaint as true where they are contradicted by the documents attached to the complaint')."

However, neither <u>Iqbal</u> nor <u>Brightwell</u> permit a Court to ignore well-pleaded <u>facts</u>, choose to believe Defendants unsworn allegations, or to give Defendant and not Plaintiff the benefit of all reasonable inferences.  <u>Brightwell</u> only stands for the proposition that the Court need not accept "contradicted" allegations.  <u>Id.</u> at *3.  <u>Iqbal</u> only stands for the proposition that the court need not accept "contradicted" or conclusory allegations.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The language Defendants quote from CARVANA's Website does not say that CARVANA sales only take place online.  At most, it says that CARVANA, like most franchise dealers, has the capacity to do transactions entirely online.

### C.   THE GIST-OF-THE-ACTION DOCTRINE DOES NOT APPLY

In <u>Earl v. NVR</u>, the Third Circuit endorsed expressly the Pennsylvania Superior Court's analysis and holding in <u>Springfield v. Springfield Hyundai</u>, 81 A.3d 940 (Pa.Super. 2012) and held the GOTAD and ELD do not apply to almost exactly the same type of pre-sale marketing and advertising-based claims as instantly.  In <u>Earl</u>, the claims were based on "NVR's marketing, describing the home as one which would contain 'qu ality architecture, timeless design, and beautiful finishes.'"  <u>Id</u>.  Unlike instantly, the promises were entirely prospective in that they pertained to the future construction of the home – and the promise to remedy any deficiencies.  <u>Id</u>. Earl alleged that the failure to fulfill the promises was knowing and willful.  <u>Id</u>.  Earl only pursued claims under the UTPCPL and for breach of the implied warranty of habitability.  <u>Id</u>.

The Court found that the GOTAD did not apply.  The Court endorsed the Pennsylvania Superior Court's analysis in <u>Knight v. Springfield</u>.  Importantly, the <u>Knight</u> case involved the same

allegation that the representations were omitted from the contract as a part of the fraud (Exhibit D, ¶ 139).  Nevertheless, obviously, as instantly, it was understood that the marketing and promotion statements can be the basis of a viable fraud and misleading and deceptive UTPCPL claims.

> If read expansively, the doctrine could plausibly be understood to bar the instant action, given the existence of a contract between Earl and NVR involving the purchase and construction of the Home. Earl's complaint is not primarily premised upon the terms of the contract, however, but on the marketing and representations that induced her to enter into the contract in the first instance, as well as statements made to her by agents of NVR during the homebuilding process. *Knight* is once again illustrative for our purposes, as the Court encountered a similar set of facts and determined the gist of the action doctrine did not apply:
>
>> Although she purchased the vehicle pursuant to the contract, the alleged representations by Appellees occurred prior the signing of any contract. Furthermore, the above false advertisements, statements, and assurances are rendered unlawful by sections 201–2(4)(v), (vii), (ix), (xi), and (xxi) of the UTPCPL. These are not masked claims for breach of contract; the gist of the action here is in tort, and the contract is collateral to the matters alleged. As such, the gist of the action doctrine did not warrant the dismissal of Knight's UTPCPL claims.
>
> *Knight*, 81 A.3d at 951 (internal citations omitted).
>
> As did the plaintiff in *Knight*, Earl alleges NVR made false representations to her about the Home prior to the formation of the contract (in terms of how the Home was "marketed"), in further discussions held during the contract period, and while the Home was in the process of being constructed. Earl also alleges that NVR made false representations after the contract period, once she moved into the house. These alleged actions are collateral to the terms of the contract itself.

Earl v. NVR, supra.

