**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW J. OKULSKI** | : | |
| **Plaintiff** | : | |
| v. | : | **NO. 20-CV-01328-WB** |
| | : | |
| **CARVANA, LLC; PAUL BREAUX;** | : | |
| **KATELYN GREGORY** | : | |
| **Defendants** | : | |

**PLAINTIFF'S PRE-TRIAL STATEMENT**

Plaintiff, Mr. Andrew J. Okulski, by and through his attorney, William C. Bensley, Esquire, hereby submits the following Pre-Trial Statement.

**I.     INTRODUCTION**

Plaintiff commenced this civil action in the Court of Common Pleas of Philadelphia County, Pennsylvania by filing a Complaint on or about February 13, 2020.  On or about March 6, 2020, Defendants filed a Notice of Removal, removing this action to United States District Court based on alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff's Second Amended Complaint contains claims for Fraud (Count I), violation of the Pennsylvania Professions and Occupations Act (Board of Vehicles Act) (PAOA) (Count II), Negligence (Count III), Negligent Misrepresentation (Count IV), Breach of Contract (Count V), and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count VI).

By Order dated August 24, 2020, the Court granted Defendants' Motion to Dismiss and dismissed all but defendant CARVANA and all but Plaintiff's Breach of Contract claims (Count V).  The Court based its decision to dismiss the claims on an application of the Gist-of-the-Action Doctrine (GOTAD) and Economic Loss Doctrine (ELD).  Plaintiff's Breach of Contract Count incorporates all the facts and allegations set forth elsewhere in the Complaint.

1

Plaintiff recently filed a Motion for Reconsideration of the Court's dismissal of defendant KATELYN GREGORY and his Fraud, PAOA, and UTPCPL claims and Counts based on the Third Circuit's recent decision in <u>Earl v. NVR, Inc.</u>, (3rd Cir. 2021) (Mar. 5, 2021) and the Pennsylvania Supreme Court's recent decision <u>Gregg v. Ameriprise</u>, 29 WAP 2019 (February 17, 2021).

## II.   <u>CONCISE STATEMENT OF THE CASE</u>

Plaintiff purchased the subject 2017 Nissan Versa on July 16, 2019 when he signed the hardcopy purchase agreement at the CARVANA dealership with a Pennsylvania licensed place of business located at 1043 N. Front Street, Philadelphia, PA  19123 (CARVANA PHILA).  Plaintiff paid his down payment by debit card at this location at the time of sale.  The vehicle was presented to him at this location and GREGORY made her representations about the vehicle and provided the Carfax report to Plaintiff at this location.  Plaintiff's fiancé, Brittany O'Brien, was a witness to the aforementioned sales activities.

Defendant CARVANA represented the subject vehicle – and all of its vehicles -- to have passed a careful 150-point inspection by inspection specialists, be CARVANA CERTIFIED, and in perfect condition, so Plaintiff could be 100% confident in the vehicle's quality and safety. CARVANA represented the vehicle had never been in any accidents or damaged.  CARVANA gave Plaintiff a CARVANA CERTIFIED inspection checklist or report that stated falsely that the vehicle had been carefully inspected and never in any accidents or damaged.  CARVANA salesperson KATELYN GREGORY gave plaintiff a clean Carfax report that stated falsely that the vehicle had never been in any accidents or damaged.  GREGORY represented that the only thing wrong with the vehicle was a small scratch under the right-side headlight.

Defendant's own inspection and service records show the vehicle was in one or more pre-

sale accidents or damage events and severely damaged, including frame/structurally damaged and sold in an unfit, unmerchantable, and unsafe condition.   In belatedly produced audio files of telephone calls between plaintiff and defendant CARVANA, defendant's agents admitted that "Obviously, if the vehicle was in an accident then it would be outside our standards" and that a vehicle with only 9,000 miles should not be having the problems it was having.

The vehicle has malfunctioned repeatedly, including engine misfires, shorted engine coil, shuttering on acceleration, and shaking at 40+ MPH.   During servicing for these issues undisclosed pre-sale front-end damage was discovered: misaligned panels, damaged wiring, loose and replaced parts, and missing bolts and fasteners.   On or about October 18, 2019, Plaintiff received a voicemail from Jack DePre, Service Manager, Conicelli Nissan:

> *Hi Mr. Okulski, this Jack over from Conicelli Nissan. I'm just returning your phone call. I know we're playing a bit of phone tag. I know Mark actually spoke to you on the phone and gave you some information, but I'm going to give you some more information. I've been out driving your car. I did get it to buck for me, so it was bucking and the check engine light came back on. It came back on for a multiple cylinder misfire... I know you said this car is new. You just bought it, but I believe, from what the guys are telling me, you bought the car from Carvana, and I've been looking at the car with the tech and the whole front end of this car has been repaired. The fenders have been off. The headlights of been out. The bumpers been off. The radiator supports been out. And some other things have been off of the car. So, I don't know if this was a relation to the past accident and it's something wiring related, maybe pinched wire somewhere, but I am we have to get to the root cause of it. I mean if it's something that is covered under warranty, it be warranty. If it looks after we do some more investigation, and it looks like it's related to the accident -- I know you weren't in the accident with the car -- you're up going to have to take the car back to Carvana and arbitrate it with them, because if it's not warranty. It's basically their problem... thank you.*

Conicelli Nissan repeated these observations and conclusions in a submission to the Pennsylvania Attorney General.

Defendant CARVANA continued to deny post-sale that that the vehicle was involved in any pre-sale accidents or damaged pre-sale, that there were any physical indications the vehicle had been in any pre-sale accidents or damaged, and denied that Conicelli Nissan found any such

indications or reached any such conclusions.  Soon after Conicelli Nissan Service Manager, Jack DePre, left the aforementioned voicemail, Defendant CARVANA's agent and/or employee Ryan Waltrip represented to Plaintiff that he had spoken to Conicelli Nissan and that there were no indications of accidents or damage, and refused Plaintiff's demand to return the vehicle and cancel the deal.  Defendant CARVANA's agent and/or employee Dylan stated that "Carvana does not sell vehicle's that have been in reported accidents, or have apparent fire, flood or frame damage."

Despite indications that the front-end had been disassembled and parts replaced, Defendant CARVANA PHILA and CARVANA GA misrepresented pre-sale and continued to deny post-sale that there were indications that the vehicle had been in a pre-sale accident or damaged.  Defendant CARVANA PHILA and/or CARVANA GA finally did admit that "At this time, we do have indication that this vehicle was reconditioned at some point prior to [Plaintiff] receiving it…."

