**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW J. OKULSKI** | : | |
| **Plaintiff** | : | |
| **v.** | : | **NO. 20-CV-01328-WB** |
| | : | |
| **CARVANA, LLC; PAUL BREAUX;** | : | |
| **KATELYN GREGORY** | : | |
| **Defendants** | : | |

## <u>DECLARATION OF WILLIAM C. BENSLEY</u>

I, WILLIAM C. BENSLEY, an attorney duly admitted to practice law before this Court and the Courts of the Commonwealth of Pennsylvania, affirm the truth of the following under the penalty of perjury:

1.      I am the attorney for the Plaintiff in this matter, Mr. Andrew J. Okulski.  As such, I am familiar with the facts and circumstances of this action based upon my handling of this matter.

2.      I submit this Declaration in support of Plaintiff's Second Motion for Reconsideration and in response the Declaration of Craig Flanders, Esquire.

3.      Mr. Flanders claims that the newly produced "wet-signature" (documents signed with a pen in hardcopy form) contract and other records were obtained from the DMV.  That is not true.

4.      The wet-signature contract, in particular, was generated by Defendant at the time of sale and signed by Plaintiff with a pen in hardcopy form at the time of sale at CARVANA PHILA.

5.      Defendant was required to give a copy of the wet-signed contract to Plaintiff at the time of sale.

6. Defendant was required to produce a copy of the wet-signature contract in discovery.

7. Defendant averred in its Initial Disclosures: "Defendants have in their possession the contract documents and other internal documents and communications generated in connection with the sale of Plaintiff's Vehicle" (Defendants' Initial Disclosures, Dated April 21, 2020, signed by Michael A. Iannuci, Esquire).

8. By cover letter dated May 11, 2020, Defendant produced responses to Plaintiff's Requests for Production and stated in response to RFP 9 ("All records related to the subject vehicle's purchase, appraisal, inspection, service, certification, advertising, sale and/or financing"): "Subject to and without waiver of these specific objections and the General Objections above, Defendants will produce relevant, non-privileged documents that are in Defendants' possession, custody, and control that are responsive to this Request."

9. By email dated May 12, 2020, Defendant produced their records without indicating that any transaction-specific documents were held back.

10. The wet-signature contract was not submitted to and was not obtainable from PennDot and was not part of the PennDot Title records.

11. Contracts are not submitted typically to State DMVs.

12. The wet-signature contract was NOT procured from the Pennsylvania DMV prior to Plaintiff's filing of this motion and was NOT equally available to Plaintiff at the time of the numerous pleadings in this matter.

13. Mr. Flanders also misses the significance of obtaining admitted wet-signature Title and Registration-related documents directly from defendants under the admission they were executed at CARVANA PHILA at the time of sale.

14.     In light of Defendant's former misrepresentation that all transaction-related documents were signed digitally online, obtaining the same documents from the GA DMV is by no means equatable.

15.     No document obtained from any source other than from Defendant would reveal the truth of the offline, wet-signature consummation at CARVANA PHILA.

16.     Neither Defendant nor counsel has offered any explanation, much less a reasonable explanation why these records were not previously produced – especially in light of the pointed ongoing dispute specifically related thereto.

17.     While I do not ordinarily respond to every sling and arrow in litigation, and have not in this matter, I must respond to Mr. Flanders's gratuitous, incomplete, and misleading statements about Plaintiff's discovery responses and document and exhibit production.

18.      During the parties' Meet and Confer in connection with the parties' Pre-Trial Statements and exhibits production, Defendant's co-counsel, Sam Ventresca, stated expressly that Defendant had received Plaintiff's records production "everything through Bates 0723." Mr. Flanders was on the call and participated in the Meet and Confer.

19.     It was therefore a great surprise when Defendant alleged that it had not received Plaintiff's Production Bates 0276-0414.

20.     I immediately resent Plaintiff's Production Bates 0276-0414.

21.     In the interest of completeness, while I believe Plaintiff's Production Bates 0276-0414 was served in the normal course during discovery, I have not been able to document that fact as of this time.  I am still hopeful that I will be able to do so.

22.     I typically serve such large documents and have done so in this matter utilizing transferbigfiles.com.

23. There were periods last year when transferbigfiles.com was not providing email confirmation of delivery, receipt, and/or download.

24. I believe the documents were served during one of these periods.

25. At no time prior to its communication with the Court did Defendant advise Plaintiff that there was a gap in the production.

26. The records in Plaintiff's Production Bates 0276-0414 consisted of Subpoena responses most of which had been separately served on Defendants, and none of which were identified by Plaintiff as exhibits, a few bank and payment records, and a copy of a blue Carvana-branded folder given to Plaintiff at the time of sale.  That is it.

27. During the same Meet and Confer, Defendants inquired about other records related to the statements Plaintiff produced from other Carvana customers.

28. I advised counsel that said records consisted of hundreds and hundreds of Pacer system printouts and that they were welcome to them if they wanted them.  I also advised them that I would not be able to scan and produce them right away.  I then produced them at my earliest opportunity.

29. The ultimate production consisted of a few "no records" statements received in response to Subpoena and hundreds and hundreds and hundreds of Pacer downloads (dockets, notices, pleadings), and some other odds and ends – e.g., a few short emails, a few Carfax and Autocheck reports.

30. There was nothing "withheld" and everything was explained.

31. The records have no relevance to any defense and certainly do not undermine any claim.

32. Neither Defendant nor Mr. Flanders even tried to hint at any true relevance of

these records or any prejudice.

33.     It seems clear Defendant was trying to create some *cover* for having withheld the wet-signature documents that proved once and for all, contrary to their repeated averments, the subject vehicle was sold and the purchase was consummated offline, in person, at CARVANA PHILA.


**BENSLEY LAW OFFICES, LLC**


 */s/William C. Bensley*_____
William C. Bensley, Esquire
*Attorneys for Plaintiff*


Date:_ 5/13/2021_____