# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW OKULSKI, <br> **Plaintiff,** <br><br> v. <br><br> CARVANA, LLC, PAUL BREAUX, AND KATELYN GREGORY, <br> **Defendants.** | CIVIL ACTION <br><br><br><br> NO. 20-1328 |

## MEMORANDUM OPINION

Following the Third Circuit's decision in *Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021), Plaintiff Andrew Okulski moves for revision of this Court's August 24, 2020 Order granting Defendants' motion to dismiss.

Okulski's claims arise from his purchase of a used Nissan Versa (the "Vehicle") from Defendant Carvana. When the car malfunctioned, Okulski sued Carvana, its Vice President and General Counsel Paul Breaux, and salesperson Katelyn Gregory. According to Okulski, he was induced to purchase the Vehicle by Defendants' representation that it had been "carefully inspected" and was "CARVANA CERTIFIED," when in fact the Vehicle was "in a damaged, defective, unfit, unmerchantable and unsafe condition." He asserted *inter alia* claims of breach of contract; fraud; negligent misrepresentation; violation of the Pennsylvania Board of Vehicles Act ("BVA"), 63 P.S. § 818.1 *et seq.*; and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-1, *et seq.*

Defendants sought dismissal of all but the breach of contract claim. As relevant here, the Court dismissed Okulski's fraud claim pursuant to the "gist of the action" doctrine, which "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The Court read the

Complaint as alleging fraud in the inducement and found Okulski's fraud allegations to be "'inextricably intertwined' with the parties' contractual terms," such that the gist of Okulski's action lay in contract rather than in tort. *See Okulski v. Carvana, LLC*, 2020 WL 4934345, at *6 (E.D. Pa. Aug. 24, 2020) (quoting *eToll*, 811 A.2d at 21).

Okulski's UTPCPL claim was then dismissed pursuant to the "economic loss" doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618-20 (3d Cir. 1995). Relying on the Third Circuit's decision in *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), which predicted that the Pennsylvania Supreme Court would apply the economic loss doctrine to UTPCPL claims, the Court determined that Okulski's UTPCPL claim "flow[ed]" from the parties' contracts and thus was barred under the economic loss rule. *Okulski*, 2020 WL 4934345, at *7 (quoting *Duquesne*, 66 F.3d at 618).

In so holding, the Court recognized that recent state appellate authority—namely, *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. 2013) and *Dixon v. Northwestern Mutual*, 146 A.3d 780 (Pa. Super. 2016)—challenged the continuing vitality of Werwinski. Nevertheless, the Court noted that it remained bound by *Werwinski*'s holding absent a decision of the Pennsylvania Supreme Court or Third Circuit to the contrary. *See Okulski*, 2020 WL 4934345, at *7. Six months later the Third Circuit in *Earl* expressly rejected *Werwinski*, finding that the economic loss doctrine does not apply to statutory misrepresentation claims brought under the UTPCPL. The *Earl* court also examined whether the plaintiff's UTPCPL claim was barred by the gist of the action doctrine and, as discussed further below, found the doctrine inapplicable to the plaintiff's allegations. In light of this change of direction by the Third Circuit, Okulski now asks this Court to rethink its August 24 Order. He specifically challenges the dismissal of his fraud,

UTPCPL, and BVA claims.[1]

At the outset, Defendants question whether Okulski's motion is timely. They note that this Court's Local Rules require motions for reconsideration to "be served and filed within fourteen (14) days after the entry of the order concerned." E.D. Pa. R. Civ. P. 7.1(g). This deadline is passed. The 28-day deadline for filing a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59 has also passed. *See* Fed. R. Civ. P. 59(e); *Chapman v. U.S. Parole Comm'n*, 676 F. App'x 115, 117 (3d Cir. 2017) (district courts not permitted to consider untimely 59(e) motions). Regardless of whether these rules are applicable or timely here, they are beside the point in that Okulski's motion is not made pursuant to either of them. He contends that revision is appropriate under Federal Rule of Civil Procedure 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) thus permits district courts to revisit their interlocutory orders. Moreover, "the same would be true even in the absence of that rule." *In re Athanassious*, 418 F. App'x 91, 95 (3d Cir. 2011). "[S]o long as [a] district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *Id.* (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)); *Swietlowich v. Bucks Cty.*, 610 F.2d 1157, 1164 (3d Cir. 1979) ("[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an