Defrauders simply cannot commit fraud in the execution by omitting terms 1) to make a sale, and 2) to set up a defense.  Just like in Earl v. NVR and Knight v. Sprinfield Hyundai, CARVANA sells its products (vehicles) by representing their good history and quality. CARVANA admits as much in its Annual Reports: "Confidence in quality. Auto consumers want to have comfort that the vehicle they purchase is mechanically sound and will not require costly repairs or replacement in the near term" (2019 Annual Report, 5); We believe this technology,

coupled with our certification process and seven-day return policy, generates the confidence and trust in our platform needed to buy a car online" (2019 Annual Report, 7).  CARVANA admits that these representations of good history, condition and quality are intended to be and are relied upon and become part of the bargain.  Part of the fraud is omitting these literal terms from the Contract.

"[T]the mere existence of a contract between two parties does not" turn a claim "for injury or loss suffered as the result of actions of the other party in performing the contract" into "one for breach of contract."  Bruno v. Erie Ins. Co., 106 A.3d 48, 69 (Pa. 2014).  Instead, "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Id. at 68 (footnote omitted).  If "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the Case law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." Id. (citations omitted).  As the Court in Earl v. NVR recognized, the duties arise out of the licensing and other public-safety related regulations and statutes which exist independent to the contract and apply to all individuals.

The Bruno Court, in fact, refused to dismiss the insured's Bad Faith Insurance Claim under the GOTAD, because "the duty at issue in that claim is the statutorily created obligation of Erie to have acted in good faith with respect to payment of the Brunos' first party claims for property damage under their insurance policy.  Bruno, 106 A.3d at 71 n18; Reitmeyer; Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 885 (2007) (holding that action against insurer for bad faith conduct pursuant to 42 Pa.C.S.A. § 8371 is for breach of a duty "imposed by law as a matter of social policy, rather than one imposed by mutual consensus"; thus, action is in tort).

Respectfully, the Court's analysis and holding did not address and did not take full cognizance of two very important aspects of the transaction and the claims. One, the application of the licensing and other regulations and statutes and the duties at issue arising thereunder. Two, Plaintiff made out a claim for <u>fraud in the execution</u> of the contract – i.e., part of the fraud alleged is Defendants' knowing and systematic selling of the vehicle as having undergone a careful 150-point inspection, CARVANA CERTIFIED, and having clean Carfax – all of which became part of the bargain – but omitting these terms from the contract (Second Amended Complaint, ¶¶ 14, 15, 25-29, 54, 55). **<u>Indeed, perhaps the only thing undisputed in this case is that the subject misrepresentations are NOT contained in the literal text of the RISC – are not included in the physical contract.</u>** Their omission was part and parcel of the fraud – i.e., fraud in the execution. <u>Toy v. Metro. Life Ins. Co.</u>, 863 A.2d 186, 206 (Pa.Super. 2004).

As mentioned above, because under any interpretation of the facts, Defendants were involved (engaged) in the advertising, presentation, and sale of the subject sale, then all the PA licensing and other regulations apply.[13] Therefore, the GOTAD and ELD cannot bar Plaintiff's

---

[13] All the duties related to misrepresenting the subject vehicle arise independently under the AITP and UTPCPL *during the advertising and presentation of the vehicle* and thus before any contract and without any ultimate contract: a) Making any substantial misrepresentation of material facts (63 P.S. § 818.318(2)); b) "Make any false promise of a character likely to influence, persuade or induce the sale of a vehicle" (63 P.S. § 818.318(3)); c) "Having engaged in false, deceptive or misleading advertising of vehicles" (63 P.S. § 818.318(6); d) "Having committed any act or engaged in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee under this act" (63 P.S. § 818.318(7)); e) "Representing that goods or services have sponsorship, approval, characteristics, … uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. §201-2(4)(v); f) "Representing that goods or services are of a particular standard, quality or grade.. if they are of another." 73 P.S. §201-2(4)(vii); g) "Advertising goods or services with intent not to sell them as advertised." 73 P.S. §201-2(4)(ix); h) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi); i) vehicles offered for retail sale are presumed to be represented to be roadworthy and any condition that renders the vehicle unfit, including, specifically frame/structural damage, must be disclosed (37 Pa.C. § 301.2(5)); j) dealers and

13

claims.  The duties at issue do not arise strictly and solely under the contract and they are not inextricably interwoven.  They do not depend upon the contract at all – as the literal language of the RISC at issue in this matter brings into high relief.  Plaintiff need not prevail on his breach of contract claim to prevail on any of his non-contract claims.  There are unresolved questions of material fact, including whether and what terms, and, in particular, any terms related to

---

salespersons must have a reasonable basis for any statement about the vehicle – whether or not it is contained in the RISC (37 Pa.C. § 301.2(6)).