Subsequent to Defendant CARVANA's agents, Dylan's and Ryan's, denials of any indications of accidents or damage, Conicelli Service Manager, Jack DePre, confirmed to Plaintiff that the vehicle was "absolutely" damaged in an accident and "100% damaged in an accident" and told Plaintiff that he needed to take it back to CARVANA.  Conicelli Nissan Service Manager, Jack DePre, indicated that the manufacturer warranty would not cover the remaining issues with the vehicle.

The vehicle continues to shudder and vibrate, and the hood and bumper continue to be misaligned and loose.  There have been no post-sale accidents or damage.  The subject vehicle was sold in a defective and damaged condition, including but not limited to frame and structurally damaged condition.

The vehicle exhibits numerous classic, tell-tale signs of damage, improper and incomplete repairs, and still existing damage, including but not limited to paint defects, tape lines, panel gap misalignment, tool marks, bolt halos, missing bolts and fasteners, missing parts, color mismatch, bent parts, and replacement part labels, which would have been evident to anyone with experience in the automotive industry.  The front bumper, hood, fenders and headlamps were removed pre-sale.  The hood and left front fender and front bumper cover were refinished pre-sale.  The right front fender was replaced pre-sale.  The front headlamps were replaced pre-sale.

Anyone experienced in the industry performing an industry standard walk-around appraisal, much less an industry standard full pre-sale inspection, even much less the advertised CARVANA CERTIFIED inspection, could not have missed the tell-tale signs that the subject vehicle was in an accident, was severely damaged and improperly and/or incompletely repaired, and was sold in a damaged, defective, unfit and unmerchantable condition.  As a licensed, trained and experienced motor vehicle salesperson, it is not possible that Defendant GREGORY could have noticed or been aware of the aforementioned scratch, but unaware of all of the other tell-tale signs.

As a result of the misrepresented history and condition of the vehicle and the documented and ongoing problems, the vehicle has been unavailable to plaintiff for 10-15 days.  If the vehicle had, and if Plaintiff had known that Defendants were not licensed or were violating the licensing statutes and regulations, or that the vehicle had been in an accident or had been damaged, had frame or structural damaged, or that any charges or fees were unlawful, false or inaccurate, or that any paperwork was completed unlawfully, or that the Defendants had misrepresented

anything, or the true total cost of the purchase, or that the Defendants would not honor their agreements, then Plaintiff would have not purchased the vehicle.

The subject RISC is a standardized form contract purchased or licensed by Defendant from Bankers System TM VMP® Wolters Kluwer Financial Services © 2015. The subject RISC was created for use in Pennsylvania by Pennsylvania licensed dealers for the retail installment sale of motor vehicles by Pennsylvania dealers in Pennsylvania. The subject RISC states that it is governed by Pennsylvania law. The subject RISC is a four-page document, which incorporates, as it must under the law, the Buyers Guide, which was never adhered or posted to the vehicle and therefore is missing and/or non-existent as a matter of law.

The RISC does not contain any language regarding CARVANA CERTIFIED or accidents or damage. The Carfax report and the CARVANA CERTIFIED representations are part of the bargain, part of the meeting of the minds, and are either considered part of the RISC or were omitted fraudulently and/or due to a scrivener's error. Defendant deny that the Carfax and CARVANA CERTIFIED representations are part of the bargain, party of the meeting of the minds, and/or should be or are considered a part of the RISC, and deny that they were omitted fraudulently and/or due to scrivener's error.

The RISC identifies the cash price of the vehicle as $12,900, and the government taxes charged as $1,123.92 (Itemization lines 1a and 1b). This reflects an 8.7% tax rate. The RISC also says that the Total Cash price is $14,222.92, which it states is the sum of the figures $12,900.00 plus $1,123.92 (Itemization lines 1a-1). However, $12,900 plus $1,123.92 equals $14,023.92. Therefore, defendant "packed" (longtime industry term for packing things illicitly into contracts) $199.00 in unearned profits into the deal. The lawful sales tax rate for the sale of

a motor vehicle in Philadelphia, PA is 8%.  The lawful sales tax or Title Ad Valorem Tax

(TAVT) in George is 6%.  Defendant marked up, charged, and collected excess sales taxes.

## III.   <u>EXPERT CV AND OPINIONS</u>

Plaintiff's expert, Bob Salmon, literally grew up in the business.  His family owned a

body shop.  He has been buying, appraising, repairing, and selling vehicles his entire adult life.

His expertise and opinions have been accepted by Courts and insurance companies for decades.

(Exhibit 1).

Mr. Salmon inspected and photographed the subject vehicle and reviewed all available

records related the vehicle's history, condition, and value.  Mr. Salmon has issued the following

opinions:

1. The vehicle exhibits numerous classic, tell-tale signs of damage, improper and incomplete repairs, and still existing damage, including but not limited to paint defects, tape lines, panel gap misalignment, tool marks, bolt halos, missing bolts and fasteners, missing parts, color mismatch, bent parts, and replacement part labels, which would have been evident to anyone with experience in the automotive industry.

2. The front bumper, hood, fenders and headlamps were removed pre-sale.

3. The hood and left front fender and front bumper cover were refinished pre-sale.

4. The right front fender was replaced pre-sale.

5. The front headlamps were replaced pre-sale.

6. The front bumper, hood and fender panels are misaligned.

7. Panel gaps are supposed to be parallel, equal side-to-side and flush.

8. The misaligned panels and bolt halos are classic, tell-tale signs of parts repositioning and underlying frame/structural damage and distortion.

9. It is generally accepted in the industry that visible panel or panel gap misalignment is presumptively significantly outside factory specifications.

10. The subject vehicle was sold in a defective and damaged condition, including but not limited to frame and structurally damaged condition.

11. The subject vehicle was involved in one or more pre-sale accidents and sustained damage to the front-end.  The subject vehicle appears to have sustained a right offset impact, meaning the energy of the collision was concentrated.  In this instance, concentrated on the right front.

12.    Anyone experienced in the industry performing an industry standard walk-around appraisal, much less an industry standard full pre-sale inspection, even much less the advertised CARVANA CERTIFIED inspection, could not have missed the tell-tale signs that the subject vehicle was in an accident, was severely damaged and improperly and/or incompletely repaired, and was sold in a damaged, defective, unfit and unmerchantable condition.

13.    As a licensed, trained and experienced motor vehicle salesperson, it is not possible that Defendant GREGORY could have noticed or been aware of the aforementioned scratch, but unaware of all of the other tell-tale signs.