---

[1] Okulski also points to the Pennsylvania Supreme Court's recent decision in *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637 (Pa. 2021), as a basis for revising the August 24 Order. But the *Gregg* decision addressed the requirements necessary to plead scienter under the UTPCPL. The August 24 Order did not turn on an analysis of whether Okulski properly pleaded scienter; *Gregg* therefore does not offer a basis for reversing the dismissal of Okulski's UTPCPL claim.

3

unjust result.").

Thus, because the decision granting Defendants' motion to dismiss disposed of some, but not all, of Okulski's claims, the Court has discretion to reconsider that ruling if justice so requires. And because the *Earl* decision conflicts with aspects of this Court's ruling on Defendants' motion to dismiss, justice requires that its effect on the August 24 Order be addressed.[2]

So, on to the merits. Defendants concede that after *Earl*, the economic loss doctrine is no longer a viable basis for dismissing Okulski's UTPCPL claim. They propose an alternate route to dismissal: They argue that UTPCPL claims remain susceptible to the gist of the action doctrine—even after *Earl*—and that Okulski's claim must be dismissed on this ground, given the Court's prior determination that Okulski's common law tort claims were inextricably intertwined with his breach of contract claim. Okulski responds that dismissal of his UTPCPL claim would be inconsistent with the *Earl* decision and, further, that *Earl* requires this Court to reverse its dismissal of his common law fraud claim.

The *Werwinski* court did not address the gist of the action doctrine. Despite abrogating *Werwinski*'s finding that the economic loss doctrine may bar a plaintiff's cause of action under the UTPCPL, the *Earl* court did assume the gist of the action doctrine could preclude a UTPCPL

---

[2] In addition to addressing *Earl*'s effect on the August 24 Order, Okulski's present motion also asks the Court to revisit his BVA claim. The *Earl* decision does not address BVA claims, and thus does not provide a basis for rethinking this claim. Okulski contends, instead, that revision is appropriate because: (1) the Court committed clear error when dismissing his BVA claim; and, (2) he has obtained new evidence supporting his allegation that the transaction documents were signed in Pennsylvania. These arguments merely rehash arguments considered and rejected on the parties' previous motions. Rule 54(b) is not "a vehicle to 'reconsider repetitive arguments that have already been fully examined by the court,'" *JHNY Corp. v. Dana Corp.*, 2006 WL 8459415, at *1 (E.D. Pa. May 24, 2006) (citation omitted) nor should such a motion "be used to try to get a 'second bite at the apple,' or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question," *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp.3d 292, 295-96 (M.D. Pa. 2016). The BVA claim will not be revisited. Further, Okulski's request for leave to amend his Complaint for a third time to add additional allegations relevant to the BVA claim will be denied.

claim. *See Earl*, 990 F.3d at 314-15. It nevertheless determined that the specific misrepresentations underlying Earl's UTPCPL claim were not subject to the doctrine. Like Okulski, Earl entered into a contractual relationship with the defendant, NVR, Inc. ("NVR"). In that case, the contract was for the purchase of a new home. *Id.* at 311. Earl was "attracted to the purchase by NVR's marketing," which advertised "the Home as one which would contain 'quality architecture, timeless design, and beautiful finishes.'" *Id.* During the construction process, NVR's agents told her "that the Home would be constructed in a good and workmanlike manner; that NVR would remedy any deficiencies encountered by Earl; and that the Home would be constructed in accordance with relevant building codes and standards." *Id.* at 312. But when Earl moved into the home, she found numerous material defects which NVR failed to properly remedy. *Id.* The home was, moreover, missing several of the features and amenities promised by NVR. *Id.*