There are many additional regulatory and statutory duties that were violated that apply specifically to the contract and what must be included and how it must be included: 1) accurately identify seller name and address (12 Pa.C.S.A. § 6211b)(1)&(2); 301.2(1)&(2), 301.4(a)(2)(i)); 2) may not operate from any other address unless all records are kept at one address and the seller submits a separate application for each location (12 Pa.C.S.A. § 6219(a)&(d)); 3) licensed dealer must sign all RISCs (12 Pa.C.S.A. § 6221(a)(3)); 4) must correctly set forth the names and street addresses of all parties to the contract (12 Pa.C.S.A. § 6222(1)).  Defendant CARVANA must also be licensed pursuant to MVSF as both an installment seller and sales finance company.  12 Pa.C.S.A. § 6211(a).  A licensee: must identify the name under and address at which it will be doing business, 12 Pa.C.S.A. § 6212(b)(1)&(2); may not operate from any other address unless all records are kept at one address and the seller submits a separate application for each location, 12 Pa.C.S.A. § 6219(a)&(d); must sign all RISCs, 12 Pa.C.S.A. § 6221(a)(3); and must correctly set forth the names and street addresses of all parties to the contract, 12 Pa.C.S.A. § 6222(1).  These requirements are non-waivable.  12 Pa.C.S.A. § 6234

There are many duties at issue that exist completely independent of and are not expressed in any way in the contract: a) unlawful for unlicensed salesperson to engage in "any activity related to the buying, selling, or exchanging of a vehicle for a commission, compensation or other consideration") (63 P.S. § 818.303(a)(1); 63 P.S. § 818.303(c); b) "Having committed any act or engaged in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee under this act") (63 P.S. § 818.318(7)); d) (14) "Engaging in the business for which such licensee is licensed without at all times maintaining an established place of business as required" (63 P.S. § 818.318(14)); e) "Employing any person as a salesperson who has not been licensed as required"( 63 P.S. § 818.318(15)); f) "Willfully failing to display a license"( 63 P.S. § 818.318(18))), g) "Willfully having made any false statement as to a material matter in any oath or affidavit which is required by this act" (63 P.S. § 818.318(21)); h) "Violating any provision of this act" (63 P.S. § 818.318(26)); i) "Any violation of the regulations promulgated by the board") (63 P.S. § 818.318(28); j)  "Being a dealer which willfully permits any person who is not a licensed salesperson or owner of the dealership to use the dealer's dealer identification number issued by the Department of Transportation, vehicle dealer's license number or dealer's vehicle registration plates for the purpose of buying, selling or exchanging vehicles" (63 P.S. § 818.318(33)); k) operating "at any other location than authorized by its license" (63 P.S. § 818.318(34)).

certification or accidents or damage, are part of the contract.  Defendants have disputed this. **Defendants' entire justifiable reliance argument is based on the proposition that the misrepresentations about the 150-point inspection, CARVANA CERTIFICATION, denial of any accidents or damage, and/or the false clean CARFAX are NOT part of the contract.**

Though the <u>Earl</u> Court only addressed specifically UTPCPL claims there is no reasonable basis to restrict its analysis and holding to UTPCPL claims.  In fact, the <u>Earl</u> Court focused on the "facts" at issue not the claim.  If the facts or claims are not inextricably intertwined with the contract for UTPCPL purpose, then they cannot be inextricably intertwined for any other purpose.