14.    As a result of the misrepresented history and condition of the vehicle and the documented and ongoing problems, the vehicle has been unavailable to plaintiff for 10-15 days.

15.    For at least the past few decades, almost all non-truck and non-SUV passenger vehicles, like the subject vehicle, have had unitized (unibody) frames. The term unibody or unit body is short for unitized body, or alternatively unitary construction design in which the body of the vehicle, its floor plan and chassis form a single structure. Unibody frames/structures are designed and manufactured to distort in a collision. Unibody construction has what are called crush or crumple zones. These are areas primarily in the front and rear built into the unibody that are made to be more pliable to absorb the energy of a collision, and then there are parts that are made to be more rigid to deflect the energy from the occupancy area. The accepted standard tolerance in the industry for frame/structural distortion is just 3 mm – less than the thickness of three dimes or two pennies.

16.    As a result of the pre-sale accident and damage and incomplete and improper repairs the subject vehicle suffered a diminished value of $7,095.00 - $13,973.74.


IV.    **ADMINISSIONS AND STIPULATIONS**

Plaintiff proposed these stipulations and admissions to Defendant. Defendants will not agree to any of them. The parties have committed to continue to discuss stipulations and admissions to streamline as much as possible the trial of this matter.

A.    **Proposed Stipulations of Fact**

1.    Defendant CARVANA represented the vehicle to have passed a careful 150-point inspection and to be CARVANA CERTIFIED.

2.    Defendant CARVANA represented the vehicle not to have been in pre-sale accidents or damaged.

3.    GREGORY represented that the only thing wrong with the vehicle was a small scratch under the right-side headlight.

4.      GREGORY gave plaintiff a Carfax that indicated the vehicle had not been in any accidents or damaged.

5.      Plaintiff purchased the subject vehicle for personal and household use to transport he and his fiance.

6.      Plaintiff purchased the vehicle on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

7.      Plaintiff signed the Buyers Order in hardcopy form at on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

8.      Plaintiff signed the Odometer Disclosure Statement for the subject vehicle in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

9.      Plaintiff signed the Limited Power of Attorney in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

10.     Plaintiff signed the Texas Title Certificate transfer in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

11.     The ABS Pennsylvania Cover Sheet was filled-in by CARVANA in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

12.     The Georgia Reassignment of Title was filled-in by CARVANA in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

13.     Plaintiff gave and CARVANA received Plaintiff's Drivers License in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.Plaintiff's Driver's License (CARVANA 0772-0773)

14.     Plaintiff gave and CARVANA received Plaintiff's Temporary Driver's License Update in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.Plaintiff's Driver's License (CARVANA 0772-0773)

15.     Plaintiff gave and CARVANA received Plaintiff's Allstate Financial Responsibility Card in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.Plaintiff's Driver's License (CARVANA 0772-0773)

16.     The DOT T was filled-in by CARVANA in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.PA DOT (CARVANA 0774)

17.     The Application for Correction of Vehicle Record was filled-in by CARVANA in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

18.     The Certificate of Exemption Nonresident Purchase was filled-in by CARVANA in hardcopy form on July 16, 2019 at the Carvana location at 1043 N. Front Street, Philadelphia, PA  19123.

19.     Defendant CARVANA converted Plaintiff's signed initial "A.O." – signed in hardcopy form – on the Buyers Order into a digital version which it then placed on any other document containing said initials.

**B.      Proposed Stipulations on Authenticity and Admissibility of Documents**

1.      Pleadings filed in this matter.
2.      Discovery Requests and Responses
3.      Defendant CARVANA Sales-Related Records
4.      Defendant CARVANA Inspection and Service Records
5.      Defendant CARVANA's Advertising and Marketing Materials From Its Website
6.      Pennsylvania Certified Title Records
7.      Conicelli Nissan Service Records
8.      ADESA Records

**V.      WITNESSES**

Plaintiff does not want to intend to present all the listed witnesses.

**A.      Liability and Damages**

1.      Plaintiff, Andrew Okulski, 8630 Midland Avenue, Philadelphia, PA  19136

Will testify about the purchase of the subject vehicle, the subject vehicle, experience with defendants and damages.

2.      Brittany O'Brien, 8630 Midland Avenue, Philadelphia, PA  19136

Ms. O'Brien is Plaintiff's fiancé.  She was present for the purchase of the subject vehicle at CARVANA PHILA.  She will testify about the purchase of the subject vehicle, the subject vehicle, her experience with defendants, and damages.

3.      Bob Salmon, 410 Whittier Road, Langhorne, PA  19053

Mr. Salmon is Plaintiff's expert.  Mr. Salmon inspected the subject vehicle and will testify regarding its history, condition, fitness, merchantability, value and safety.  See expert report and CV produced and attached hereto as Exhibit 1.

4.      Paul Breaux, CARVANA Employee

Mr. Breaux signed the purchase agreement and other records related to the subject transaction.  BREAUX is the Vice-President and Secretary of Defendant CARVANA, LLC (CARVANA PHILA and CARVANA GA), has been the General Counsel of Carvana Co. since August 2015, and is also the Secretary, is the Vice-President of Carvana Auto Receivables 2016-1, LLC, is the General Counsel, Vice-President and Secretary of Carvana Co., Sub, LLC, is the General Counsel, Vice-President and Secretary of Carvana Group, LLC., and is the Vice-President and Secretary of Carvana Shipping & Delivery, LLC.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, and damages.

5.      Katelyn Gregory, CARVANA Employee

Ms. Gregory was the CARVANA salesperson who present plaintiff with the Carfax report and represented the vehicle have been carefully inspected, CARVANA CERTIFIED, never in any accidents or damaged.  She represented that the only defect or damage was a small scratch near one of the headlamps.  Will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

6.      Brian Ramirez, CARVANA Employee

Mr. Ramirez is identified in CARVANA's records as the technician who performed the inspection on the subject vehicle.  He will testify about the condition of subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, and damages.

7.      Carvana Phila Manager, 1043 N. Front Street, Philadelphia, PA  19123

Will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, and damages.

8.      Jack DePre, Conicelli Nissan, 1222 Ridge Pike, Conshohocken, PA 19428

Mr. DePre is Conicelli Nissan's Service Manager.  Mr. DePre inspected the subject vehicle and communicated with Plaintiff and CARVANA regarding its condition.  He will testify about the subject vehicle, including its condition and repair, his experience with defendants, and damages.