Earl brought suit. She alleged, *inter alia*, that NVR's false representations violated the UTPCPL, a statute which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* (quoting 73 Pa. Cons. Stat. § 201-3). The lower court disagreed. It dismissed the UTPCPL claim, noting that "all of NVR's alleged unlawful conduct arises from, and directly relates to, the terms of the parties' Agreement." *Earl v. NVR, Inc.*, No. 20-cv-0505, slip op. at 8 (W.D. Pa. May 29, 2020). Because the court found that "any duty breached by NVR [was] one created by the parties by the terms of their contract," it held Earl's UTPCPL claim barred by the gist of the action doctrine. *Id.*

The Third Circuit reversed. It began its analysis with the test for applying the gist of the action doctrine established by the Pennsylvania Supreme Court in *Bruno v. Erie Insurance Co.*, 106 A.3d 53 (Pa. 2014):

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Earl*, 990 F.3d at 315 (quoting *Bruno*, 106 A.3d at 68). The Third Circuit noted: "If read expansively, the doctrine could plausibly be understood to bar the instant action, given the existence of a contract between Earl and NVR involving the purchase and construction of the Home." *Id.* Nevertheless, it declined to apply the gist of the action doctrine so broadly. Relying again on state appellate authority, it found instead that the false representations grounding Earl's UTPCPL claim—namely, "the marketing and representations that induced her to enter into the contract in the first instance, as well as statements made to her by agents of NVR during the homebuilding process"—were collateral to the terms of the parties' contract, such that the gist of the action doctrine could not apply. *Id.*

Writing without the benefit of *Earl*, this Court found that the false representations alleged by Okulski were not collateral to the parties' contract and, instead, were "inextricably intertwined" with the contract's terms. *See Okulski*, 2020 WL 4934345, at *6 (quoting *eToll*, 811 A.2d at 21). But Okulski's allegations closely resemble those of the *Earl* plaintiff: Like Earl, Okulski alleges that he was induced to purchase the Vehicle by Defendants' marketing and pre-transaction representations—such as the company's advertisement of the Vehicle as "CARVANA CERTIFIED" and subject to a "careful 150-point inspection," and its representation that the Vehicle had never been damaged or in an accident—and that the Vehicle failed to live up to these representations. The *Earl* decision thus suggests that this Court

6

interpreted the gist of the action doctrine too expansively when disposing of Okulski's common law fraud claim and, further, that Okulski's UTPCPL claim (which, like the fraud claim, is premised on Defendants' allegedly false representations concerning the Vehicle's "history, condition and quality") is not barred by the doctrine.

The primary Pennsylvania Superior Court case relied upon by the *Earl* court—*Knight v. Springfield Hyundai*—provides further support for this conclusion. In *Knight*, the defendant car dealership sold the plaintiff a used Hyundai Sonata pursuant to a Buyer's Order and Retail Installment Sales Contract. *Knight*, 81 A.3d at 943. Prior to the sale, the defendant made several representations to the plaintiff concerning the vehicle, including that the vehicle had previously been privately owned, only had one prior owner, and was in good operating condition and free of defects. *Id.* at 951. After the sale, the plaintiff discovered that the car, among other things, had previously been part of a rental fleet, had multiple prior owners, and had been in an accident and sustained damage. *Id.* at 944.

The *Knight* court considered whether the plaintiff could maintain a UTPCPL claim on these allegations. As in this case, the defendant argued that dismissal was appropriate under the gist of the action doctrine. The Pennsylvania Superior Court disagreed. It explained:

> Although [the plaintiff] purchased the vehicle pursuant to the contract, the alleged representations by [the defendants] occurred prior to the signing of any contract. Furthermore, the above false advertisements, statements, and assurances, are rendered unlawful by sections 201-2(4)(v), (vii), (ix), (xi), and (xxi) of the UTPCPL. These are not masked claims for breach of contract; the gist of the action here is in tort, and the contract is collateral to the matters alleged. As such, the gist of the action doctrine did not warrant the dismissal of Knight's UTPCPL claims.