Respectfully, the Court misapprehended the claims as akin to a failure to perform or fulfill contractual performance.  Defendants were not to construct the vehicle according to any specifications – like in <u>Earl</u>.  Defendants made misrepresentations about the product being advertised and marketed for sale.  In any event, the <u>Earl</u> Court obviously found even the promised performance distinction no longer material.

### D.  THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY.

The <u>Earl v. NVR</u> Court also held the ELD does apply and does not bar claims such as instantly.  The <u>Earl v. NVR</u> Court expressly overruled the <u>Werwinski v. Ford Motor Company</u>, 286 F.3d 661 (3rd Cir. 2002) decision on which this Court relied: "<u>Werwinski</u> no longer accurately reflects the state of Pennsylvania law with regard to the economic loss doctrine and the UTPCPL…" <u>Earl v. NVR</u>, <u>supra</u>.  Again, the Court expressly endorsed the Pennsylvania Superior Court's analysis and holding in the <u>Knight v. Springfield Hyundai</u> case involving the same types of misrepresentations and claims.  <u>Earl v. NVR</u>, <u>supra</u>.

> In *Knight*, a consumer alleged that she suffered losses due to misrepresentations made by a car dealership. Among other things, the dealership misstated the mileage of the car she was to buy and hid the fact that it had been in prior accidents. *Knight, 81 A.3d at 951*. The Superior Court rejected the dealership's attempt to invoke the

15

economic loss doctrine in shielding itself from liability under the UTPCPL, noting that the Pennsylvania Supreme Court had described the economic loss doctrine as providing that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Id. at 952 (quoting Excavation Techs., Inc., 985 A.2d at 841 n.3)* (emphasis in original). The Superior Court went on to distinguish the plaintiff's claims from those barred by the economic loss doctrine as (1) "statutory claims brought pursuant to the UTPCPL" that (2) did "not sound in negligence," and accordingly determined that the doctrine did not apply. *Knight, 81 A.3d at 952*. Thus, contra our holding in *Werwinski*, the decision in *Knight* acknowledges the significance of the distinction between statutory claims and tort claims, as well as claims grounded in negligence as opposed to intentional misrepresentation.

The Pennsylvania Superior Court was even more explicit in *Dixon*. There, unlike in *Knight*, the plaintiff brought a UTPCPL claim against an insurance company sounding in negligent misrepresentation for mistakes made in the course of issuing insurance policy billing statements. *Dixon, 146 A.3d at 788-89*. The Court read *Knight* to hold that the economic loss doctrine does not apply to UTPCPL claims in any context, no matter whether sounding in negligence or intentional fraud. *Id. at 790*.

Earl v. NVR, supra.

Importantly, plaintiff's fraud claims are also based on regulatory and statutory violations – i.e., the violation of regulatory and statutory duties. As argued above, because the duties at issue arise independently of the contract – under the licensing and other regulations and statutes, the ELD simply does not apply. Again, the Knight case involved the same allegation that the representations were omitted from the contract as a part of the fraud (Exhibit D, ¶ 139).

The Earl v. NVR decision is in accord with the Pennsylvania Supreme Court's decision in Dittman v. UPMC, 196 A.3d 1036, 1057 (Pa. 2017) case. The Dittman Court laid it all out. The Dittman Court examined the ELD generally and fit its holding within a general holding regarding the ELD. There is nothing in the Dittman opinion to support the conclusion that it intended to limit its holding either to negligence claims or independent common law duties.

Applying the GOTAD or ELD to dismiss the claims instantly cannot be reconciled with Third Circuit's endorsement of the claims in Knight.

### E.        PLAINTIFF'S COMPLAINT SETS FORTH A VALID PAOA CLAIM

In granting Defendants' MTD, the Court decided, essentially, that PA law applies so far as the GOTAD and ELD are concerned, but not so far as the remedial consumer protection regulations and statutes.  Not only is this incongruous, it runs counter to the law in this Circuit and to PA law as well.  A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  Hammersmith v. TIG Insurance, 480 F.3d 220, 226-27 (3d Cir. 2007); Kaneff v. Delaware Title Loans, 587 F.3d 616, 621 (3d Cir. 2009) ("It is now black letter law that "in an action based on diversity of citizenship jurisdiction, we must apply the substantive law of the state in which the District Court sat, including its choice of law rules.").  Pennsylvania applies the more flexible, "interest/contacts" methodology to contract choice-of law questions.  Hammersmith v. TIG Insurance, 480 F.3d 220, 226-27 (3d Cir. 2007).  If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law."  Hammersmith v. TIG Insurance, 480 F.3d 220, 231 (3d Cir. 2007).