9.      Paula DiGiacomo, Conicelli Nissan, 1222 Ridge Pike, Conshohocken, PA 19428

Ms. DiGiacomo is Conicelli Nissan's Customer Relations Manager.  Ms. DiGiacomo sent a statement to the Pennsylvania Attorney General Bureau of Consumer Relations regarding the subject vehicle and transaction.  She will testify about the subject vehicle, including its condition and repair, her experience with defendants, and damages.

10.     Conicelli Techs who inspected or serviced the subject vehicle, 1222 Ridge Pike, Conshohocken, PA 19428

Will testify about the subject vehicle, including its condition and repair, his experience with defendants, and damages.

11.     Dylan Reibert, CARVANA Employee

CARVANA identified Mr. Reibert as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

12.     Ryan Waltrip, CARVANA Employee

CARVANA identified Mr. Waltrip as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

13.     Anthony DelGado, CARVANA Employee

CARVANA identified Mr. DelGado as having communicated with Plaintiff pre-sale regarding what actions were required.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

14.     Taralee Gotschall, CARVANA Employee

CARVANA identified Ms. Gotschall as having communicated with Plaintiff pre-sale regarding what actions were required.  She will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

15.     Ricardo Cabriales, CARVANA Employee

CARVANA identified Mr. Cabriales as having communicated with Plaintiff pre-sale regarding what actions were required.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

16.     Natalie Black, CARVANA Employee

CARVANA identified Ms. Black as having communicated with Plaintiff pre-sale regarding what actions were required.  She will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

17.     Rudolfo Rocha, CARVANA Employee

CARVANA identified Mr. Rocha as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

18.     Hannah Fraley, CARVANA Employee

CARVANA identified Ms. Frailey as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  She will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

19.     Teriq McKalpin, CARVANA Employee

CARVANA identified Mr. McKalpin as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

20.     Teriq McKalpin, CARVANA Employee

CARVANA identified Mr. McKalpin as having communicated with Plaintiff post-sale regarding the problems and the vehicle's history and condition.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

21.     Joel Torres

CARVANA identified Mr. Torres as having facts relevant to this matter.  He will testify about the sale(s) of the subject vehicle, the subject vehicle, CARVANA's policies and

practices related to the acquiring, inspecting, reconditioning, certifying, and selling vehicles, communications with plaintiff, communications related to the subject vehicle, and damages.

22.     CARVANA Records Custodian

As necessary to authenticate or explain any of CARVANA's records.

23.     Conicelli Nissan Records Custodian, 1222 Ridge Pike, Conshohocken, PA 19428

As necessary to authenticate or explain any of Conicelli Nissan's records.

24.     ADESA Records Custodian or Designee, 400 N. Beck Avenue, Chandler, AZ
        85226

As necessary to authenticate or explain any of ADESA's records.


**B.     Liability**

1.     Timothy Baldt, 2713 Eddington Street, Philadelphia, PA  19137

Mr. Baldt purchased a vehicle from CARVANA PHILA.  He will testify about the purchase of the vehicle and that he signed the purchase agreement in person.  See Affidavit produced.

2.     Sarah Efaw, 938 Earl Dr., Fairmont, WV 26554

Ms. Efaw purchased a vehicle from CARVANA.  She will testify about the purchase of the vehicle and that she signed the purchase agreement in person.  See Affidavit produced.

3.     Roger Burden, 328 Ives Avenue, Carneys Point, NJ  08069

Mr. Baldt purchased a vehicle from CARVANA PHILA.  He will testify about the purchase of the vehicle and that he signed the purchase agreement in person.  See Complaint produced.


Plaintiff reserves the right to identify additional witnesses as may be needed to authenticate and/or otherwise testify about and introduce documents -- if the Defendant will not stipulate to authentication or admissibility.   Plaintiff reserves the right to call any witnesses listed on

Defendant's Pre-Trial Statement.   Plaintiff reserves the right to amend this list within a reasonable period after Defendant fully complies with its discovery obligations.

## VI.   **EXHIBITS**

Plaintiff has listed the objections Defendant served on Plaintiff on April 5, 2021. Plaintiff has not yet received any position as to the following exhibits, which were identified to Defendants April 5, 2021: 65-74, 88-99.  It is anticipated that most of the legibility, incomplete and alleged failure to produce objections can and will be rendered moot.  It is believed that all the exhibits were served either as discovery responses or as exhibits attached to prior pleadings. Complete and legible copies will be distributed.  The parties anticipate continuing to meet and confer and to prepare a single set of exhibits – reserving objections.

1.   CARVANA 2017 Nissan Versa Details (CARVANA 0063-0074)
>    Objection: foundation, legibility

2.   Carfax Report Given to Plaintiff 07/16/2019 (P 0048-0050)
>    Objection: authenticity

3.   CARVANA Folder & Records Given to Plaintiff Date of Sale 07/16/19 (P 0064-0064, 0407-410)
>    Objection: alleged failure to produce, authenticity, hearsay, foundation

4.   TruMark Financial Statement 07/12/19/-07/31/19 (P 0411-0413)
>    Objection: alleged failure to produce, authenticity, hearsay, foundation

5.   Buyers Order (CARVANA 0776-0778)

6.   Odometer Disclosure Statement(CARVANA 0780)

7.   ABS Pennsylvania Cover Sheet (CARVANA 0765)
>    Objection: authenticity, hearsay, foundation

8.   Texas Title Certificate (CARVANA 0766-0767)
>    Objection: authenticity, hearsay, foundation

9.   Georgia Reassignment of Title (CARVANA 0770)

10.   Limited Power of Attorney (CARVANA 0771)

11.   Plaintiff's Driver's License (CARVANA 0772-0773)

12.   PA DOT Temporary Driver's License Update (CARVANA 0774)

> Objection: authenticity, hearsay, foundation

13. Allstate Financial Responsibility Card (CARVANA 0775)

> Objection: authenticity, hearsay, foundation

14. Application for Correction of Vehicle Record (CARVANA 0779)

15. Certificate of Exemption Nonresident Purchase (CARVANA 0781)

16. Plaintiff Photos at Carvana 07/16/2019

> Objection: authenticity, foundation

17. Plaintiff Video One at Carvana 07/16/2019

> Objection: relevance, cumulative

18. Plaintiff Video Two at Carvana 07/16/2019

> Objection: relevance, cumulative

19. CARVANA Email to Plaintiff dated 10/17/19 with attachments (CARVANA 0708-0748)

20. ADESA Bill of Sale and Condition Report (CARVANA 0045-0048)

> Objection: foundation; hearsay

21. CARVANA Mechanical Inspection (CARVANA 0055-0056)

> Objection: foundation; hearsay

22. CARVANA Multi-Point Inspection (CARVANA 0057-0058)

> Objection: foundation; heasay; parol evidence

23. CARVANA Vehicle Estimate (CARVANA 0059-0060)

> Objection: foundation; hearsay

24. CARVANA Say Hello to Carvana – A Whole New Way to Buy a Car (SAC Ex 1)

25. CARVANA EMAIL to Plaintiff Dated 08/05/19 With Owner's Manual (CARVANA Owners Manual (CARVANA 0079-0707)

> Objection: Authenticity stipulated; objection on hearsay; grounds; objection to duplicative document in two separate exhibits