*Id.* at 951 (citations omitted). Okulski's allegations are not materially distinguishable from those in *Knight*. Given the facts of *Earl* and the Third Circuit's express endorsement of *Knight*'s

7

reading of the gist of the action doctrine, Okulski's UTPCPL claim will not be dismissed pursuant to that doctrine and will be revived.

Moreover, to the extent Okulski's common law fraud claim is premised on Defendants' "marketing and representations that induced [Okulski] to enter into the contract in the first instance," *see Earl*, 990 F.3d at 315, it too must rise again. Because the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract and tort claims," *Okulski*, 2020 WL 4934345, at *4 (quoting *eToll*, 811 A.2d at 14), the doctrine comes into play only where the defendant's alleged misrepresentations are intertwined with the terms of the parties' contract, that is, where the plaintiff's tort claim "is, in actuality, a claim against the party for breach of its contractual obligations," *see Bruno*, 106 A.3d at 53. The *Earl* court found that where, as here, a defendant is alleged to have made false promises to induce the plaintiff to enter an agreement, the subjects of which are not express terms of the parties' contract, this conduct is collateral to the defendant's contractual obligations. *See Earl*, 990 F.3d at 315-16. This determination governs here.

Defendants offer another avenue for dismissing Okulski's fraud claim. They contend that the economic loss doctrine continues to apply to common law fraud, even if it no longer applies to UTPCPL claims, and suggest that Okulski's fraud claim should be dismissed on this ground. This argument, too, is ruled out by *Earl*. Like the gist of the action doctrine, the economic loss rule is intended to prevent plaintiffs from recovering in tort for a breach of contractual obligations. *See Dittman v. UPMC*, 196 A.3d 1036, 1052 (Pa. 2018). Thus, application of either doctrine rests on a predicate finding that the duty allegedly breached by the defendant arises under a contract between the parties. *See id.* at 1054. If, however, "the duty arises independently of any contractual duties between the parties, then a breach of that duty may

8

support a tort action." *Id.* In *Earl*, the Third Circuit held that the false marketing and pre-sale misrepresentations alleged by the plaintiff violated a "broader social duty owed to all individuals," rather than any specific term of the parties' contract. *See Earl*, 990 F.3d at 315 (quoting *Bruno*, 106 A.3d at 68). Okulski's fraud claim, like the *Earl* plaintiff's UTPCPL claim, rests on allegations that Defendants engaged in false marketing and made false representations to induce Okulski to purchase the Vehicle. In light of *Earl*, this fraud claim is not clearly precluded by the economic loss rule. *See Metter v. Capella Univ., LLC*, 2021 WL 1610061, at *4 (E.D. Pa. Apr. 21, 2021) (Baylson, J.) (applying *Earl* and finding a fraudulent misrepresentation claim not barred by the economic loss and gist of the action doctrines, where defendant university allegedly made material, pre-contractual misrepresentations to induce plaintiff's enrollment).[3]

Okulski's UTPCPL and fraud claims will therefore be reinstated. An appropriate order follows.

**June 2, 2021**                                                            **BY THE COURT:**

                                                                                      /s/Wendy Beetlestone, J.

                                                                                      **WENDY BEETLESTONE, J.**

---

[3] Defendants contend that Okulski: (1) failed to plead his fraud and UTPCPL claims with specificity as required by Federal Rule of Civil Procedure 9(b); (2) failed to plead a material misrepresentation; and, (3) failed to plead justifiable reliance. Although these arguments were raised by Defendants in their initial motion to dismiss, the Court did not reach these arguments when disposing of that motion. Defendants raise these arguments again in response to Okulski's present Rule 54(b) motion, but their briefing of these issues is cursory at best. Regardless, Okulski's fraud and UTPCPL claims are pleaded with sufficient specificity as to the remaining Defendants to survive a motion to dismiss, and he sufficiently alleges material misrepresentations as to these Defendants. Okulski's allegations also plausibly suggest that his reliance on Defendants' pre-sale representations was justifiable, and Defendants present no authority compelling a contrary conclusion.