Pennsylvania courts have adopted section 187 of the Restatement, Second, Conflict of Laws which provides that:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . .

Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994).

Pennsylvania choice of contract law principles "generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  Gay v.

Creditinform, 511 F.3d 369, 389 (3d Cir. 2007) (citing Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir.1994)). The Court held that contractual choice of law provisions will be enforced: "unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . ." Gay v. Creditinform, 511 F.3d 369, 389 (3d Cir. 2007) (emphasis added); Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 56 (3d Cir. 1994) ("Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests"); see also Kaneff v. Delaware Title Loans, 587 F.3d 616, 621 (3d Cir. 2009).

The Kaneff case is particularly instructive. The Court in Kaneff noted that Delaware bore a substantial relationship to the transaction since the contract was signed in Delaware and had a DE choice of law provision. Kaneff v. Delaware Title Loans, 587 F.3d 616, 622 (3d Cir. 2009) (Inasmuch as Delaware is where the contract was signed, we conclude that there is a substantial relationship between Delaware and the transaction). Nevertheless, the Third Circuit found that PA's fundamental policies overruled these factors. The Court found that PA's "antipathy to high interest rates ... represents such a fundamental policy that we must apply Pennsylvania law." Kaneff v. Delaware Title Loans, 587 F.3d 616, 624 (3d Cir. 2009). PA has indicated a similar antipathy to deceptive practices by any dealer or person INVOLVED or engaged in any activity in PA of advertising, presenting, or selling a vehicle – meaning involved in any activity in PA related to selling a motor vehicle. Other factors considered in applying PA choice of law in Kaneff mirror the instant matter as well: "it is where [plaintiff] lives.... Pennsylvania is also the location of the collateral, [plaintiff's] car, and Delaware Title Loan was required to enter Pennsylvania in order to

repossess the car.  Finally, ... Pennsylvania will have to live with the aftermath of the transaction."
Kaneff v. Delaware Title Loans, 587 F.3d 616, 623 (3d Cir. 2009).

As argued more fully above, contrary to the Court's decision, the subject purchase and transaction was consummated at CARVANA PHILA.  This has now been confirmed by defendants' belated production of the hardcopy signed purchase agreement and other documents (Exhibit E).  Therefore, CARVANA PHILA was the seller **OR WAS ENGAGED IN AN ACTIVITY RELATED TO THE SALE OF THE SUBJECT VEHICLE**, and, therefore, CARVANA violated a myriad of remedial, consumer protection regulatory and statutory regulations, including those requiring that PA dealers: operate out of a separate, licensed established place of business, must only sell vehicles they own, all employees involved in any way in any sale must be licensed, contracts must correctly identify the seller, never use any fraudulent or deceptive sale practices (Second Amended Complaint, ¶¶ 164, 167-169, 190).[14]  These duties exist independent of the contract.[15]  Indeed, these duties regulate the contract.  Remedial regulations and statutes must be liberally construed to effectuate their purpose.  School Dist. Of Phila. V. WCAB (Hilton), 117 A.3d 232, 242 (Pa. 2015).

---

[14] Defendant CARVANA must also be licensed pursuant to MVSF as an installment seller.  12 Pa.C.S.A. § 6211(a).  A licensee: must identify the name under and address at which it will be doing business, 12 Pa.C.S.A. § 6212(b)(1)&(2); may not operate from any other address unless all records are kept at one address and the seller submits a separate application for each location, 12 Pa.C.S.A. § 6219(a)&(d); must sign all RISCs, 12 Pa.C.S.A. § 6221(a)(3); and must correctly set forth the names and street addresses of all parties to the contract, 12 Pa.C.S.A. § 6222(1).  These requirements are non-waivable.  12 Pa.C.S.A. § 6234.