26. Conicelli Service Records (P 0190-0200)

> Objection: Authenticity; foundation; hearsay; relevance, alleged failure to produce pages 26-11 and 26-15

27. Plaintiff's PA Attorney General Bureau of Consumer Protection Complaint (P 0082-0087)

> Objection: foundation; hearsay

28. Conicelli Nissan Paul DiDiacomo Letter to PA AG Dated 01/31/2019 (P 0081)

> Objection: illegible; Authenticity; foundation, hearsay

29. Plaintiff's PA Attorney General BOCP Complaint

Objection: hearsay; relevance; cumulative

30. CARVANA Account Notes (CARVANA 0001-0006)

Objection: hearsay

31. CARVANA Email to Plaintiff dated 10/26/19

Objection: alleged failure to produce; hearsay; parol evidence

32. CARVANA Email to Plaintiff dated 10/17/19 (CARVANA 0741)

Objection: duplicative; hearsay; parol evidence

33. CARVANA Email from Fuentes to Plaintiff Dated 10/30/19 (CARVANA 0742-0749)

34. CARVANA Emails to Plaintiffs (CARVANA 0750-0751)

35. CARVANA Peace of Mind Comes Certified Webprint (P 0112-0113)

Objection: authenticity; hearsay; relevance; foundation; parol evidence

36. CARVANA Browse. Buy. Breathe. Webprint (P 0100-0102)

Objection: authenticity; hearsay; relevance; foundation; parol evidence

37. CARVANA Say Hello to Carvana – A Whole New Way to Buy A Car Webprint (P 0088-0090)

Objection: authenticity; hearsay; relevance; foundation; parol evidence

38. CARVANA Article: The Carvana Odyssey: Part II – Inspection to Perfection (P 0428-0429)

Objection: authenticity; hearsay; relevance; foundation; parol evidence

39. Pennsylvania Certified Title Records (P 0072-0079)

Objection: authenticity; foundation; parol evidence

40. Expert Report and CV of Bob Salmon

Objection: authenticity; hearsay; relevance; foundation; expert qualification; alleged failure to produce; methodology

41. Salmon Photos (First Set) (P 0231-0275)

Objection: foundation; expert qualification

42. Salmon Photos (Second Set) (P 0488-0545)

Objection: foundation; expert qualification

43. NADA Classification Materials (FAQs) (P 0718-0723)

Objection: hearsay; relevance; authenticity; parol evidence

44. NADA Historical Values for 07/16/2019

Objection: alleged failure to produce; hearsay; relevance; authenticity; parol evidence

45. Plaintiff's Second Amended Complaint

Objection: relevance; includes dismissed counts; incomplete copy

46.   CARVANA Answer to Second Amended Complaint

47.   CARVANA's Initial Disclosures

48.   Plaintiff's Responses to Requests for Production

      Objection: incomplete

49.   CARVANA's Answers to Third Set of Interrogatories

50.   CARVANA's Answers to Interrogatories (05/11/2020)

51.   Paul Breaux Declaration Dated 05/22/2020

      Objection: hearsay; relevance

52.   Katelyn Gregory Declaration Dated 04/25/2020

      Objection: hearsay; relevance

53.   Plaintiff's Initial Disclosures

54.   CARVANA First Set of Interrogatories to Plaintiff (05/06/2020)

55.   Plaintiff's Answers to Interrogatories (First Set)

56.   CARVANA Second Set of Interrogatories to Plaintiff (05/12/2020)

      Objection: incomplete copy

57.   Plaintiff's Supplemental Responses to Discovery

58.   Plaintiff's Lay Witness Opinion Testimony Disclosures

59.   Brittiany O'Brien Affidavit

      Objection: relevance; hearsay; foundation; illegible; authenticity; alleged failure to produce

60.   Baldt Affidavit & Sales Records

      Objection: relevance; foundation; hearsay; authenticity; parol evidence

61.   Efaw Affidavit & Sales Records

      Objection: relevance; foundation; hearsay; authenticity; parol evidence


62.   Burden v. Carvana Complaint

      Objection: relevance; foundation; hearsay; authenticity; parol evidence; incomplete pleading