[15] Dealers clearly cannot contract themselves out of reach of the licensing regime simply by preparing contracts misidentifying the seller.  That would be absurd.  "It is well settled that a contract which violates a statute is illegal and will not be enforced."  Dippel v. Brunozzi, 365 Pa. 264, 74 A.2d 112 (1950); Pennsylvania R. Co. v. Cameron, 280 Pa. 458, 124 A. 638 (1924); Gramby, et al. v. Cobb, 422 A.2d 889 (Pa.Super. 1980). "[W]henever it appears that the enforcement of a contract would violate public policy, the court should dismiss the proceedings of its own motion." American Ass'n of Meat Processors v. Casualty Reciprocal Exch., 527 Pa. 59, 67, 588 A.2d 491, 495 (1991) (emphasis in original).

As argued above, all the duties related to misrepresenting and selling the subject vehicle arise independently under the AITP, UTPCPL and PAOA: a) Making any substantial misrepresentation of material facts (63 P.S. § 818.318(2)); b) making "any false promise of a character likely to influence, persuade or induce the sale of a vehicle" (63 P.S. § 818.318(3)); c) "Having engaged in false, deceptive or misleading advertising of vehicles" (63 P.S. § 818.318(6); d) "Having committed any act or engaged in conduct in connection with the sale of vehicles which clearly demonstrates unprofessional conduct or incompetency to operate as a licensee under this act" (63 P.S. § 818.318(7)); e) "Representing that goods or services have sponsorship, approval, characteristics, … uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. §201-2(4)(v); f) "Representing that goods or services are of a particular standard, quality or grade.. if they are of another." 73 P.S. §201-2(4)(vii); g) "Advertising goods or services with intent not to sell them as advertised." 73 P.S. §201-2(4)(ix); h) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xxi); i) vehicles offered for retail sale are presumed to be represented to be roadworthy and any condition that renders the vehicle unfit, including, specifically frame/structural damage, must be disclosed (37 Pa.C. § 301.2(5)); j) dealers and salespersons must have a reasonable basis for any statement about the vehicle – whether or not it is contained in the RISC (37 Pa.C. § 301.2(6)); k)  operating "from any other address unless all records are kept at one address and the seller submits a separate application for each location," 12 Pa.C.S.A. § 6219(a)&(d); l) "Being a dealer which willfully permits any person who is not a licensed salesperson or owner of the dealership to use the dealer's dealer identification number issued by the Department of Transportation, vehicle dealer's license number or dealer's vehicle registration plates for the purpose of buying, selling or exchanging

vehicles" (63 P.S. § 818.318(33)); m) operating "at any other location than authorized by its license" (63 P.S. § 818.318(34)).

Instantly, Plaintiff specifically alleged that the subject transaction was signed/consummated in Pennsylvania – and now has produced indisputable evidence that CARVANA regularly conducts vehicle sales and/or engages in activities in PA related to vehicle sales, including advertising and presenting vehicle and having customers sign/consummate the deals in PA (Exhibits A-C, E).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff requests respectfully that this Honorable Court grant his Motion for Reconsideration and enter an Order in the proposed form filed herewith.

BENSLEY LAW OFFICES, LLC


 */s/William C. Bensley*
William C. Bensley, Esquire
*Attorneys for Plaintiff*

21

## <u>CERTIFICATION OF SERVICE</u>

I, WILLIAM C. BENSLEY, counsel for Plaintiffs, hereby certify that I filed the foregoing electronically and that all parties have been served via ECF email. I caused to have served a copy of the foregoing by email and/or via the Court's digital service system upon all counsel of record.

Dated: April 1, 2021                    <u>/s/ WILLIAM C. BENSLEY</u>

22