63.   CARVANA Answers to Third Set of Discover Requests

64.   Email from Anthony DelGado to Plaintiff Dated 07/13/2020 (CARVANA 0075-0076)

      Objection: hearsay; foundation

65.   CARVANA Response to PA AG BOCP Complaint (P 0170, 0178)

66.   CARVANA Webprint Peace of Mind Comes Certified

67.   CARVANA Webvideo Peace of Mind Comes Certified

68.    CARVANA Webprint Get a Real Offer in 2 Minutes

69.    CARVANA Webprint Don't Have Your License or VIN?

70.    CARVANA Webprint How it Works Selling or Trading-In

71.    CARVANA Webprint What Documentation is Required to Sell My Car to Carvana?

72.    CARVANA 2019 Annual Report

73.    CARVANA 2020 Annual Report

74.    CARVANA Video Quality Inventory

75.    MP3 Telephone Call Anthony DelGado Dated 07/13/2019
        Objection: hearsay; cumulative

76.    MP3 Telephone Call Taralee Gotschall Dated 07/13/2019
        Objection: hearsay; cumulative

77.    MP3 Telephone Call Ricardo Cabriales Dated 07/15/2019
        Objection: hearsay; cumulative

78.    MP3 Telephone Call Celine Martinez Dated 07/15/2019
        Objection: hearsay; cumulative

79.    MP3 Telephone Call Natalie Black Dated 07/15/2019
        Objection: hearsay; cumulative

80.    MP3 Telephone Call Tyrone Abah Dated 08/05/2019
        Objection: hearsay; cumulative

81.    MP3 Telephone Call Jade Knight Dated 08/26/2019
        Objection: hearsay; cumulative

82.    MP3 Telephone Call Ryan Waltrip Dated 10/17/2019
        Objection: hearsay; cumulative

83.    MP3 Telephone Call Rudolfo Rocha Dated 10/18/2019
        Objection: hearsay; cumulative

84.    MP3 Telephone Call Ryan Waltrip Dated 10/18/2019
        Objection: hearsay; cumulative

85.    MP3 Telephone Call Hannah Fraley & Teriq McKalpin Dated 10/29/2019
        Objection: hearsay; cumulative

86.    MP3 Telephone Call Teriq McKalpin Dated 10/29/2019
        Objection: hearsay; cumulative

87.    Salmon Videos

88.    Jack DePre Voicemail

89.    Mark from Conicelli Voicemail

90.     Mark from Conicelli Voicemail

91.     Ryan Waltrip Voicemail

92.     Ryan Waltrip Voicemail

93.     WCB 05/15/20 Email to Defendants Regarding Discovery

94.     Flanders 05/26/20 Email Chain Regarding Discovery

95.     WCB 05/27/20 Email Chain Regarding Discovery

96.     WCB 07/22/20 Email Chain Regarding Discovery

97.     WCB 08/01/20 Email Chain Regarding Discovery

98.     Flanders 09/09/20 Email Chain Regarding Discovery

99.     WCB 09/22/20 Email Chain Regarding Discovery

Plaintiff reserves the right to use or introduce any exhibit listed by the Defendant.

## VII.   LEGAL ISSUES

### A.     Contract and Enforceable Bargain

The representations (misrepresentations) that the vehicle was carefully inspected, CARVANA CERTIFIED and never in any accidents or damaged – and the CARVANA CERTIFIED inspection checklist/report and "clean" Carfax report – were omitted from the contract due to fraud or mistake.  These representations were an enforceable part of the bargain, and/or Defendant is estopped from denying these representations and/or denying that they were an enforceable part of the bargain.  Under Pennsylvania law, a plaintiff may prevail on an equitable promissory estoppel claim where "(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990); see also Restatement (Second) of Contracts § 90 (setting forth elements of promissory estoppel).   "Under Pennsylvania law, promissory estoppel is a doctrine used in the alternative to a breach of contract, and applies only when the standard elements of contract formation cannot be

established." <u>Caring People Alliance v. Educ. Data Sys., Inc.</u>, No. 07-1267, 2008 WL 4441994, at *11 (E.D. Pa. Sept. 29, 2008) (<u>citing</u> <u>Crouse v. Cyclops Indus.</u>, 745 A.2d 606, 610 (Pa. 2000)). Whether the omission of the representation was a unilateral or mutual mistake, the representations relate to the basis of the bargain, and materially affect the parties' performance, and Plaintiff did not prepare the contracts or bears the risk of the mistake. <u>Northwest Sav. Ass'n. v. Distler</u>, 511 A.2d 824 (1986). Irrespective of actual fraud, if the seller knows or has reason to know of the mistake, and the mistake, as well as the actual intent of the parties is clearly shown, relief may be had to the same extent as a mutual mistake. <u>Hassler v. Mummert</u>, 364 A.2d 402 (1976). <u>See</u> <u>also</u>, <u>Com., Dept. of Educ. v. Miller</u>, 78 Pa.Cmwlth. 1, 466 A.2d 791 (1983) (where a mistake made in contracting is not mutual, but unilateral, and is not due to the fault of the party not mistaken, but rather to the negligence of one who acted under the mistake, it affords no basis for relief unless the party not mistaken has good reason to know of the mistake).

### B.       Destruction of Evidence/Spoliation/Missing Evidence Instruction

Defendant CARVANA has not produced the following records: 1) all inspection and service records; 2) CARVANA CERTIFIED policies, practices and standards guidelines; 3) the audio recording of CARVANA's admitted telephone call(s) with Conicelli Nissan's agents. They do not include any records showing what work was actually done. <u>See</u>, Pa.SSJI (civ.) 5.30 (missing evidence instruction), Pa.SSJI (civ.) 5.60 (spoliation of evidence), 5.70 Pa.SSJI (civ.) 5.70 (destruction of evidence); <u>See</u> <u>also</u>, <u>Com. v. Colson</u>, 507 Pa. 440, 490 A.2d 811, 824 (1985) (evidence of flight or of change in appearance provides inference of guilt); <u>Com. v. Edwards</u>, 399 A.2d 747, 750 (Pa.Super. 1979) (misleading the police reflected a guilty state of mind).

### B.    Unlawful Fees

The Defendant also misrepresented additional financial terms.  They charged a $133.00 Documentary Fee is charged for preparing the paperwork.  Obviously, no fee may be charged for preparing the paperwork in an unlawful manner – i.e., failing to give frame damage disclosure.  The Documentary Fee became part of the amount financed and infected the entire deal.

### C.    Fear of Use

Defendants often interpose an unreasonable defense based on the use of the vehicle.  Defendants simply are not entitled to a set-off or recoupment related to vehicle use.  First, plaintiff naturally has his use of the subject vehicle since finding out about the frame/structural damage, because he is afraid and anxious using it.  Second, damages occur at the time of sale – so use is irrelevant.  Plaintiff suffered damages in getting a vehicle of less value (at the time of sale).  Plaintiff has continued to make his payments and is up-to-date.  Third, plaintiff tried to reject and return the vehicle, and cancel the RISC.  Therefore, any continued use is Defendant's fault not plaintiff's fault.  "[C]learly, to penalize the buyer for a predicament not of his own creation would be patently unjust."  McCullough v. Bill Swad Chrysler-Plymouth, Inc., 449 N.E.2d 1289, 1292; (Ohio 1983).  Fourth, coinciding with any use was the loss of enjoyment for which plaintiffs bargained.  "The value to the buyer of an automobile is substantially impaired when its nonconformities undermine the buyer's faith in the integrity and reliability of the vehicle."  Mason v. Mercedes-Benz USA, LLC, 2005 Ohio 4296, 2005 Ohio App. LEXIS 3911, **16 (2005).

### D.    Breach of Implied and Express Warranties

The subject vehicle was not fit for its intended purpose of driving lawfully and safely on the public roadways.  13 Pa.C.S.A. § 2314.  The subject vehicle was not sound and suitable or

comparable to products of like kind and quality in the trade, and thus was unmerchantable.  13 Pa.C.S.A. § 2315.  In <u>Gall v. Allegheny Cty. Health Depart.</u>, 521 Pa. 68, 555 A.2d 786 (1989), the Pennsylvania Supreme Court recognized that:

> The concept of 'merchantability' does not require that the goods be the best quality …or the best obtainable,… but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed,… that they be free from significant defects, that they perform in the way that goods of that kind should perform … and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used.

<u>Id.</u> at 75, 555 A.2d at 789-90 (citations omitted).

### D.     Set-Off /Recoupement

Defendant is not entitled to a set-off or recoupement related to the plaintiff's use of the motor vehicle.   Recoupement is essentially an equitable doctrine.   <u>Household Consumer Discount Co. v. Vespaziani</u>, 490 Pa. 209, 215, 415 A.2d 689, 694 (1980) (recoupement is a doctrine of intrinsically defensive nature founded upon an equitable reason).   Under common equitable principles, where, as here, the parties seeking recoupement have "unclean hands," as a result of their fraudulent conduct, then recoupement shall not be had.   <u>Terraciano v. Commonwealth, Dept. of Transportation</u>, 562 Pa. 60, 753 A.2d 233, 237-38 (2000) (a basic tenet of equity is that the party who seeks to invoke it, must have clean hands; "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue").

### E.     The Parol Evidence Rule (PER) does not apply.

The missing Buyers Guide, referenced within the RISC,[1] renders the RISC ambiguous and opens the door to PE.  <u>Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.</u>, 588 Pa. 470, 905

---

[1] It is indisputable and significant that the RISC is a contract of adhesion.  An adhesion contract is a "standard form contract prepared by one party, to be signed by the weaker party, (usually) a consumer, who has little choice about the terms."  <u>Id.</u> <u>citing</u> <u>Huegel v. Mifflin Construction Co.</u>, 796 A.2d 350

A.2d 462, 468 (2006) (missing exhibit creates an ambiguity that can only be resolved by the finder of fact's determination of parol evidence); <u>see also</u>, <u>Matthews v. Unisource Worldwide, Inc.</u>, 748 A.2d 219, 222 (Pa.Super. 2000).  The Buyers Guide is and will always be missing -- because the reference is to the Buyers Guide posted as required on the vehicle and there was no Buyers Guide posted on the vehicle (Exhibit A, ¶¶ 61, 224-226).  37 Pa.C. § 301.4(a)(9); <u>see also</u>, 16 CFR § 455.2; 16 CRF § 455.3.

If an agreement is ambiguous, then all the surrounding circumstances are admissible.  "If the deed is ambiguous, then all of the attending circumstances existing at the time of the execution of the instrument should be considered to aid in determining the apparent object of the parties." <u>Starling v. Lake Meade Prop. Owners Ass'n, Inc.</u>, 162 A.3d 327, 341 (Pa. 2017) <u>citing</u> <u>Stewart v. Chernicky</u>, 439 Pa. 43, 266 A.2d 259, 263 (1970).  "When parol evidence is admissible, 'it must generally have a foundation in pre-existing evidence of fraud, accident or mistake,' except when it is introduced 'not to contradict or vary, but to explain the contract, as when something is omitted ... so as to qualify the tribunal passing upon the writing to interpret it truly according to the intent of the parties.' <u>Id</u>. <u>citing</u> <u>Baltimore & Phila. Steamboat Co. v. Brown</u>, 54 Pa. 77, 81–82 (1867).

It is clear from the case law that integration clauses are neither sacrosanct nor automatically dispositive.  In any event, the "integration clause(s)" movants cite only supersede "oral agreements or understandings" and "unwritten agreements regarding this contract."[2]  The offending misrepresentations are all in writing – Website (inspection and CARVANA

---

(Pa.Super. 2002).  Our Supreme Court specifically held, "under such a contract, the parties are usually not of equal bargaining power and the weaker party must adhere to the terms of a form contract which are not negotiable." <u>Rudolph v. Pennsylvania</u>, 717 A.2d 508, 511 (Pa. 1998).

[2] Movants cannot complain about the language.  Contracts, and especially any ambiguity within a contract, will be construed against the party who prepared it.  <u>Brookbank v. Benedum-Trees Oil Co.</u>, 389 Pa. 151, 131 A.2d 103 (1957).

CERTIFIED, 100% confidence), Sales Documents Contracts (CARVANA CERTIFIED), Carfax (no accidents or damage).

The representations are not subject to the PER, because they do not vary or contradict the RISC, because the RISC does not address the vehicle's history, condition and quality – nor do RISCs typically in the course of the trade. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 437 (Pa. 2004); McGuire v. Schneider Inc., 534 A.2d 115, 117 (Pa. 1987) (only "alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superseded by that contract)." Id.

The RISC only describes the subject vehicle as "used," and provides the year, make, model and VIN. Moreover, in Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 326-27 (Pa.Super. 2015), the Court held that the PER did not bar introduction and consideration of oral misrepresentations at odds with contract buried in fine print, because a *consumer* should not be required to scrutinize a contract to confirm that it matches the sales pitch. Id.[3] At the very least, the RISC is ambiguous on the subject of the vehicle's history and condition. "Pennsylvania law, like New Jersey law, permits the use of extrinsic evidence to 'explain or clarify' an ambiguous contract term." Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F.Supp.2d 474, 488 (E.D.Pa. 2009) citing Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425, 437 (2004) (requiring both integration and "same subject matter" before PER is considered to bar prior misrepresentations).

It cannot be lost that the RISC omitted required disclosures, such as prior accidents or damage, or frame/structural damage, and necessary qualifications. Vehicles offered for retail

---

[3] To the extent that the terms were fraudulent omitted and should be considered part of the contract, the law is clear that that represents fraud in the execution (and inducement, because the terms were part of the inducement) and is actionable. Id. In Blumenstock v. Gibson, 811 A.2d 1029, 1035 (2002) the Court held that the Parol Evidence Rule did not apply to terms (disclosures) omitted as part of a fraud. Id.

sale are presumed to be represented to be roadworthy and any condition that renders the vehicle unfit, including, specifically frame/structural damage, must be disclosed.  37 Pa.C. § 301.2(5). Similarly, dealers and salesperson must have a reasonable basis for any statement about the vehicle – whether or not it is contained in the RISC.  37 Pa.C. § 301.2(6).  The licensing statute also requires disclosures.  Therefore, the RISC cannot be said, as a matter of law, to control the duties and responsibilities at issue in this matter.   Where omissions and express statutory violations are at issue, reliance is not an issue.  It may sound funny to say, but it is a fact that the "omissions" are "contained" in the RISC.   Failing and/or refusing to include a required disclosure or qualification, as required by AITP/UTPCPL are, by definition, and all logic and reason, forms of fraud in the execution.   Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 155-56 (Pa.Super. 2012) (claimant need not aver or establish reliance related to "deceptive conduct" provision of the UTPCPL); Zwiercan v. General Motors Corp., 58 Pa.D.&C.4th 251, 259 (Pa.Com.Pl. 2002) (Court held UTPCPL claim did not require reliance because defendant knew of but omitted any disclosure of defect; "a manufacturer has a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer").[4]  In any event, consumers are entitled to believe and to rely upon what sellers tell them.  Montgomery Foundry & Fittings Co. v. Hall Planetary Thread milling Machine, 127 A. 633 (Pa. 1925) (reliance may be assumed if the natural tendency is to induce buyer to purchase); Merritz v. Circelli, 64 A.2d 796 (Pa. 1949) (a buyer justifiably relies on a misrepresentation even where he might have discovered the truth upon investigation); Restatement of Torts § 540 (1938); Restatement of Torts § 538 (1938)

---

[4] This analysis mirrors the heeding presumption in products liability law – i.e., it is presumed a consumer would have heeded (relied upon) a warning if an adequate one had been given.  Coward v. Owens-Corning Fiberglas Corp., 729 A.2d 614 (Pa.Super. 1999).

(reliance is justifiable if a reasonable person would attach importance to the representation in determining his or his choice of action in the transaction in question).

If you read the cases carefully, it is clear that the PER addresses two primary concerns: proof and reliance. That is why the cases are focused so often on oral or verbal evidence – in which both the proof and reliance problems inhere. Neither of these are issues instantly, however. The subject misrepresentations are documented and admitted – careful inspection, CARVANA CERTIFICATION, Carfax report. There is no question that the misrepresentations were made. There is no question that the misrepresentations were made to be relied upon and were relied upon in fact. In its Annual Reports, Defendant admitted that it needed to make these representations and they need customers to rely upon them to be succeed in their business model.

### F.      Illegal Contracts – or Parts of Contacts -- Must Not Be Enforced

"It is well settled that a contract which violates a statute is illegal and will not be enforced." Dippel v. Brunozzi, 365 Pa. 264, 74 A.2d 112 (1950); Pennsylvania R. Co. v. Cameron, 280 Pa. 458, 124 A. 638 (1924); Gramby, et al. v. Cobb, 422 A.2d 889 (Pa.Super. 1980). Where a contract is found to be illegal "it cannot, under any circumstances, be made the basis of a cause of action… The law when appealed to will have nothing to do with it…" Dippel v. Brunozzi, 365 Pa. 264, 74 A.2d 112, 114-5 (1950). "[W]henever it appears that the enforcement of a contract would violate public policy, the court should dismiss the proceedings of its own motion." American Ass'n of Meat Processors v. Casualty Reciprocal Exch., 527 Pa. 59, 67, 588 A.2d 491, 495 (1991) (emphasis in original).

## VIII.   PROPOSED JURY POINTS FOR CHARGE

Neither Plaintiff nor Defendant were aware of any suggested jury instructions in the Third Circuit related to the contractual matters at issue.  Plaintiff is supplying copies of the Pennsylvania Suggested Civil Jury Instructions.  Attached as Exhibit 2.

## IX.   PROPOSED VERDICT SHEETS

Attached as Exhibit 3.

## X.   DAMAGES

### A.   Diminished Value                    $7,095.00 - $13,973.74

DV damages occur at the moment of consummation.  13 Pa.C.S.A. § 2714(b).

### B.   Repair Costs                    $2,123.03

Costs for repairs are estimated at $2,123.03 (See Salmon report, Exhibit 1).  13 Pa.C.S.A. § 2714(c); 13 Pa.C.S.A. § 2715.

### C.   Loss of Use and Enjoyment
### Frustration and Inconvenience        $7,000.00+ ($10/day)

The jury may award an amount sufficient to compensate the plaintiff in a reasonable measure for her trouble, vexation, and annoyance.  13 Pa.C.S.A. § 2714(c); 13 Pa.C.S.A. § 2715.

### D.   Rescission                    $25,405.53

Equitable remedy of rescission available to make a plaintiff whole in instances when the breach alleged is material and involves allegations of fraud.  See, Keenheel v. Com., 565 A.2d 1147, 1151 (Pa. 1989) ("[w]hen equitable rescission is sought as a remedy for breach of contract, it must generally be shown that the remedy at law is inadequate." (citing Casey v. Phila. Auto Sales Co., 236 A.2d 800 (Pa. 1968))); Stafford Invs., LLC v. Vito, No. 04- 9 Case 3:12-cv-02012-JMM Document 8 Filed 04/23/13 Page 9 of 15 3182, 2009 WL 1362513, at *10 (E.D. Pa.

May 14, 2009) (finding that rescission is an appropriate remedy for a breach of contract when the plaintiff is able to establish fraud in the inducement); Cabot v. Jamie Record Co., No. CIV. A. 96-4672, 1999 WL 236737, at *6 (E.D. Pa. April 19, 1999) (finding that rescission is an appropriate remedy for a breach of contract when the "'party has suffered a breach of such fundamental and material nature that it affects the very essence of the contract and serves to defeat the object of the parties.'" (quoting Castle v. Cohne, 676 F. Supp. 620, 627 (E.D. Pa. 1987))).

### E.    Disgorgement/Restitution

"Unjust enrichment" is essentially an equitable doctrine.  Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa.Super. 1995).  The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such . . . circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Id. (quoting Wolf v. Wolf, 356 Pa.Super. 365, 51).

## XI.    ANTICIPATED TRIAL TIME

It is anticipated Plaintiff's case-in-chief will take 1.5 – 2.5 days.  It is anticipated the entire trial will take 3 – 4 days.

Respectfully submitted,

**BENSLEY LAW OFFICES, LLC**

**By:     /s/William C. Bensley**
      **WILLIAM C. BENSLEY**
      **Attorney for Plaintiff**

## **CERTIFICATION OF SERVICE**

I, WILLIAM C. BENSLEY, counsel for Plaintiffs, hereby certify that I filed the foregoing electronically and that all parties have been served via ECF email. I caused to have served a copy of the foregoing by email and/or via the Court's digital service system upon all counsel of record.


Dated: April 5, 2021                    /s/ WILLIAM C. BENSLEY